UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RANDY HAIGHT,                                                           PETITIONER

v.                                   CIVIL ACTION NO. 3:02-CV-206-S

PHIL PARKER,
Warden, Kentucky State Penitentiary,                  RESPONDENT

## MEMORANDUM OPINION

We are presently asked to resolve two motions in which Petitioner Randy Haight seeks the court's assistance in developing facts in support of his habeas corpus petition, filed pursuant to 28 U.S.C. § 2254. Haight requests permission to take several depositions and to obtain copies of various notes, memoranda, and other documents that he believes will support his constitutional claims. In addition, he asks permission to proceed ex parte with respect to his request for the provision of expert assistance that would otherwise be beyond his financial means.

The magistrate judge considered and rejected all of these requests, and Haight has filed objections to those conclusions.[1] Neither of the magistrate's orders disposed of any claims or defenses, so Rule 72(a) directs this court to "consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."

**I**

On August 18, 1985, Haight escaped from the Johnson County Jail in eastern Kentucky. While still on the lam on August 22 (by this time having traveled west to Garrard County), he shot and killed Patricia Vance and David Omer through the window of their car. He was apprehended

---

[1] With respect to the order denying his motion for ex parte proceedings, Haight styled his responsive filing a "Motion to Reconsider." The magistrate determined that this document should be construed as a set of objections to be considered by the district judge, and we agree.

in a corn field in Mercer County the next day. He was indicted on charges of murder, robbery, and being a felon in possession of a handgun.

Haight pled guilty in the Garrard Circuit Court in 1986, in exchange for the prosecutor's recommendation of a sentence of life without parole for 25 years. The circuit court accepted Haight's plea, but disregarded the recommendation and sentenced him to death. The Kentucky Supreme Court vacated the conviction in 1988, on the ground that the trial court should not have accepted a guilty plea premised on the parties' "understanding" that the court would sentence in accordance with the agreement when in fact the court retained its discretion in sentencing. *Haight v. Commonwealth*, 760 S.W.2d 84 (Ky. 1988) (*Haight I*). Haight then sought to enforce the agreed-upon sentence, but to no avail. *Haight v. Williamson*, 833 S.W.2d 821 (Ky. 1992), *cert. denied*, 507 U.S. 925 (1993) (*Haight II*). Following a change of venue, he was finally tried, convicted on all counts, and sentenced to death (plus concurrent 20- and 5-year sentences on the robbery and felon-in-possession charges) by a Jefferson County jury in 1994. The convictions and penalties were affirmed on direct review, *Haight v. Commonwealth*, 938 S.W.2d 243 (Ky. 1996), *cert. denied*, 522 U.S. 873 (1997) (*Haight III*), and the state courts denied post-conviction relief, *Haight v. Commonwealth*, 41 S.W.3d 436 (Ky. 2001), *cert. denied*, 534 U.S. 998 (2001) (*Haight IV*). Haight then filed this petition pursuant to 28 U.S.C. § 2254. The court stayed proceedings to allow Haight to exhaust his state remedies with respect to certain of his claims for relief. The Kentucky Supreme Court refused to consider those issues on the ground that Haight had failed to raise them in his initial state collateral proceeding. *Haight v. Commonwealth*, No. 2006-SC-344-MR, 2007 WL 2404494 (Ky. Aug. 23, 2007) (unpublished), *pet. for reh'g denied* (Apr. 24, 2008) (*Haight V*). Those claims

have been reinstated in Haight's federal petition. He now seeks to obtain discovery and permission to proceed ex parte in his forthcoming request for expert assistance.

## II

"Habeas petitioners have no right to automatic discovery." *Beuke v. Houk*, 537 F.3d 618, 654 (6th Cir. 2008) (*quoting Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)). Discovery in state-prisoner habeas cases is governed by Rule 6 of the Rules Governing § 2254 Cases, section (a) of which provides: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Section (b) goes on to specify that "[a] party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents." The rule thus grants the district court "discretion to grant discovery in a habeas case upon a fact specific showing of good cause." *Stanford*, 266 F.3d at 460 (*citing Bracy v. Gramley*, 520 U.S. 899 (1997); *Byrd v. Collins*, 209 F.3d 486, 515-16 (6th Cir. 2000))."The burden of demonstrating the materiality of the information requested is on the moving party." *Id.* at 460.

