UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


RANDY HAIGHT                                                          PETITIONER


v.                                              CIVIL ACTION NO. 3:02-CV-P206-S


RANDY WHITE, Warden                                                  RESPONDENT


## MEMORANDUM OPINION


Petitioner Randy Haight filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 for relief

from custody stemming from his conviction by a Kentucky jury of two counts of murder, two counts

of robbery, and one count of possession of a handgun by a convicted felon. For the murder

convictions, Haight was sentenced to death; he was also sentenced to concurrent terms of twenty

years' imprisonment for the two robbery counts and five years' imprisonment for the handgun

possession count. Currently pending before the court are objections to an order of the magistrate

judge denying a motion by Haight for an evidentiary hearing.

### I.

The basic facts of this case were set forth in a previous opinion of this court:

> On August 18, 1985, Haight escaped from the Johnson County Jail in eastern
> Kentucky. While still on the lam on August 22 (by this time having traveled west to
> Garrard County), he shot and killed Patricia Vance and David Omer through the
> window of their car. He was apprehended in a corn field in Mercer County the next
> day.

(DN 85 at 1-2).

The procedural history of Haight's case is lengthy, and has been covered exhaustively by the

magistrate judge. Hence, the court will only briefly summarize it. Haight was indicted in Garrard

County on charges of murder, robbery, and being a felon in possession of a handgun. He initially pled guilty in exchange for a recommendation by the Commonwealth that he be sentenced to life without parole for 25 years for each count of murder and 20 years for each robbery count, to be served concurrently. However, the Garrard Circuit Court judge sentenced Haight to death. The Kentucky Supreme Court vacated Haight's guilty plea and reinstated the charges in the indictment. *Haight v. Commonwealth*, 760 S.W.2d 84 (Ky. 1988) (*Haight I*).

Upon remand, the case was transferred to Jefferson Circuit Court. The Commonwealth notified Haight that it would seek the death penalty after a trial. Haight filed a petition for a writ of prohibition requiring that the original plea agreement be specifically enforced or that death be removed as a possible penalty. In its second opinion in Haight's case, the Kentucky Supreme Court denied Haight's request for the writ of prohibition. *Haight v. Williamson*, 883 S.W.2d 821 (Ky. 1992) (*Haight II*).

Haight was then tried in the Jefferson Circuit Court. He was convicted and sentenced as noted in the introductory paragraph to this opinion. He took a direct appeal to the Kentucky Supreme Court advancing a host of claims. The Kentucky Supreme Court affirmed Haight's conviction and sentence. *Haight v. Commonwealth*, 938 S.W.2d 243 (Ky. 1996) (*Haight III*).

After his direct appeal was denied, Haight filed a post-conviction motion in the Jefferson Circuit Court pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42. That motion was denied without an evidentiary hearing on September 9, 1998.

On September 21, 1998, Haight filed a notice of appeal from the denial of his RCr 11.42 motion as well as a motion in the Jefferson Circuit Court pursuant to Kentucky Rule of Civil Procedure (CR) 59.05 to vacate that court's order denying his RCr 11.42 motion. Haight thereafter

requested that the Kentucky Supreme Court hold the appeal in abeyance pending the Jefferson Circuit Court's ruling on the CR 59.05 motion. The Kentucky Supreme Court denied the motion to hold the appeal in abeyance.

On June 15, 2000, the Kentucky Supreme Court issued an opinion affirming the denial of Haight's RCr 11.42 motion; that opinion became final on April 26, 2001, when the Kentucky Supreme Court denied Haight's petition for rehearing. *Haight v. Commonwealth*, 41 S.W.3d 436 (Ky. 2001) (*Haight IV*).

Then, on November 29, 2001, Haight filed what he deemed an amendment and supplement to his RCr 11.42 motion and CR 59.05 motion to vacate. On April 6, 2006, the Jefferson Circuit Court entered an order denying the still-pending CR 59.05 motion to vacate on the ground that the issues raised therein had been determined adversely to Haight by the Kentucky Supreme Court and thus the Jefferson Circuit Court was without jurisdiction to hear those issues. On August 23, 2007, the Kentucky Supreme Court affirmed the denial of the CR 59.05 motion. *Haight v. Commonwealth*, 2007 WL 2404494 (Ky. 2007) (*Haight V*).

## II.

Because the magistrate judge's order concerned a nondispositive motion, the standard of review is whether the order "is clearly erroneous or is contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The magistrate judge has provided a thorough overview of the standards relating to evidentiary hearings in habeas corpus actions brought pursuant to 28 U.S.C. § 2254 (DN 128 at 17-25); the court will discuss such standards below only when necessary to resolve Haight's objections.

### III.

Of the claims for which petitioner now seeks an evidentiary hearing, the magistrate judge found that the claims in grounds 6, 9, 11, 13, 15, 16, and 31 of Haight's petition had been adjudicated on the merits by the Kentucky Supreme Court. The magistrate judge then concluded that *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011) barred consideration of any facts other than those in the record before the Kentucky Supreme Court as to those claims, and accordingly denied Haight an evidentiary hearing as to them. Haight disagrees that *Pinholster* precludes an evidentiary hearing as to claims adjudicated by the Kentucky Supreme Court.