The Rule 6 good cause standard is separate from and less burdensome than the requirements for an evidentiary hearing imposed by 28 U.S.C. § 2254(e)(2). "[D]iscovery is available to habeas petitioners at the discretion of the district court judge for good cause shown, regardless of whether there is to be an evidentiary hearing." *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997). A grant of discovery and an evidentiary hearing are different events, governed by different rules, and there is no reason to import the standards applicable to the latter into a determination whether the former is justified by good cause.

"Good cause" means "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (*quoting Bracy*, 520 U.S. at 908-09). But Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations"; rather, "the petitioner must set forth specific allegations of fact" in order to justify a grant of discovery. *Id.* (*quoting Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997); *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994)). Discovery will be warranted only if he has alleged enough specific facts to cause the court to believe that the elements of at least one of his constitutional claims might be satisfactorily proved if additional evidence is developed. In order to determine whether Haight has provided good cause, we must therefore get clear about the nature of the claims he is raising. *See Bracy*, 520 U.S. at 904 ("Before addressing whether petitioner is entitled to discovery . . . , we must first identify the 'essential elements' of [his] claim[s]." (citations omitted)). Haight's petition contains 45 separate grounds for relief, segregated into eight categories. The claims with respect to which Haight seeks discovery fall into four of these groupings: ineffective assistance of counsel (both at trial and on appeal); jury issues; prosecutorial misconduct; and a due process claim related to his state post-conviction proceedings. His objections to the magistrate's order, however, are limited to four topics, all of which have to do with his various ineffective assistance of counsel claims. Seeing no clear error in the balance of the magistrate's order, we address only those conclusions to which Haight has objected.

A successful claim that a criminal defendant's Sixth Amendment right to counsel was violated by an attorney's incompetence must fulfill two basic elements, as set out in *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong, deficiency, "requires showing that counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In judging the performance of counsel, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "To be deficient, counsel's performance must fall below an objective standard of reasonableness," *Lyons v. Jackson*, 299 F.3d 588, 596 (6th Cir. 2002), as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* The second prong, prejudice, requires that the petitioner show that his attorney's errors were so serious as to have "so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686. Haight claims that his counsel was constitutionally ineffective at several junctures, both at trial and on appeal.

**A**

Haight first objects to the magistrate's conclusion regarding discovery related to his claim that trial counsel's performance was ineffective in that he failed to exercise his peremptory strikes to remove three jurors who had demonstrated bias or potential bias. Respondent argues that this claim has been procedurally defaulted. "[A] federal claimant's procedural default precludes federal habeas review . . . only if the last state court rendering a judgment in the case rests its judgment on the procedural default." *Harris v. Reed*, 489 U.S. 255, 262 (1989). Addressing Haight's state post-conviction motion, the Kentucky Supreme Court did "observe that his peremptory challenge claims were waived when the jury was sworn at trial. [Ky. R. Crim. P.] 9.36(3)." *Haight IV*, 41 S.W.3d at 444. It also stated that Haight's "allegation of error is not proper in an [Ky. R. Crim. P.] 11.42

proceeding." *Id.* However, these statements are interposed between the court's conclusion that Haight's substantive argument was "unpersuasive" and its assertion that his claim of "structural error" under *Neder v. United States*, 527 U.S. 1 (1999) was "without merit." *Haight IV*, 41 S.W. 3d at 444-45. The court then went on to address the merits of the *Strickland* claim, stating that because "[t]here is no right to peremptory challenges[,] . . . [t]he conduct of trial counsel did not deprive Haight of" any constitutional guarantees. *Id.* at 445. It therefore concluded that "[c]ounsel was not ineffective." *Id.* The court thus provided two possible grounds for denying relief, one state and one federal.