### A.

The basic facts in *Pinholster* are as follows: Pinholster was tried and convicted of two counts of first-degree murder and sentenced to death. 131 S.Ct. at 1395-1396. During the penalty phase of Pinholster's trial, his attorneys did not call a psychiatrist, although they did consult Dr. John Stalberg before the trial. *Id.* at 1396. Dr. Stalberg had "noted Pinholster's 'psycopathic personality traits,' diagnosed him with antisocial personality disorder, and concluded that he 'was not under the influence of extreme mental or emotional disturbance' at the time of the murders." *Id.* After Pinholster's conviction was affirmed on direct appeal by the California Supreme Court, Pinholster, through state post-conviction proceedings, raised, *inter alia*, a claim of ineffective assistance of counsel at the penalty phase of his trial for his attorneys' alleged failure to adequately investigate and present mitigating evidence concerning mental disorders. *Id.*. Pinholster adduced various pieces of evidence before the state courts as to that claim: medical, school, and legal records; declarations from family members, one of his defense attorneys, and Dr. George Woods, a psychiatrist who criticized Dr. Stalberg's report; and a declaration from Dr. Stalberg. *Id.* However, the California

Supreme Court twice rejected the penalty-phase ineffectiveness claim on its merits. *Id.* at 1396-1397. Pinholster sought federal habeas relief on that claim. *Id.* The federal district court granted Pinholster an evidentiary hearing, at which Pinholster called two new medical experts: Dr. Sophia Vindogradov, a psychiatrist, and Dr. Donald Olsen, a pediatric neurologist. *Id.* at 1397. After the hearing, the district court granted Pinholster habeas relief on the penalty-phase ineffectiveness claim. *Id.* A panel of the Ninth Circuit reversed, but in a rehearing en banc, the Ninth Circuit vacated the panel opinion and affirmed the district court's grant of habeas relief. *Id.*

The Supreme Court found that the Ninth Circuit erred in considering the evidence produced at the evidentiary hearing held by the district court. The Supreme Court explained that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) set limits on the powers of federal courts to grant writs of habeas corpus to state prisoners. *Pinholster*, 131 S.Ct. at 1398. One of those limits is that when a claim is "adjudicated on the merits in State court proceedings," habeas relief may be granted only if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (quoting 28 U.S.C. § 2254(d)). The Supreme Court found that review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* In so holding, the Supreme Court noted the "backward-looking language" of the statute, as well as the incongruity that would arise from asking whether a state court's adjudication resulted in a decision unreasonably applying federal law to facts that were not before the state court. *Id.* at 1398-1399. In sum, the Supreme Court stated, "If a claim has been adjudicated on the merits by a state court, a

federal habeas petition must overcome the limitation of § 2254(d)(1) on the record that was before the state court." *Id.* at 1400. It would thus appear that the application of *Pinholster* to Haight's motion for an evidentiary hearing is abundantly clear: if the Kentucky Supreme Court adjudicated one of Haight's claims on the merits, then Haight is not entitled to an evidentiary hearing as to that claim.

Haight, however, contends that he is not foreclosed from an evidentiary hearing on the claims adjudicated by the Kentucky Supreme Court on the merits. He relies in large part on *Panetti v. Quarterman*, 551 U.S. 930 (2007). Thus, we turn to that case.

In *Panetti*, Panetti argued in Texas state court that he was incompetent to be executed. 551 U.S. at 938. The Texas state court appointed two mental health experts, who concluded that Panetti was competent to be executed. *Id.* at 939-940. Panetti sought a competency hearing, arguing that he was entitled to procedural due process requirements set forth in *Ford v. Wainwright*, 477 U.S. 399 (1986). *Panetti*, 551 U.S. at 939, 941. Without providing Panetti any further opportunity to present evidence that he was incompetent or to contest the findings of the court-appointed experts, the Texas state court adopted the report submitted by the court-appointed experts and found that Panetti had not shown that he was incompetent to be executed. *Id.* at 941.

The Supreme Court found that the "state court's failure to provide the procedures mandated by *Ford* constituted an unreasonable application of clearly established law as determined by this Court." *Id.* at 948. Because the Texas state court unreasonably applied *Ford*, the state court's determination of competency was not entitled to any deference. *Id.* at 954. The Supreme Court explained, "When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must

then resolve the claim without the deference AEDPA otherwise requires." *Id.* at 953. Thus, the Supreme Court sanctioned de novo review of Panetti's competency claim by the federal district court based on evidence adduced at an evidentiary hearing held by the federal district court. *See id.* at 954-962.

According to Haight, his case and *Panetti* are similar because both he and Panetti had motions for funds for experts, discovery, and an evidentiary hearing pending when a state court judge entered an order denying their claims on the merits. However, Haight's analogy fails.

The key to the Supreme Court's holding in *Panetti* was that the state court's failure to grant Panetti an evidentiary hearing as to his competency to be executed was an unreasonable application of clearly-established federal law as set forth by the Supreme Court in *Ford*. As the Supreme Court explained in *Panetti*, *Ford* mandated that, once a prisoner made a "'substantial threshold showing of insanity,'" he was entitled to, at the very least, "an opportunity to submit 'evidence and argument from the prisoner's counsel, including expert psychiatric evidence that may differ from the State's own psychiatric examination.'" *Panetti*, 551 U.S. at 950 (quoting *Ford*, 477 U.S. at 426, 427 (Powell, J., concurring)). But Panetti never received that opportunity.