Where the "state court opinion is ambiguous about which of two grounds [one procedural, one substantive] it relied upon, the federal courts must presume that the state court reached the merits." *Heath v. Jones*, 941 F.2d 1126, 1137 (11th Cir. 1991) (*citing Harris*, 489 U.S. at 263). If, however, the court addressed the federal issue merely as an alternate holding to its conclusion regarding the state procedural default, federal courts must defer to the procedural bar as an independent and adequate state-law ground of the decision. *Harris*, 489 U.S. at 254 n.10. The state court's treatment of the merits constitutes an alternative holding only if it "'clearly and expressly' stated that its judgment rested on a state procedural bar." *Id.* at 263. Thus a federal court is not restrained from deciding the merits of a case if the state court "interchangeably discussed both methods of disposing the issues." *Nieto v. Sullivan*, 879 F.2d 743, 746 n.2 (10th Cir. 1989) (*citing Harris*, 489 U.S. at 260-64).

Here, the state court did not clearly state that it relied on the procedural bar for its decision. Indeed, it only "observe[d]" the existence of the state procedural rule before going on to squarely address the merits of Haight's arguments. In *Harris* itself, the state appeals court had referred to a

state procedural rule as both "well-settled" and applicable, but nonetheless went on to reject the petitioner's claims on the merits. 489 U.S. at 258. The Supreme Court found that the state court had not "clearly and expressly" relied on the procedural bar, and therefore held that the federal courts could reach the merits of his claim on habeas. *Id.* at 266. The case at bar is quite similar to *Harris*, and there is at least "good reason to question whether there is an independent and adequate state ground for the decision." *Coleman v. Thompson*, 501 U.S. 722, 739 (1991). Consequently we think that Haight's claim is not procedurally defaulted, and that we can consider it on the merits.

Turning to the substance of the claim: Although peremptory challenges are "a creature of statute," *Ross v. Oklahoma*, 487 U.S. 81, 89 (1988), to which "there is no freestanding constitutional right," *Rivera v. Illinois*, 129 S. Ct. 1446, 1453 (2009) (*citing United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000)), it appears that a lawyer can render constitutionally ineffective assistance if he fails to use his allotted strikes in accordance with "prevailing professional norms."[2] *See Tinsley v. Million*, 399 F.3d 796, 802-06 (6th Cir. 2005) (entertaining, though ultimately rejecting, a claim that trial counsel was ineffective in allowing potential jurors to volunteer to be removed with seven of his nine peremptory challenges); *Miller v. Webb*, 385 F.3d 666, 675-76 (6th Cir. 2004) (holding

---

[2] Here we disagree with the Kentucky Supreme Court, which held that because there is no constitutional right to peremptory challenges, an ineffective-assistance claim related to their use is not cognizable. *Haight IV*, 41 S.W.3d at 444. The chain of logic does not work quite so neatly. Attorney competence is judged by an objective standard predicated on the norms of the profession, which surely have some content related to reasonable use of peremptory strikes. Thus while a defendant does not have a right that the court provide him with any strikes at all, he does have a right that his counsel make use of whatever strikes he is allotted in a fashion that comports with *Strickland*'s reasonableness standard—or at least in a fashion that does not deprive him of his right to an impartial jury.

*United States v. Boyd*, 86 F.3d 719 (7th Cir. 1996), cited by the *Haight IV* court, seems to us inapposite. There, defense counsel at trial had used a peremptory strike in a racially discriminatory fashion. Judge Easterbrook held that in so doing the attorney, in the exercise of a valid (if questionable) trial strategy, had waived his client's right to a jury chosen without regard to race. *Id.* at 721-22. Here, by contrast, petitioner alleges that his attorney allowed the court to seat a juror with actual bias against him. But "there is no sound trial strategy that could support what is essentially a waiver of a defendant's basic Sixth Amendment right to trial by an impartial jury." *Miller v. Webb*, 385 F.3d 666, 676 (6th Cir. 2004) (*citing Hughes v. United States*, 258 F.3d 453, 463 (6th Cir. 2001)). And an actually biased juror placed on the jury necessarily constitutes prejudice, whereas prejudice is not presumed simply because defense strategy resulted in an all-white jury.

that no sound trial strategy can involve impaneling a biased juror, and that failure to remove such a juror constitutes incompetent performance). Even if counsel engaged in questionable voir dire or peremptory challenge practives, however, the prejudice prong requires a showing that an individual with "actual bias" served on the petit jury. *Tinsley*, 399 F.3d at 805 (*citing Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001); *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001)). "Actual bias" in this context requires "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *Hughes*, 258 F.3d at 463 (*quoting United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997)).