Thus, for Haight's situation to be truly analogous to Panetti's, Haight must show that he had a clearly established constitutional right to some procedure that he did not receive. But Haight has not made such a showing. True, when the state court denied Haight's post-conviction RCr 11.42 motion, there were pending motions for expert witness funds, discovery, and an evidentiary hearing that the state court had not yet ruled upon. But for all that Haight complains that it was unfair for the state court to deny him expert funds, discovery, and an evidentiary hearing, he does not identify any Supreme Court precedent holding that he has a constitutional right to post-conviction expert

funds, discovery, or a hearing. Indeed, as the magistrate judge pointed out in his order, courts in the Sixth Circuit have long held that errors in the state post-conviction process are not proper subjects of federal habeas corpus review (DN 128 at 31-32). As Haight has not, and cannot, show that the state court's post-conviction procedures were unreasonable applications of clearly established federal law, he also cannot show that his case is analogous to *Panetti*.

In short, this court agrees with the magistrate judge that under *Pinholster* this court is limited to the record before the state court when determining pursuant to § 2254(d)(1) whether a claim that the state court adjudicated on the merits involved an unreasonable application of clearly established federal law.

B.

*Ground 6*

In ground 6, Haight claims that his trial attorney was ineffective during the penalty stage of his trial for failing to seek to introduce evidence that the Commonwealth had previously offered Haight a plea with a sentence of life imprisonment which Haight had accepted. The Kentucky Supreme Court rejected that claim in section X of *Haight IV*. 41 S.W.3d at 447-448. It found that the right to introduce such evidence had not been decided in Kentucky and Haight's attorney could not be considered constitutionally deficient for failing to advance a novel theory that such evidence should be admitted. *Id.* As the magistrate judge found, the Kentucky Supreme Court's rejection of that claim renders an evidentiary hearing on it inappropriate under *Pinholster*.

*Ground 9*

Haight seeks an evidentiary hearing as to his claim in ground 9 that his trial attorney rendered ineffective assistance in failing to move for a mistrial because alternate juror Donahue sat

in close proximity to family members of the victims. In his objections, Haight takes issue with the magistrate judge's finding that the Kentucky Supreme Court adjudicated this claim on the merits.

In *Haight III*, the Kentucky Supreme Court stated:

[A]ppellant has raised questions concerning jurors Hansen, Ireland, Huffman, Nestmann and Gaugh. He has also questioned the post-discharge behavior of an alternate juror and complained that the court coerced a penalty phase verdict. This Court has carefully considered each of these claims of error and determined that as to each, there was no preservation of the question or that the ruling was within the sound discretion of the trial court.

938 S.W.2d at 247. Then, in section VI of *Haight IV*, the Kentucky Supreme Court, at the end of a paragraph rejecting complaints by Haight related to jury issues, stated, "The allegation with respect to juror Donahue was rejected in the direct appeal of this case. Defense counsel was not ineffective and Haight received a fundamentally fair trial by an impartial jury." 41 S.W.3d at 446.

The court agrees with the magistrate judge that the Kentucky Supreme Court rejected the claim in ground 9 concerning juror Donahue on the merits. While the Kentucky Supreme Court's statements in *Haight III* may not have been entirely clear, leaving open the possibility that the claim was being rejected on procedural grounds, the statements in *Haight IV* left no such possibility open. In *Haight IV*, the Kentucky Supreme Court stated in no uncertain terms that, in regard to Haight's claim about juror Donahue, defense counsel was not ineffective, the trial was fundamentally fair, and the jury was impartial. Accordingly, as the claim in ground 9 was adjudicated on the merits by the Kentucky Supreme Court, *Pinholster* limits the § 2254(d) review to the record before that court.

*Grounds 11 and 31*

In ground 11, Haight contends that his constitutional rights were violated when the trial court, during the post-conviction proceedings, did not provide him an opportunity to request expert funding. In ground 31, Haight claims that, after his trial attorney discovered a 1973 mental health

evaluation of Haight during the trial, the trial court should have provided Haight an opportunity to explore that report and expert funds to do so. The magistrate judge found that the Kentucky Supreme Court addressed those claims on the merits.[1]

In his objections, Haight does not suggest that the magistrate judge was wrong that the Kentucky Supreme Court adjudicated the claims in grounds 11 and 31 of the habeas petition on its merits. Instead, as to ground 11, Haight's analysis is nothing more than the statement, "The Magistrate Judge's Order is clearly erroneous and contrary to law." And, as to ground 31, Haight uses his objections only to attack the Kentucky Supreme Court's merit-based rejection of that claim. As there appears to be no dispute that the Kentucky Supreme Court adjudicated the claims in grounds 11 and 31 on the merits, no evidentiary hearing is warranted on those claims under *Pinholster*.

*Ground 13*

In ground 13, Haight claims that his trial attorney was ineffective for failing to investigate and present mitigation evidence in the form of a neuropsychological expert and a psychopharmacologist. The magistrate noted that the Kentucky Supreme Court adjudicated that claim on its merits in *Haight IV*. Haight does not disagree. Accordingly, *Pinholster* limits review of that claim under § 2254(d) to the state court record.