Having set out the applicable law, we can now finally ask whether Haight has shown good cause to engage in discovery. We first observe that nothing Haight seeks in discovery would go towards *Strickland*'s prejudice prong, which is fulfilled here only if the petit jury included an actually biased juror. That inquiry is entirely focused on the challenged juror's state of mind, and has nothing to do with any lawyer's contemporaneous or post-hoc rationalization for failing to challenge the juror either for cause or peremptorily. Petitioner has not asked for any discovery that would tend to reveal facts relating to the challenged jurors' states of mind; he seeks only to depose his trial attorneys and the prosecutors, and to review notes made during voir dire.

Discovery is therefore available only if relevant to *Strickland*'s first prong. Haight's motion states that he "expects [his trial attorneys] Mr. Lewis and Mr. Durham will confirm that Mr. Haight made his request for elimination of the three jurors to counsel in a timely manner, and that Mr. Lewis decided to ignore his client's request and leave the three jurors on the jury." (Pet'r Mem. 8.) We suppose the depositions could also help reveal his attorneys' trial strategy, which would in some settings aid in the assessment of whether that strategy was objectively reasonable. In the particular

context of this case, however, such information is irrelevant. "[T]he decision whether to seat a biased juror cannot be a discretionary or strategic decision." *Webb*, 385 F.3d at 676 (*citing Hughes v. United States*, 258 F.3d 453, 463 (6th Cir. 2001)). In *Webb*, petitioner's trial counsel, though he knew through *voir dire* that one juror, Bell, was actually biased against his client (she indicated that she was "partial" to the government's key witness), neither requested that Bell be struck for cause nor exercised a peremptory challenge to remove her himself. Counsel proffered two justifications, both of which the Court of Appeals found wanting. But that analysis was dicta, because the court explicitly held that "there is no sound trial strategy that could support what is essentially a waiver of a defendant's basic Sixth Amendment right to trial by an impartial jury." *Id.* The principle enunciated in *Webb* is that trial counsel acts unreasonably per se if he fails to take steps to eliminate a juror with an actual, constitutionally significant bias of which counsel is aware. This rule applies equally whether the complained-of conduct was a failure to request a for-cause dismissal or a failure to exercise a peremptory one, because the result (an unconstitutionally biased jury) is the same in either case. What counsel may *not* do is what Haight's trial counsel here allegedly did: Decline to challenge a biased juror either for cause or peremptorily and then claim to have made a strategic decision. *Webb* makes this clear. If one or more of Haight's jurors were actually biased in the constitutionally-significant sense set out above, and if counsel knew this fact, counsel cannot have acted in an objectively reasonable manner in failing to challenge the juror, regardless of his strategic or tactical reasons for doing so.

The result of applying this point of law to this case is that we must deny Haight's request for discovery. If a biased juror sat on the panel (and trial counsel knew of the bias), no strategy could excuse counsel's mistake; and if no biased juror sat, even an objectively unreasonable strategy

would not entitle Haight to relief. The only facts that thus matter are whether any of the empaneled jurors were unconstitutionally biased against him, and whether trial counsel knew this fact during the jury selection process. Both questions can be addressed without confirmation of Haight's story about his interactions with counsel; they are, so far as we can tell, answerable on the voluminous existing trial record. Because Haight's document requests and proposed depositions would not lead to any relevant information, he has failed to show good cause and is not entitled to discovery.