---

[1] The magistrate judge also found that the claim in ground 11 did not warrant an evidentiary hearing because it involved nothing more than the adequacy of state post-conviction proceedings, which are not of federal concern. The magistrate judge further noted that both he and the undersigned have previously denied Haight's request for funds to retain mental health experts because such new expert testimony would not be relevant to the underlying claim of ineffective assistance of counsel.

*Ground 15*

In ground 15, Haight contends that his trial attorney rendered ineffective assistance of counsel at the penalty phase of his trial by failing to request that the court instruct the jury not to draw an adverse inference from his failure to testify during the penalty phase. The magistrate judge found the claim to have been adjudicated on its merits by the Kentucky Supreme Court in *Haight IV*, but Haight suggests in his objections that the magistrate judge's conclusion is wrong.

In section XI of *Haight IV*, the Kentucky Supreme Court stated:

Haight complains that trial counsel was ineffective by not requesting that a "No adverse inference" instruction relating to the defendant's right to remain silent be given at the penalty phase. Haight testified at the guilt phase of this trial, but he did not testify during the penalty phase. His counsel did not tender a "No adverse inference" instruction, did not request such an instruction or object to the failure of the court to give one. He asserts that it was incumbent upon the trial judge to instruct the jury that the defendant did not have an obligation to testify in mitigation and no adverse influence could be drawn from his failure to do so.

This claim does not amount to ineffective assistance of counsel. The allegation is not properly presented on his appeal because it was an issue on direct appeal of the case. Haight did testify during the guilt phase of his trial and admitted killing the two victims. *Carter v. Kentucky*, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981), is not applicable.

41 S.W.3d at 448.

The court agrees with the magistrate judge that the Kentucky Supreme Court addressed this claim on the merits. Although the Kentucky Supreme Court referenced a possible procedural bar – albeit an erroneous one since Haight did not raise this issue on direct appeal – the language of the Kentucky Supreme Court's opinion indicates that its decision rests on the merits of the claim. For one thing, the analysis begins with a direct rejection of the ineffective assistance of counsel aspect of the claim. It also explains that Haight had testified during the guilt phase before finding that *Carter v. Kentucky*, a Supreme Court case holding that a court is obligated to give a no-adverse-

interest instruction when a defendant requests one, was inapplicable. The clear implication was that Haight's situation was distinguishable from that in *Carter*, and thus that his argument concerning the propriety of his attorney's failure to request, and the court's failure to give, a no-adverse-inference instruction failed on the merits. Whether or not the language concerning Haight having raised the issue on direct appeal is considered an invocation of a procedural bar, it is plain that the Kentucky Supreme Court also found Haight's argument to be without merit. Accordingly, the Kentucky Supreme Court's merits conclusion must be reviewed under § 2254(d) standards. *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010) ("[W]e give AEDPA deference to a ruling on the merits despite the fact that the reasoning was given as an alternative to a primary grounds for decision."); *Brooks v. Bagley*, 513 F.3d 618, 625 (6th Cir. 2008) ("While the state court of appeals need not have addressed the claim on the merits once it identified a procedural bar, it surely had the authority to do so as an additional ground for decision – making this additional ground no less a 'claim that was adjudicated on the merits in State court proceedings' than if the case had not presented a procedural-bar issue at all."). Thus, an evidentiary hearing is unwarranted under *Pinholster*.

*Ground 16*

In ground 16, Haight claims that his trial attorney was ineffective for failing to offer as mitigation evidence a letter Haight wrote to a family member of one victim. The Kentucky Supreme Court indisputably adjudicated that claim on the merits in section XII of *Haight IV*, 41 S.W.3d at 448-449. Accordingly, no evidentiary hearing is warranted on that claim.

## C.

In short, for each of the claims discussed above, the court agrees with the magistrate judge that the Kentucky Supreme Court adjudicated the claims on the merits. Thus, those claims are still subject to the § 2254(d) analysis. *Pinholster* makes clear that this court may not consider new evidence that was not presented to the state court when conducting the § 2254(d) analysis.[2]

## IV.

The magistrate judge denied an evidentiary hearing on the claims in grounds 14, 43, 44, and 45 after determining that those claims had been procedurally defaulted. Haight argues in his objections that he is entitled to an evidentiary hearing as to each of those claims.

*Ground 14*

In ground 14, Haight raises claims concerning his trial attorney's actions with respect to certain jurors that allegedly fell asleep during the penalty phase of the trial. During a bench conference regarding penalty phase jury instructions, Haight's attorney stated that the jury appeared to have "a short attention span, with a couple of them sleeping through the penalty phase, even in the morning." Haight's attorney provided no further facts and did not move for a mistrial or other relief.

In section IX of *Haight IV*, the Kentucky Supreme Court addressed Haight's claim that his attorney was ineffective for failing to take further action with respect to the allegedly sleeping jurors. The Kentucky Supreme Court stated:

---

[2] While Haight suggests that an evidentiary hearing may be held if the claims are not barred by § 2254(d), i.e., the Kentucky Supreme Court's determination of the claims was based on an unreasonable application of the law or facts, the court has not yet conducted any § 2254(d) analysis. Thus, it was not error for the magistrate judge to deny an evidentiary hearing based on the holding of *Pinholster*.