**B**

Haight argues that his counsel on direct appeal in state court acted ineffectively by failing to challenge the trial court's refusal to instruct the jury on theft by unlawful taking as a lesser included offense of robbery.[3] Respondent again argues that this claim is procedurally defaulted, and here he has a point. Petitioner failed to present this claim to the Kentucky courts in his initial state petition under Ky. R. Crim. P. 11.42, and only brought it to the attention of the Kentucky Supreme Court when he asked it to revisit its decision denying relief. (*See* Pet'r Mem. 202 (*citing* Br. for Appellant, *Haight V*, 2007 WL 2404494.)) The court disposed of the instruction issue as one of several that "should have been raised in the [Ky. R. Crim. P.] 11.42 motion or on direct appeal," and offered no alternative ground for its judgment. *Haight V*, 2007 WL 2404494, at *3. Rule 11.42 provides that "[f]inal disposition of the motion shall conclude all issues that could reasonably have been presented in the same proceeding," so the implication of the court's statement is clearly that those claims were procedurally defaulted. If petitioner is unable to excuse this default (by showing

---

[3] This claim is limited to ineffective assistance of appellate counsel, the remedy for which would be a grant of the writ conditioned on the state allowing Haight to reopen a direct appeal on the underlying instruction issue. We therefore do not inquire into whether the *Strickland* claim constitutes "cause" for excusing a procedural default. Instead, we treat it as a freestanding ground for granting a limited form of habeas relief.

either "cause and prejudice" or a "fundamental miscarriage of justice,"[4] *Coleman*, 501 U.S. at 750), the claim necessarily fails and there can be no good cause for discovery.

The magistrate resolved this issue by noting that the Kentucky courts have steadfastly insisted that "ineffective assistance of appellate counsel is not a cognizable issue in this jurisdiction." *Lewis v. Commonwealth*, 42 S.W.3d 605, 613 (Ky. 2001) (*citing Hicks v. Commonwealth*, 825 S.W.2d 280 (Ky. 1992)).[5] His order then cites *Hale v. Chandler*, No. No. 06-101, 2009 WL 3161394 (E.D. Ky. Sept. 28, 2009) for the proposition that "[i]n situations such as this where there appears to be 'an absence of State corrective process,' it is appropriate for federal courts to consider the merits of claims not raised in the state courts, such as the ineffective assistance of appellate counsel claim." *Id.* at *5 (*quoting* 28 U.S.C. § 2254(b)(1)(B)(i) *and citing Meece v. Simpson*, No. 08-62, 2009 WL 899448 (E.D. Ky. Mar. 31, 2009); *Morris v. Motley*, No. 07-CV-P420, 2007 WL 3171538 (W.D. Ky. Oct. 26, 2007)). He concludes that a case like *Lewis* automatically requires us "to examine the merits of . . . claims that otherwise could not be raised in the state courts," regardless of procedural default.

This statement of the law is in error, for two reasons. First, it rests on § 2254(b), which relates to exhaustion and is inapplicable to procedural default, a separate consideration grounded in the independent-and-adequate state-law ground doctrine. Second, unless a claim obviously fails on the merits, *see Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Hudson v. Jones*, 351 F.3d 212,

---

[4] No one claims a "fundamental miscarriage of justice" here. That avenue for avoiding procedural default requires an extraordinary showing, and it is undisputed that Haight committed the criminal acts for which he was convicted and sentenced.

[5] *Parrish v. Commonwealth*, 272 S.W.3d 161, 173-74 (2008) recently reaffirmed *Lewis*'s holding, at least where the defendant's appellate counsel had successfully filed a merits brief.
 Why the state courts have refused to recognize a federal constitutional right whose existence has long been acknowledged by the Supreme Court is something of a mystery, but it is not our place to overrule that surprising conclusion here.

- 11 -

215-16 (6th Cir. 2003), the court must address the procedural default question before reaching the substance of the claim. Thus we must ask whether Kentucky's refusal to recognize ineffective assistance of appellate counsel (or some other circumstance) constitutes "cause" within the meaning of *Coleman* and related precedents, such that we can hear Haight's claim even though he failed to present it in his initial state petition and thereby defaulted it under Kentucky law.