Haight argues that trial counsel was ineffective because he failed to move for a mistrial or make any effort to get factual details into the record regarding the alleged sleeping of jurors during part of the penalty phase. He also contends that the trial judge committed error when he took no action on his own initiative.

Haight does not plead this claim with the specificity required by RCr 11.42(2). He does not state which jurors were alleged to be sleeping and he does not indicate when the event occurred, if it actually took place. Haight is not entitled to the requested relief.

Haight does not indicate what information the jurors supposedly missed and how that would have changed the outcome of his trial. If defense counsel did see jurors with their eyes closed, there is no evidence that they were sleeping. In addition there is no evidence that the trial judge ever observed the alleged sleeping.

*Haight IV*, 41 S.W.3d at 447.

The Kentucky Supreme Court thus relied upon a state procedural rule – the requirement in RCr 11.42(2) that a movant state "specifically . . . the facts on which the movant relies" in support of his motion to vacate – to dispose of the claim. Of course, if that procedural ruling bars this court from considering the claim, then there would be no need to grant an evidentiary hearing on the claim.

Haight, however, argues that this court is not barred from considering ground 14 of the petition because, according to Haight, he has can establish cause for his procedural default under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). Until *Martinez*, the rule in the Sixth Circuit was that a claim of ineffective assistance of post-conviction counsel was insufficient to establish cause for a procedural default. *See Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 425 (6th Cir. 2003). Then, the Supreme Court held in *Martinez* that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was

ineffective." *Martinez*, 132 S.Ct. at 1320. Thus, under *Martinez*, there is now a "narrow exception" to the general rule that claims of ineffective assistance of post-conviction counsel are insufficient to establish cause for a procedural default. *Id.* at 1315.

The magistrate judge held that *Martinez* did not apply to Haight's claim in ground 14 because *Martinez* pertains only to "omitted" post-conviction claims, not claims that were raised by post-conviction counsel but denied on other procedural grounds. Here, the magistrate judge noted, Haight's post-conviction attorneys actually raised in the state post-conviction proceedings the claim that he presented in ground 14 of his habeas petition.

As to the applicability of *Martinez* to a situation where a post-conviction attorney raises a claim of ineffective assistance of trial counsel in an initial-review collateral proceeding, but does so in a manner that fails to meet the requirements of a procedural rule, the court must disagree with the magistrate judge. *Martinez* is clear that errors by post-conviction attorneys in collateral proceedings that rise to the level of ineffective assistance of counsel may be sufficient to establish cause for a procedural default of an ineffective assistance of trial counsel claim. That is so whether the post-conviction attorney entirely failed to raise the claim or raised the claim, but did so in a manner that was insufficient to meet prevailing professional standards. *See, e.g.*, *Martinez*, 132 S.Ct. at 1315 ("When faced with the question whether there is cause for an apparent default, a State may answer . . . that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.").

Nonetheless, the court agrees with the magistrate judge's ultimate conclusion that an evidentiary hearing as to the claim in ground 14 is unwarranted. As detailed above, the court finds that *Martinez* allows a habeas petitioner to argue that he has cause for a procedural default of an

ineffective assistance of trial counsel claim because his post-conviction attorney raised that claim in an initial review collateral proceeding in an ineffective manner. But it is still up to Haight to establish that his post-conviction attorney performed below the *Strickland* standard and that the underlying claim of ineffective assistance of trial counsel claim is "a substantial one." *See Martinez*, 132 S.Ct. at 1319.

However, as the magistrate judge pointed out, Haight fails to provide any meaningful explanation of what facts he would elicit at the evidentiary hearing were the court to grant one. Even after the magistrate judge pointed that out in his opinion, Haight largely declined to elaborate in his objections as to what facts he could show at an evidentiary hearing. He simply makes the statement that he wishes to "present evidence regarding exactly which jurors were sleeping, for how long, and what evidence was presented while they slept," without explaining what facts such evidence will actually adduce. Thus, the court is left with no information as to why an evidentiary hearing would be worthwhile. In other words, while Haight states general areas into which he would like to inquire, he points this court to no factual allegations which, if true, would establish cause and prejudice. Indeed, Haight's unwillingness to state what facts he believes he could show at an evidentiary hearing not only renders this court unable to conclude that an evidentiary hearing would be anything other than a waste of time and resources, but it also strongly suggests that Haight views the evidentiary hearing as a fishing expedition rather than an opportunity to prove relevant facts to the court. The need to allege specific facts in support of his arguments should have been of particular concern to Haight given that it was the same lack of factual specificity about the underlying ineffective-assistance-of-trial-counsel claim that led to the procedural default of that claim. Haight cannot show that his post-conviction attorney was

ineffective for failing to allege specific facts when Haight continues to decline to state what facts could have and should have been alleged.

Simply put, for the court to conclude that an evidentiary hearing is necessary, Haight must tell the court what facts he can prove that will ultimately lead to his success. He has not attempted to do. Thus, the court will overrule his objections to the magistrate judge's denial of an evidentiary hearing as to this point.