The Supreme Court has advised us that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Haight has not provided any such cause. The best he can do is to say that Kentucky did not (and does not) recognize the constitutional claim he seeks to assert, but the Supreme Court has maintained for almost three decades that "[i]f a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim." *Engle v. Isaac*, 456 U.S. 107, 130 (1982). Accordingly, "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Bousley v. United States*, 523 U.S. 614, 623 (1998) (*quoting Engle*, 456 U.S. at 130 n.35). Haight was obligated to raise his claim in his Rule 11.42 petition and argue for overturning *Lewis*, in order to give the state court an opportunity to reconsider. *See Engle*, 456 U.S. at 130. *Lewis*'s existence in the casebooks does not constitute cause for failing to raise this issue in the appropriate state court. Haight has provided no other explanation for his default, and no reason to think that the requested discovery

would supply one. Because he therefore cannot establish "cause,"[6] discovery could not uncover any material evidence, and we are without discretion to grant it.

## C

Haight next complains that the trial court should have issued an instruction on wanton murder as an alternative to intentional murder. He argues that both trial and appellate counsel were deficient in handling this question. Specifically, he says that his trial attorney should have requested this instruction and that his appellate attorney should have argued both that the instruction should have been included and that his trial attorney was ineffective in failing to ask for it.

All of these claims have been procedurally defaulted. The underlying instruction claim was lost after not being raised at trial. The ineffective assistance of trial counsel claim was lost after not being raised on direct appeal. And the ineffective assistance of appellate counsel claim was lost after not being raised in the Rule 11.42 petition.[7] *See Haight V*, 2007 WL 2404494 at *3 (holding that his complaint regarding the wanton murder claim "should have been raised in the [Ky. R. Crim. P.] 11.42 motion or on direct appeal," and was therefore procedurally defaulted[8]). Haight makes no serious effort to show cause and prejudice for any of these defaults, let alone all of them. He cannot obtain relief and is therefore not entitled to discovery.

---

[6] We note that because there is no constitutional right to counsel in post-conviction proceedings, petitioner cannot argue that his attorney's failure to include the ineffective assistance claim in the initial Rule 11.42 petition constitutes cause. *See Coleman*, 501 U.S. at 752.

[7] Again, petitioner had no right to counsel after his direct appeal, and therefore cannot claim that his post-conviction attorneys were ineffective for failing to raise his claims in the 11.42 motion. *Coleman*, 501 U.S. at 752.

[8] The claim was not raised in any context before the present habeas petition and was considered by the Kentucky courts for the first time in 2007. There is no evidence that the Kentucky court ever considered either of the related ineffective assistance of counsel claims except to the extent it may have dismissed them along with the underlying instruction argument. If they had not been presented to the court by that point, they are surely procedurally defaulted now.

**D**

Haight claims that his counsel during state post-conviction proceedings were ethically disqualified from representing him. The magistrate, however, correctly concluded that this is a state-law issue with which federal habeas corpus is unconcerned. The Constitution confers no right to any counsel whatsoever in state post-conviction proceedings. *Coleman*, 501 U.S. at 752; *Murray v. Giarratano*, 492 U.S. 1 (1989) (applying this rule to capital cases). It follows that there is no constitutional right to unconflicted counsel in such proceedings. Furthermore, whether counsel was disqualified is entirely a question of state law. This is simply not a ground for finding that Haight is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).[9] Consequently petitioner cannot show good cause for discovery.

\* \* \*

The magistrate judge did not err in his conclusions. By separate order, we will adopt the magistrate's order insofar as it does not conflict with this opinion. For the reasons stated here and in the magistrate's order, we will deny Haight's request for discovery in its entirety.

**III**

Haight has also moved the court to proceed ex parte on his request for the court to provide him with expert assistance that he claims is necessary for the litigation of his habeas claims. There is no constitutional guarantee of counsel or expert services in post-conviction proceedings,[10] so his

---

[9] *Cuyler v. Sullivan*, 446 U.S. 335 (1980) and *Holloway v. Arkansas*, 435 U.S. 475 (1978), cited by the magistrate for the proposition that state courts have a duty to investigate the existence of conflicts where the issue has been timely raised, dealt only with *trial* counsel. Those cases are inapposite here, where the essential claim is that *post-conviction* counsel was conflicted and ineffective. The same is true of *Boykin v. Webb*, 541 F.3d 638 (6th Cir. 2008) and *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004).