*Ground 43*

In ground 43, Haight sets forth a claim of ineffective assistance of appellate counsel based on the failure of counsel on Haight's direct appeal to challenge the trial court's refusal to instruct the jury on theft by unlawful taking as a lesser included offense of robbery. The claim was first raised in Haight's amendment and supplement to his RCr 11.42 motion and CR 59.05 motion. Despite the name given to that document by Haight, it was filed after the Kentucky Supreme Court had issued *Haight IV*, affirming the Jefferson Circuit Court's denial of the original RCr 11.42 motion, although the CR 59.05 motion was still pending. The Jefferson Circuit Court ultimately denied the CR 59.05 motion on the basis that it had no jurisdiction to consider the motion.

In *Haight V*, the Kentucky Supreme Court found that the Jefferson Circuit Court properly determined that it did not have jurisdiction to rule on the CR 59.05 motion by virtue of the fact that the Kentucky Supreme Court had declined to abate Haight's appeal from the judgment denying his RCr 11.42 motion and had subsequently issued its opinion in *Haight IV* affirming the judgment denying Haight's RCr 11.42 motion. *Haight V*, 2007 WL 2404494, at *2. The Kentucky Supreme Court noted that allowing the circuit court to rule on the motion to vacate after the Kentucky Supreme Court issued its decision affirming the denial of the RCr 11.42 motion would essentially

allow the circuit court to "make a ruling in a case that could possibly overturn th[e Kentucky Supreme Court's] appellate ruling on the same motion." *Id.* The Kentucky Supreme Court continued:

> The remaining issues raised by Haight – that he was denied his right to counsel in the post-conviction proceeding because of conflicts of interest within the Department of Appellate Advocacy, that he should have been granted leave to amend and supplement his RCr 11.42 motion, that he was denied effective assistance of counsel at trial, and that he should have gotten Wanton Murder and Theft instructions – are issues that either were raised in the RCr 11.42 motion and on direct appeal, or should have been raised in the RCr 11.42 motion or on direct appeal. RCr 11.42(3) provides, "The motion shall state all grounds for holding the sentence invalid of which the movant has knowledge. Final disposition of the motion shall conclude all issues that could reasonably have been presented in the same proceeding. Also, to the extent that certain of the issues were raised for the first time in the CR 59.05 motion, it has been held that a party cannot invoke CR 59.05 to raise issues that could have been presented in the proceedings prior to entry of the judgment. In viewing Haight's CR 59.05 motion, we see that the issues raised in that motion were issues that were known to Haight prior to the filing of his RCr 11.42 motion.

*Id.* at *3 (citations omitted).

In a prior order concerning discovery on this claim, this court found the claim of ineffective assistance of appellate counsel for failing to argue the theft instruction issue to be procedurally defaulted because the Kentucky Supreme Court held that it was one of several that "should have been raised in the [Ky. R. Crim. P.] 11.42 motion or on direct appeal" and offered no alternative ground for its judgment (DN 85 at 10). The Court finds no reason to reverse course on that holding.

In his objections, Haight argues that the Kentucky Supreme Court's finding that the circuit court was without jurisdiction to consider the CR 59.05 motion was not an independent and adequate state ground because it was not a regularly applied rule. In support, Haight cites a number of cases where a Kentucky appellate court made some statement indicating that it was considering an appeal from both an order denying an RCr 11.42 motion and a CR 59.05 motion to vacate that order.

But Haight's concern over whether the circuit court had jurisdiction to address the CR 59.05 motion is misplaced, at least insofar as it relates to ground 43 of the petition. The jurisdictional issue related to whether the circuit court could, in effect, reconsider the claims raised in the original RCr 11.42 motion by considering the CR 59.05 motion to vacate. Thus, the Kentucky Supreme Court found that it would be inappropriate for the circuit court to consider the CR 59.05 motion since the Kentucky Supreme Court had already issued a decision affirming the denial of the RCr 11.42 motion and allowing the circuit court to consider the CR 59.05 motion would allow the circuit to "possibly overturn this Court's appellate ruling." *Haight V*, 2007 WL 2404494, at *2.

But the claim in ground 43 of the petition was not raised in the original RCr 11.42 motion or, for that matter, in the initial CR 59.05 motion. Rather, the claim in ground 43 was first put to the trial court in the amendment and supplement that Haight filed *after* the Kentucky Supreme Court had already affirmed the denial of the original RCr 11.42 motion. Thus, it fell in the pile of "remaining issues raised by Haight" that the Kentucky Supreme Court declined to address on the merits on the basis that they should have been raised previously. 2007 WL 2404494, at *3. In that regard, the Kentucky Supreme Court quoted RCr 11.42(3): "The motion shall state all grounds for holding the sentence invalid of which the movant has knowledge. Final disposition of the motion shall conclude all issues that could reasonably have been presented in the same proceeding." *Id.* The Kentucky Supreme Court also noted the rule that a CR 59.05 motion could not be used to raise issues that could have been presented prior to entry of the judgment. *Id.* Simply put, it is clear that the Kentucky Supreme Court declined to review the issues raised for the first time in the amendment and supplement due to the fact that the issues could have been – but were not – raised previously.