[10] *See Coleman*, 501 U.S. at 752; *McFarland v. Scott*, 512 U.S. 849, 854-55 (1994) (discussing the rationale behind providing, by statute, this otherwise nonexistent right).

(continued...)

claim rests solely on 18 U.S.C. § 3599. Subsection (a)(2) of that statute provides that a capital habeas petitioner "who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services" as are provided in the balance of the statute. So, if Haight can show that the services he will request (he has not formally requested them yet) are "reasonably necessary," the court is obligated to provide them. We are at this point asked only whether Haight may proceed ex parte in requesting services and demonstrating reasonable necessity. That question is governed by § 3599(f)[11]: "No ex parte proceeding, communication, or request may be considered pursuant to this section unless a proper showing is made concerning the need for confidentiality."

It is, however, unclear how a habeas petitioner such as Haight "can explain the need to proceed ex parte without disclosing the very information they claim a need to keep secret." Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 19.3 n.17 (5th ed. 2009). Other courts faced with this conundrum have fashioned the following procedure:

> First, Petitioner must file and serve a concise motion seeking authorization for investigative or expert assistance that includes a short, case-specific statement of the need for confidentiality. This statement of the need for confidentiality must generically identify the type of services needed and the broad issue or topic (for example, innocence) for which the services are needed. Second, Petitioner must simultaneously file ex parte and under seal his detailed application for authorization for the investigator or expert. In this application, Petitioner must estimate the amount of fees or expenses likely to be incurred and provide factual support for the funding

---

[10](...continued)
Petitioner's reliance on *Ake v. Oklahoma*, 470 U.S. 68 (1985), is misplaced. *Ake* dealt only with trial proceedings, where constitutional considerations are in play, and has no bearing on a petition for habeas corpus (except insofar as a petitioner's trial rights under *Ake* may have been violated, which is not the case here).

[11] Section 3599(f) replaced the former 21 U.S.C. § 848(q)(9), which was substantially identical.

> request. The motion—but not the application with supporting materials—must be served upon Respondent.

*Graves v. Johnson*, 101 F. Supp. 2d 496, 499 (S.D. Tex. 2000) (*citing Shields v. Johnson*, 48 F. Supp. 2d 719, 720 (S.D. Tex. 1999); *Patrick v. Johnson*, 37 F. Supp. 2d 815 (N.D. Tex. 1999)). *See also*, *e.g.*, *Stojetz v. Ishee*, 2007 U.S. Dist. LEXIS 26582 (S.D. Ohio Mar. 27, 2007) (ordering an in camera hearing for the purpose of allowing the petitioner to explain the need for requesting funds ex parte). We think this a sensible solution. It provides specific notice to the government of the purposes for which the petitioner seeks expert assistance without forcing the petitioner to disclose on the record any secrets he may wish to conceal. We will therefore adopt the *Graves* procedure, with the following coda: Upon submission of petitioner's ex parte, sealed application we will first evaluate whether he has made a "proper showing . . . concerning the need for confidentiality." Should we determine confidentiality to be necessary, we will proceed to consider the merits of the application. If we find confidentiality to be unwarranted, petitioner will have the option either to pursue his request for assistance in the regular public course of court business, or to drop the issue and maintain the confidentiality of the information submitted under seal. *See* Hertz & Liebman, *supra*, at § 19.3 n.17.

To this point, Haight has not made a sufficient showing to justify ex parte consideration of his underlying request for expert assistance. Consequently we must at this juncture deny his motion, but with leave to re-file under the procedure spelled out above. We admonish petitioner's counsel that the motion filed in compliance with the first part of the above procedure must provide a more specific explanation of the sort of assistance sought than did the initial motion considered here, which fails to "generically identify the type of services needed and the broad issue or topic . . . for which the services are needed."

\* \* \*

A separate order will effectuate this opinion's conclusions.