In its previous order, the court also found that Haight was without "cause" for his procedural default (DN 85 at 11-13). The court relied upon Sixth Circuit precedent to find that Haight could not allege ineffective assistance of post-conviction counsel as cause for defaulting his ineffective assistance of appellate counsel claim (*see id.* at 13 n.6). *Martinez* has since clarified an exception to that rule. 132 S.Ct. at 1315. The magistrate judge concluded that the exception in *Martinez* applied to the claim in ground 43, thus allowing Haight to argue that his post-conviction attorneys' ineffectiveness constituted cause for his procedural default of that claim (DN 128 at 65-67). The magistrate judge nonetheless denied an evidentiary hearing on the claim in ground 43 because he found that Haight could not demonstrate prejudice from the failure of his post-conviction attorneys to raise that claim (DN 128 at 67-71).

After the magistrate judge issued the order denying an evidentiary hearing, the Sixth Circuit issued a decision in *Hodges v. Colson*, 2013 WL 4414811 (6th Cir. 2013). In that case, the Sixth Circuit concluded that the exception in *Martinez* applied only when the underlying claim was one for ineffective assistance of counsel *at trial*. *Hodges*, 2013 WL 4414811, at *9. Thus, with respect to Hodge's claim of ineffective assistance of appellate counsel, the Sixth Circuit found that he could not rely on *Martinez* to argue that his post-conviction attorneys' incompetence sufficed as cause for defaulting that claim. *Id.* at *9-*10. Haight therefore cannot establish cause for defaulting his ineffective assistance of appellate counsel claim by pointing to the failure of his post-conviction attorneys to raise the claim in his initial RCr 11.42 motion. Thus, there is no reason to grant Haight an evidentiary hearing as to the claim in ground 43.

*Ground 44*

In ground 44, Haight claims that his trial attorney rendered ineffective assistance by not seeking an instruction regarding wanton murder and by failing to advise Haight regarding wanton murder. As with ground 43, Haight first raised the claim in ground 44 in his amendment and supplement that he filed in the circuit court after the Kentucky Supreme Court issued *Haight IV*. As discussed above, Haight procedurally defaulted the claims raised for the first time in the amendment and supplement by failing to raise them at an earlier time.

Turning to whether Haight can establish cause for procedurally defaulting the claim in ground 44, Haight lays blame at the feet of his post-conviction attorneys. He states that his post-conviction attorneys should have raised in the initial RCr 11.42 motion a claim of ineffective assistance of trial counsel for failing to ask for the wanton murder instruction and a claim of ineffective assistance of appellate counsel for failing to raise the issue as unpreserved error (*see* DN 131-2 at 88). He accordingly argues that his post-conviction attorneys' failures constitute cause for his procedural default.

As to the argument that his post-conviction attorneys should have raised a claim of ineffective assistance of appellate counsel, the discussion of *Hodges* in the section of this opinion concerning ground 43 applies. *Hodges* holds that *Martinez* does not allow a habeas petitioner to argue cause for procedurally defaulting an ineffective assistance of appellate counsel claim based on the failure of post-conviction counsel to raise such a claim.

However, *Martinez* does allow for an argument by Haight that his post-conviction attorneys' failure to raise a claim concerning trial counsel's alleged ineffectiveness for not requesting a wanton murder instruction constituted cause to excuse the procedural default of such an ineffective

assistance of trial counsel claim. Nevertheless, the court finds that an evidentiary hearing on this claim is unwarranted because, even if Haight were to prove what he says he can prove, he will not have shown that his post-conviction attorney nor his trial attorney were ineffective, meaning that he cannot establish cause or prejudice for his procedural default nor can he establish that he would be entitled to relief on his underlying claim.

In his evidentiary motion, Haight explains his claim thusly: had his trial attorney requested a wanton murder instruction, the trial court would have been required to give the jury such an instruction. And had the jury convicted Haight of wanton murder rather than intentional murder, then one of the two aggravating circumstances in the case – that Haight's "acts of killing were intentional and resulted in multiple deaths," KRS § 532.025 – would not have been present. Accordingly, Haight faults his trial attorney for failing to request the wanton murder instruction.

Yet, upon a fuller understanding of the relevant law, a strategic reason for Haight's trial attorney's decision not to request a wanton murder instruction is readily apparent. Namely, wanton murder is not a lesser-included offense of intentional murder, but is another form of committing murder. *Ratliff v. Commonwealth*, 194 S.W.3d 258, 275 (Ky. 2006) (quoting *Foster v. Commonwealth*, 827 S.W.2d 670, 677-678 (Ky. 1991)). Thus, both intentional murder and wanton murder are capital offenses. KRS § 507.020. Had Haight been convicted of wanton murder, he still would have potentially faced the death penalty. By contrast, the instruction defense counsel sought and received on first-degree manslaughter provided an opportunity for Haight to avoid the death penalty entirely. It is not hard to see why a defense attorney would choose to submit just one

alternative offense, which would eliminate any possibility of the death penalty, rather than two alternative offenses, one of which left the possibility of the death penalty on the table.[3]

Additionally, the law requires a "strong presumption that counsel acted reasonably and effectively." *Moore v. Commonwealth*, 983 S.W.2d 479, 480 (citing *Strickland v. Washington*, 466 U.S. 668, 689-690 (1984). Taking into account the presumption and the readily apparent strategic reason for a defense attorney to decline to seek an alternative jury instruction that still would have left the possibility of the death penalty open, Haight's ineffective assistance of trial counsel claim for failure to seek a wanton murder instruction would have faced a large hurdle before the state court.

The information Haight states that he would elicit at an evidentiary hearing is insufficient to surmount the hurdle. Haight states that he would show that he consulted with his trial attorneys about his testimony prior to taking the stand, but counsel never discussed whether to request a wanton murder instruction with Haight despite knowing that Haight would tell the jury that he had no intention of killing the victims. But the court declines to find that counsel was ineffective simply because he did not discuss with Haight whether to request that the court instruct the jury on an alternative charge that still would have left Haight open to the death penalty.

Relying primarily on *Jacobs v. Commonwealth*, 870 S.W.2d 412 (Ky. 1994), Haight contends that the choice of defense in the case was his to make, not his attorney's. However, *Jacobs* affords Haight little help. In that case, the Kentucky Supreme Court found that the defendant's right to present a defense of innocence was undermined by his attorney's presentation of an insanity

---

[3] In fact, had the defense attorney requested and received an alternative instruction on a capital crime, a claim of ineffective assistance of counsel based on that action would have had just as much, if not more, facial appeal than Haight's claim that his defense attorney was ineffective for not requesting such an instruction.

defense to the jury. *Jacobs*, 870 S.W.2d at 417-418. Here, of course, it cannot be disputed that Haight, who testified as to his version of the facts, was able to put the defense of his choosing before the jury – namely, that he did not have a murderous intent and thus should be convicted of a lesser crime than capital murder. *Jacobs* and this case are simply not analogous. The stark choice between whether to present an innocence or insanity defense is entirely different from the question of whether to offer the jurors an alternative "middle-ground" charge of which they could convict a defendant. That is all the more true in this case, where the ostensible "middle-ground" charge that defense counsel was supposedly ineffective for failing to seek would still have been a capital offense.

In short, the court believes that, even taking into account the evidence that Haight suggests he would put forth at an evidentiary hearing, he would not be able to establish that his trial attorney was ineffective. Further, Haight's failure to make allegations sufficient to show that his trial attorney was ineffective also render inadequate his suggestion that he has cause for procedurally defaulting his claim based upon his post-conviction attorney's supposed ineffectiveness; his post-conviction attorney certainly cannot be faulted for failing to raise a meritless claim. Thus, the court finds that an evidentiary hearing is unwarranted on the claim in ground 44.

*Ground 45*

The claim in ground 45 is a cumulative ineffective assistance of trial counsel claim. Haight explains it in his objections as being "based upon all of the instances of ineffective assistance of trial counsel, especially how trial counsel ignored his client's rights and wishes." The cumulative ineffective assistance of counsel claim was raised for the first time in the amendment and supplement in which Haight also raised the claims in grounds 43 and 44 for the first time . Thus, as with both of those grounds, Haight procedurally defaulted ground 45.

The magistrate judge concluded that Haight had not shown any entitlement to an evidentiary hearing on ground 45 because Haight had provided "no suggestion of what evidence he would hope to present or how it would materially alter the possible outcome of his petition" with respect to that claim. Even after the magistrate judge pointed that out, Haight has made no attempt in his objections to elucidate what evidence he would submit. Accordingly, the court sees no basis for overturning the magistrate judge's ruling that an evidentiary hearing on ground 45 is not warranted.

**V.**

*Grounds 7 and 10*

Grounds 7 and 10 of Haight's motion both relate to the adequacy of Kentucky's post-conviction procedures. In ground 7, Haight claims that he was denied due process when the circuit court declined to hold an evidentiary hearing on his RCr 11.42 motion. In ground 10, Haight argues that he was denied due process when the circuit court did not permit him to amend his RCr 11.42 motion prior to denying that motion.

In his motion for an evidentiary hearing, Haight included grounds 7 and 10 in a list of grounds for which he does not seek an evidentiary hearing and omitted them from his list of grounds for which he did seek an evidentiary hearing. However, in his memorandum of law supporting the motion, Haight made reference to grounds 7 and 10. The magistrate judge stated that the omission of grounds 7 and 10 from the list of grounds for which Haight seeks an evidentiary hearing would alone be sufficient to deny an evidentiary hearing on those grounds (DN 128 at 30). Nevertheless, the magistrate judge continued to note an "even more fundamental problem" with those habeas claims. Specifically, the magistrate judge held that habeas corpus relief is not available for supposed

deficiencies and errors in state post-conviction proceedings because such claims address collateral matters that do not underlie the state conviction (DN 128 at 30-32).

In his objections, Haight notes that his failure to include grounds 7 and 10 in a list of claims for which he sought an evidentiary hearing was due to inadvertence on his part (DN 131 at 2 n.1). But he then fails to provide any argument as to why the magistrate judge's conclusion regarding the "even more fundamental problem" with grounds 7 and 10 is in any way wrong. Because Haight failed to object to the magistrate judge's conclusion that grounds 7 and 10 are not proper grounds for habeas relief, and because the court agrees with the magistrate judge's analysis in that respect, Haight has not shown that he is entitled to an evidentiary hearing as to grounds 7 and 10.

## VI.

For the reasons stated above, the Objection to Magistrate Whalin's Order Denying Petitioner's Request for an Evidentiary Hearing filed by Petitioner Randy Haight will be overruled by separate ordered entered herein this date.

**IT IS SO ORDERED.**

September 11, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**