UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:02-CV-00206-GNS-DW


RANDY HAIGHT                                                    PETITIONER


v.


RANDY WHITE, Warden                                            RESPONDENT


## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (DN 1), as amended, and Petitioner's Motion for Summary Judgment (DN 141). The Magistrate Judge has issued Findings of Fact, Conclusions of Law, and Recommendation ("R&R") (DN 160) recommending that the Petitioner's federal habeas Petition and his Motion for Summary Judgment be denied. The Petitioner has filed his Objection to the Report and Recommendation (DN 166). For the following reasons, the Petitioner's Objection is **OVERRULED** and the Magistrate Judge's R&R is **ADOPTED** to the extent that it does not conflict with this opinion of the Court.

## I.      BACKGROUND

The Magistrate Judge's R&R sets forth in detail the extensive procedural history and the relevant facts of this matter, which the Court incorporates herein by reference. (R. & R. 2-15, DN 160).

## II.  JURISDICTION

This Court has jurisdiction to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court . . . ."  28 U.S.C. § 2254(a).

## III.  STANDARD OF REVIEW

### A.  The Antiterrorism and Effective Death Penalty Act of 1996 Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas corpus relief is available to state prisoners who are in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  To establish a right to relief, a petitioner must show that the state's highest court rejected the petitioner's claim on the merits, and that this rejection was:  (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id*. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 98 (2011).  These standards apply regardless of whether the state court explained its reasons for rejecting a prisoner's claim.  *Harrington*, 562 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").

Under the "contrary to" clause, a federal court may grant a writ of habeas corpus relief if the state court arrives at a conclusion contrary to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the U.S. Supreme Court has decided on a set of materially indistinguishable facts.  *Jones v. Jamrog*, 414 F.3d 585, 591 (6th Cir. 2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  Under the

"unreasonable application" clause, a federal court may grant habeas corpus relief if the state court identifies the correct governing legal principle from the U.S. Supreme Court's decisions, but unreasonably applies that principle to the facts. *Id.* (citing *Williams*, 529 U.S. at 409). Relief is also available under this clause if the state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from U.S. Supreme Court precedent to a new context. *Williams*, 529 U.S. at 407. The proper inquiry is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Id.* at 409-11.

It is not enough that a federal court conclude in its independent judgment that the state court decision is incorrect or erroneous. *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)). *See also Holder v. Palmer*, 588 F.3d 328, 337 (6th Cir. 2009) (explaining that a state court decision is not an unreasonable application merely because the state court's reasoning is flawed). "The state court's application of clearly established law must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citing *Williams*, 529 U.S. at 409). *See also Renico v. Lett*, 559 U.S. 766, 777-78 (2010). AEDPA imposes a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks omitted) (internal citation omitted) (citation omitted). The state court decision is evaluated using the law at the time of the petitioner's state court conviction became final. *Williams*, 529 U.S. at 379-80 (citing *Teague v. Lane*, 489 U.S. 288 (1989)).

When "it is possible 'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief is unavailable. *Harrington*, 562 U.S. at 101 (quoting *Yarborough*, 541 U.S. at 664). For habeas relief to be granted, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103 (citation omitted). "The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them." *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006) (citing *Early v. Packer*, 537 U.S. 3, 8 (2002)). "Instead, it is sufficient that the result and reasoning are consistent with Supreme Court precedent." *Id.* at 514 (citing *Early*, 537 U.S. at 8).

Under Section 2254(d)(2), the petitioner may obtain relief by showing the state court's factual finding is "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Thus, Section 2254(d)(2) applies when a petitioner challenges factual determinations by the state court. Notably, the factual findings of the state court are presumed to be sound unless the petitioner rebuts the "presumption of correctness by clear and convincing evidence." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (internal quotation marks omitted) (quoting 28 U.S.C. § 2254(e)(1)). The U.S. Supreme Court has observed although this deference accorded to state court findings under Section 2254(e)(1) is demanding, it is not insatiable and it "'does not by definition preclude relief.'" *Id.* at 240 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). In sum, with respect to Section 2254(d)(2), "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340 (internal citation omitted) (citation omitted).

### B. <u>Summary Judgment Standard</u>

Fed. R. Civ. P. 56 requires the Court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

### C.  Objection to the Magistrate Judge's R&R

When an objection is made to a magistrate judge's report and recommendation, a district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). "[V]erbatim regurgitation of the arguments made in earlier filings are not true objections." *Bushner v. Larose*, No. 5:14CV00385, 2017 WL 1199160, at *2 (N.D. Ohio Mar. 31, 2017). When an "objection" merely states disagreement

with the magistrate judge's suggested resolution, it is not an objection for the purposes of this review. *Cvijetinovic v. Eberlin*, 617 F. Supp. 2d 620, 632 (N.D. Ohio 2008), *rev'd on other grounds*, 617 F.3d 833 (6th Cir. 2010). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007) (citations omitted). Only specific objections are entitled to *de novo* review; vague and conclusory objections amount to a complete failure to object as they are not sufficient to pinpoint those portions of the magistrate judge's report and recommendation that are legitimately in contention. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citation omitted). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (alterations in original) (quoting *Miller*, 50 F.3d at 380).

New arguments raised for the first time in a petitioner's objection to a magistrate judge's report and recommendation are considered waived. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (citing approvingly several courts which have held that, absent compelling reasons, "the Magistrate Judge Act . . . does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate [judge]." (citation omitted)). Courts have applied this general rule in the habeas corpus context. *See Sanders v. Kelly*, No. 5:09CV01272, 2012 WL 2568186, at *9 (N.D. Ohio June 29, 2012) (holding that petitioner's newly raised ineffective assistance of counsel claims in objections to a report and recommendation on habeas petition are "not properly before the Court."). *See also Brewer v.*

*Bottom*, No. 10-26-KSF, 2012 WL 404878, at *8 (E.D. Ky. Feb. 8, 2012) (rejecting petitioner's claim in habeas petition raised for the first time in objections to the report and recommendation and noting that "[t]hese reasons alone are sufficient grounds to reject [the petitioner's] objection."). "[A]llowing parties to litigate fully their case before the magistrate [judge] and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act." *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638 (9th Cir. 1988), *overruled on other grounds by United States v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992).

  **D.**  **Certificate of Appealability**

  Under the AEDPA, a decision of this Court may not be appealed to the Sixth Circuit absent a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). "To obtain a [certificate of appealability] under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

  Where a court has rejected a petitioner's constitutional claim on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to satisfy Section 2253(c). *Id.* at 484. A certificate of appealability should be issued when a writ of habeas corpus is denied on procedural grounds and

the petitioner can demonstrate that: (1) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and (2) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

## IV.    DISCUSSION

In his Objection, Petitioner Randy Haight ("Haight") raises issues relating to the Magistrate Judge's review of his plea agreement, his ineffective assistance of counsel claims, jury selection, the death penalty, his post-conviction proceedings, the jury instructions and verdict form, prosecutorial misconduct, and several miscellaneous matters. Each issue will be addressed in turn.

### A.    Plea Agreement Issues

#### 1.    *Ground 1:    Due Process and Specific Enforcement of the Plea Agreement*

In Ground 1, Haight contends that due process requires the specific enforcement of his 1986 plea agreement entered in the Garrard Circuit Court. (Pet'r's Mem. Supp. Pet. 19-28, DN 61 [hereinafter Pet'r's Mem. Supp.]; Pet'r's Reply Resp. Pet. 11-14, DN 142 [hereinafter Pet'r's Reply]; Pet'r's Mot. Summ. J. 18-35, DN 141).[1] Specifically, Haight argues that his plea of guilty to charges of murder, which the Kentucky Supreme Court set aside in *Haight I*, rendered

---

[1] Pages 18-35 of Haight's motion for summary judgment incorporate all of his plea-agreement-related claims contained in Grounds 1, 2, 3, 4, and 33 of the Petition. (Pet'r's Mot. Summ. J. 18-35).

impossible any opportunity for him subsequently to obtain a fair trial. (Pet'r's Mot. for Summ. J.

18-35 (citing *Haight v. Commonwealth*, 760 S.W.2d 84, 89 (Ky. 1988) (*Haight I*)).[2]

Central to Haight's due process argument is the language in the plea agreement in which

the Commonwealth promised to take no action inconsistent with the agreement.[3] *Haight II*, 833

S.W.2d at 824. He claims that the plea agreement was an enforceable contract with

constitutional implications, thus the Commonwealth was bound by the plea agreement and

barred from seeking the death penalty on remand. Both *Haight I* and *Haight II* rejected Haight's

argument for specific enforcement of the 1986 plea agreement. *Haight I*, 760 S.W.2d at 88;

*Haight II*, 833 S.W.2d at 824. The court reasoned that there was no breach of an agreement to

---

[2] Haight pled guilty in the Garrard Circuit Court in 1986, in exchange for the prosecutor's recommendation of a sentence of life without parole for 25 years. The trial court accepted Haight's plea, but disregarded the recommendation and sentenced him to death. The Kentucky Supreme Court vacated the conviction on the ground that the trial court should not have accepted a guilty plea premised on the parties' "understanding" that the court would sentence in accordance with the agreement when in fact the court retained its discretion in sentencing. *Haight I*, 760 S.W.2d at 89. Haight then sought to enforce the plea agreement, but to no avail. *Haight v. Williamson*, 833 S.W.2d 821 (Ky. 1992) (*Haight II*), *cert. denied*, 507 U.S. 925 (1993). He was subsequently tried, convicted on all counts, and sentenced to death in 1994. The convictions and penalties were affirmed on direct review, and the state courts denied post-conviction relief. *Haight v. Commonwealth*, 938 S.W.2d 243 (Ky. 1996) (*Haight III*), *cert. denied*, 522 U.S. 873 (1997); *Haight v. Commonwealth*, 41 S.W.3d 436 (Ky. 2001) (*Haight IV*), *cert. denied*, 534 U.S. 998 (2001). Haight then filed this Petition pursuant to 28 U.S.C. § 2254. This Court stayed this case to allow Haight to exhaust his state remedies with respect to certain of his claims for relief. (Order, DN 27). The Kentucky Supreme Court subsequently refused to consider those issues on the ground that Haight had failed to raise them in his initial state collateral proceeding. *Haight v. Commonwealth*, No. 2006-SC-000344-MR, 2007 WL 2404494 (Ky. Aug. 23, 2007) (*Haight V*).

[3] Haight's plea agreement provided:

> It is the understanding of the defendant, and the same is hereby assured by the Commonwealth, that the above-stated sentence recommendation is, and will be presented to the Court, as a sincere and genuine request for imposition of the recommended sentence [25 years to life without parole] and that the Commonwealth will take no action inconsistent therewith.

(R. & R. 27 (citation omitted)).

warrant specific enforcement because "the Commonwealth consistently presented the recommended sentence found within the 1986 plea agreement at the initial trial." *Haight II*, 833 S.W.2d at 824. *See also Haight I*, 760 S.W.2d at 88.

In the present action, Haight contends that the Kentucky Supreme Court's reasoning is an unreasonable application of the facts because there was a breach of the plea agreement and thus, the Kentucky Supreme Court's decision to disallow specific performance of that agreement is contrary to fundamental principles of federal law as announced in *Santobello v. New York*, 404 U.S. 257, 260 (1971). The Magistrate Judge concluded that: (i) the Kentucky Supreme Court's holding that the Commonwealth did not breach the plea agreement was not an unreasonable application of the facts; (ii) *Santobello* was not unreasonably applied by the Kentucky Supreme Court; and (iii) federal courts do not possess supervisory authority over state courts to impose specific performance *even if* the Kentucky Supreme Court unreasonably applied the facts of the case in finding that the Commonwealth had not breached the agreement. (R. & R. 26-41).

Haight objects to the Magistrate Judge's conclusion that the Kentucky Supreme Court's determination that the plea agreement had not been breached was not objectively unreasonable. Haight argues that the Magistrate Judge misconstrued the issue in deciding that there was not a breach because the Magistrate Judge did not consider the Commonwealth's actions on appeal or the Commonwealth's opposition of Haight's Motion to Enforce Plea Agreement. (Pet'r's Obj. R. & R. 9, DN 66 [hereinafter Pet'r's Obj.]).

The Court reiterates that in determining Haight's habeas corpus claim the question is not whether this Court could find a breach of the plea agreement, but whether the Kentucky Supreme Court's finding of no breach was objectively unreasonable. *See* 28 U.S.C. § 2254(e)(1). In this regard, the factual findings of the state court are presumed correct. *Id.* Section 2254(d)(2) has

been interpreted as precluding a federal court from "set[ting] aside reasonable state-court determinations of fact in favor of its own debatable interpretation of the record . . . ." *Rice v. Collins*, 546 U.S. 333, 335 (2006). In *Haight II*, the Kentucky Supreme Court ruled that the plea agreement was not breached, despite the Commonwealth's opposition on appeal, because the Commonwealth honored the plea agreement through the original trial. *Haight II*, 833 S.W.2d at 824. Haight has failed to show how this is an objectively unreasonable determination of fact by the Kentucky Supreme Court or is contrary to or an unreasonable application of federal law.

Moreover, as recognized by the Magistrate Judge, even if this Court were to determine that the plea agreement had been breached, Haight cannot show that he would be entitled to specific performance. (R. & R. 36-37). Haight contends that the Kentucky Supreme Court's failure to order specific performance was a clearly unreasonable application of *Santobello*. (Pet'r's Obj. 7). The U.S. Supreme Court in *Santobello* held that the remedies for a breach of a plea agreement are either specific performance of the agreement or rescission of the entire agreement and withdrawal of the guilty plea, to be fashioned by the state court based on what "the circumstances of [the] case require." *Santobello*, 404 U.S at 263. Citing *Santobello*, the *Haight I* decision vacated the judgment of the original trial court, vacated Haight's guilty plea, and reinstated all charges in the indictment as originally returned by the grand jury. *Haight I*, 760 S.W.2d at 89. Haight was allowed to withdraw his guilty plea after the trial court originally refused to let him withdraw from the agreement; thus, Haight sought and was granted one of the available remedies under *Santobello*. In this regard, the Kentucky Supreme Court in *Haight I* directly complied with *Santobello*, as it had the discretion to choose the most appropriate remedy based on the circumstances of the case. *Santobello*, 404 U.S. at 263. *See also Fox v. Johnson*, 832 F.3d 978, 988 (9th Cir. 2016) ("But, here, rather than seek specific performance, Fox chose

to withdraw her guilty plea, voiding the plea agreement. She sought one of the remedies under *Santobello*, and received it. Even if she had sought specific performance, *Santobello* 'leave[s] to the discretion of the state court' whether the circumstances of the case require specific performance or an opportunity to withdraw the plea. No binding Supreme Court decision finds a constitutional violation when a state court chooses the remedy a petitioner expressly chose or when she maintains her innocence of the original charges." (alteration in original) (internal citation omitted)).

Accordingly, the Court overrules Haight's Objection to the R&R regarding Ground 1 of the Petition. After conducting *de novo* review and finding no error as to the reasoning of the Magistrate Judge, the R&R is adopted as to Ground 1. The Magistrate Judge also recommended the issuance of a certificate of appealability on this ground; however, the Court concludes that reasonable jurists could not debate that the Kentucky Supreme Court directly complied with *Santobello* when it allowed Haight to withdraw his guilty plea.

### 2. *Ground 2: Vindictive Prosecution*

In Ground 2, Haight claims that the decision of the Commonwealth to seek the death penalty following his initial successful appeal was presumptively vindictive in violation of the Eighth and Fourteenth Amendments. (Pet'r's Mem. Supp. 29; Pet'r's Mot. Summ. J. 18-35). The Magistrate Judge concluded that Haight did not demonstrate that clearly established precedent of the United States Supreme Court was unreasonably applied or is clearly contrary to the Kentucky state court's decisions in *Haight I*, *Haight II*, or *Haight III*. In his Petition, Haight mainly relies upon an Illinois Supreme Court case and did not cite to any U.S. Supreme Court precedent that would support his argument. (R. & R. 42; Pet'r's Mem. Supp. 29-31). Haight objects to the Magistrate Judge's conclusion and mentions, for the first time, that the Kentucky

Supreme Court's ruling was an unreasonable application of *North Carolina v. Pearce*, 395 U.S. 711(1969), *overruled in part by Alabama v. Smith*, 490 U.S. 794, 801 (1989); *Wayte v. United States*, 470 U.S. 598 (1985); and *Blackledge v. Perry*, 417 U.S. 21, 28 (1974). This injection of U.S. Supreme Court precedent into his argument, however, does not change the outcome.

While a court may constitutionally impose a greater sentence upon a defendant after a successful appeal, the imposition of such a greater sentence cannot be based upon vindictiveness. *Pearce*, 395 U.S. at 719-25. "[T]he Due Process Clause is not offended by all possibilities of increased punishment . . . but only by those that pose a realistic likelihood of 'vindictiveness.'" *Blackledge*, 417 U.S. at 27. The U.S. Supreme Court has stressed that in cases dealing with pretrial prosecutorial decisions, "a mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule." *United States v. Goodwin*, 457 U.S. 368, 384 (1982); *Bordenkircher v. Hayes*, 434 U.S. 357 (1978). The standard itself, however, is an objective one—whether a reasonable person would think there existed a realistic likelihood of vindictiveness. *United States v. Andrews*, 633 F.2d 449, 454 (6th Cir. 1980). Where the presumption of vindictiveness does not arise, the defendant bears the burden of proving actual vindictiveness. *See Wasman v. United States*, 468 U.S. 559, 569 (1984).[4]

---

[4] The Magistrate Judge concluded that Haight's argument was defeated by *Alabama v. Smith*. (R. & R. 46). In *Smith*, the U.S. Supreme Court held that "there is no basis for a presumption of vindictiveness where a second sentence imposed after a trial is heavier than a first sentence imposed after a guilty plea . . . ." *Smith*, 490 U.S. at 803. Yet, the Sixth Circuit has noted that *Smith* did not involve a question of prosecutorial vindictiveness, as is at issue here, but rather an issue of judicial vindictiveness. *Turner v. Tennessee*, 940 F.2d 1000, 1002 (6th Cir. 1991). Thus, in *Turner*, the Sixth Circuit held that *Smith* was clearly distinguishable from the facts where the issue centered around the vindictiveness of the prosecutor, not the sentencing judge. Further, the Sixth Circuit held that nothing in *Smith* disturbed the U.S. Supreme Court's prior holding in *Goodwin*, which requires a presumption of vindictiveness if it is shown that there was "a realistic likelihood of vindictiveness" on the part of the prosecutor. *Goodwin*, 457 U.S. at 384 (citing *Blackledge*, 417 U.S. at 27). Accordingly, the Magistrate Judge's reliance on *Smith* is misplaced.

The Magistrate Judge determined that Ground 2 failed on the merits because there was no presumption of prosecutorial vindictiveness, and therefore the Kentucky Supreme Court's denial of Haight's claim was not an unreasonable application of clearly established U.S. Supreme Court law. (R. & R. 43-44). In his Objection, Haight argues that a presumption of vindictiveness arose because the Commonwealth's decision to seek the death penalty following *Haight I* demonstrates a *realistic likelihood* of vindictiveness as there was no change in circumstances or new evidence between the original plea offer of 25 years to life without parole and the Commonwealth's decision to seek the death penalty after the initial successful appeal. (Pet'r's Obj. 12). The Kentucky Supreme Court in *Haight II* held:

> With reinstatement of the original indictment and [Haight's] entry of a plea of not guilty to these charges, [Haight] returned to the place he was in before the plea agreement was entered. The Commonwealth exhibits no prosecutorial vindictiveness for there is no appearance of retaliation when a defendant is placed in the same position as he was in before he accepted the plea bargain.

*Haight II*, 833 S.W.2d at 824 (citing *United States v. Anderson*, 514 F.2d 583, 588 (7th Cir. 1975)). Although this holding does not expressly state that there was no "realistic likelihood" of vindictiveness, the Kentucky Supreme Court's holding determined that there was no such likelihood of prosecutorial vindictiveness. *See Slagle*, 457 F.3d at 513 (noting that a state court decision need not refer to U.S. Supreme Court cases as long as the results and reasoning of the state court are consistent with U.S. Supreme Court precedent) (citing *Early*, 537 U.S. at 8).

This Court finds that the Kentucky Supreme Court's holding did not unreasonably apply U.S. Supreme Court precedent. "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." *Goodwin*, 457 U.S. at 382. Haight's argument that the Commonwealth possessed a reasonable likelihood of vindictiveness is based

solely on the fact that there was not a change of circumstances between the first plea and the sentence sought on remand to warrant the increased penalty.[5]  However, because Haight's guilty plea was vacated in *Haight I*, the Commonwealth was not bound by the original plea agreement and retained discretion to seek any available sentence, just as Haight was free to plead not guilty and take his case to trial.  *See also United States v. Cooks*, 52 F.3d 101, 106 (5th Cir. 1995) ("As there is no presumption of prosecutorial vindictiveness attendant in the exercise of admittedly discretionary actions, [the defendant's] failure to offer any tangible evidence in support of his vindictiveness claim dooms it to failure.").  *See also Goodwin*, 457 U.S. at 384 ("[M]ere opportunity for vindictiveness is insufficient . . . .").  As in *Cooks*, Haight has presented no tangible evidence of prosecutorial vindictiveness.

Moreover, following vacation of the original plea agreement the Commonwealth did not attempt to charge Haight with any crime other than capital murder, the same crime charged in the original indictment.  *See Jordan v. Epps*, 756 F.3d 395, 406-07 (5th Cir. 2014) (holding that there was no presumption of prosecutorial vindictiveness in the prosecutor's refusal to make a plea agreement for a sentence of life in prison for a second time, rather than seek the death penalty, because the prosecutor did not attempt to charge defendant with any crime other than the

---

[5] In Haight's Objection, he articulates a reason why the Commonwealth chose to seek death after the vacation of the plea agreement.  (Pet'r's Obj. 13).  *See Adamson v. Ricketts*, 865 F.2d 1011, 1019 (9th Cir. 1988), *abrogated on other grounds by Walton v. Arizona*, 497 U.S. 639 (1990) ("Once the presumption of vindictiveness is raised, the burden shifts to the prosecution to rebut it by presenting evidence of independent reasons or intervening circumstances which demonstrate that the prosecutor's decision was motivated by a legitimate purpose."  (citations omitted)).  Haight discloses that the Commonwealth's stated reason for its decision was that the opinion of the victims' families had changed in regard to advocating the death penalty.  (Pet'r's Obj. 13).  Thus, even if the Court was to find that a presumption of vindictiveness did exist, Petitioner recognizes that the Commonwealth provided an independent, objective reason for seeking the death penalty to rebut any presumption of vindictiveness.  *See Adamson*, 865 F.2d at 1019.

original capital murder charge). Thus, the Commonwealth's decision to seek death does not warrant a presumption of vindictiveness.

Under these circumstances, Haight has not demonstrated that the Kentucky Supreme Court's holding was an objectively unreasonable application of *Pearce*, *Wayte*, or *Blackledge*. Therefore, this claim for relief will be denied. Yet, the Court does find that a certificate of appealability should be issued because jurists of reason could disagree as to the merits of this claim. Significantly, the Ninth Circuit, sitting en banc, has held that "a presumption of prosecutorial vindictiveness is warranted" in a situation where the prosecutor asked the court to impose a sentence other than death, but after the defendant's successful appeal the prosecutor rebuffed the plea offer and insisted on seeking the death penalty. *Adamson*, 865 F.2d at 1018. This demonstrates that jurists of reason could disagree, and in fact have disagreed, as to whether a presumption of prosecutorial vindictiveness should arise in the present context. Accordingly, a certificate appealability as to Ground 2 will be issued.

### 3. *Ground 3: Double Jeopardy Clause*

In Ground 3, Haight argues that the Fifth Amendment's Double Jeopardy Clause barred his subsequent death sentence. (Pet'r's Mem. Supp. 31-33; Pet'r's Mot. for Summ. J. 18-35). Addressing Haight's double jeopardy argument, the Kentucky Supreme Court explained that:

> Appellant's double jeopardy claim has been reviewed and determined to be without merit. The essence of this claim is that upon the prior guilty plea and death sentence, jeopardy attached. Because RCr 9.84 precluded imposition of the death penalty, the argument goes, appellant was "implicitly acquitted."
>
> The error of the trial court was not the type and kind which preclude re-prosecution. The conduct of the trial court was ambiguous and misleading by virtue of a desire to accommodate counsel for both sides. There was no indication of malicious or deliberate misleading. The trial court simply made an error which was corrected on appeal. Double jeopardy principles do not preclude further prosecution with all lawful punishments being available. In *Simpson v.*

*Commonwealth*, 759 S.W.2d 224, 228 (Ky. 1988), we answered appellant's double jeopardy claim as follows:

> It was appellant who moved the court to withdraw his guilty plea and his confession made during the plea proceeding. Such constitutes a waiver of his constitutional protection against double jeopardy for the purpose of trial on the charge in the indictment.

*Haight III*, 938 S.W.2d at 252 (internal citations omitted) (quoting *Simpson*, 759 S.W.2d at 228).

The Magistrate Judge concluded that *Haight III* was neither contrary to nor an unreasonable application of any clearly established U.S. Supreme Court precedent relating to the Double Jeopardy Clause. (R. & R. 51). Haight's objection mostly states his general disagreement with *Haight III* and the Magistrate Judge's findings. *See Cvijetinovic*, 617 F. Supp. 2d at 632 ("Near verbatim regurgitation of the arguments made in earlier filings are not true objections." (citation omitted)). In interjecting these same arguments, Haight argues that the Magistrate Judge misconstrued his position. (Pet'r's Obj. 15). Haight asserts that his position is not that the Commonwealth should be completely barred from re-prosecution of the guilt phase of his trial, but that the Double Jeopardy Clause barred the Commonwealth from seeking the death penalty after remand from *Haight I*. (Pet'r's Obj. 17). Specifically, Haight contends that while his voluntary withdrawal of his guilty plea may have removed his re-prosecution from jeopardy, the trial court's "abuse of discretion in denying Haight's right under [Kentucky Rule of Criminal Procedure ("RCr")] 9.84 to a jury at sentencing triggers the protections of the Double Jeopardy Clause and bars re-sentencing for death." (Pet'r's Obj. 18). Thus, Haight contends the Kentucky Supreme Court's holding was an unreasonable application of *United States v. Jorn*, 400 U.S. 470 (1971).

*Jorn* invoked the right to the original jury because "the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur

which might be thought to warrant a declaration of mistrial." *Jorn*, 400 U.S. at 485 ("When one examines the circumstances surrounding the discharge of this jury, it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the *sua sponte* declaration of this mistrial." (citation omitted)). In the present case, at the original trial the case was never taken from the jury because no jury was ever sworn in. Since *Jorn* involves the rights of a defendant in the context of a mistrial after a jury is impaneled and does not address the issue of the discretionary sentencing decision of a trial judge where no jury was ever seated, *Jorn* is wholly inapplicable here. Therefore, the Court holds that the Kentucky Supreme Court's ruling was not an objectively unreasonable application of *Jorn*.

Further, as to Haight's argument that the Double Jeopardy Clause applied to his sentencing, clearly established federal law holds that this clause only pertains to sentencing proceedings in limited scenarios. Haight has not shown that the Double Jeopardy Clause applied to the sentencing proceedings before the original trial court. The Fifth Amendment's Double Jeopardy Clause provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. The protections of the Double Jeopardy Clause attach once a court accepts a defendant's guilty plea. *Ricketts v. Adamson*, 483 U.S. 1, 8 (1987). Generally, "the Double Jeopardy Clause imposes no absolute prohibition against the imposition of a harsher sentence at retrial after a defendant has succeeded in having his original conviction set aside." *Bullington v. Missouri*, 451 U.S. 430, 438 (1981) (citations omitted). A narrow exception to this rule holds that the Double Jeopardy Clause does apply to capital-sentencing proceedings that "have the hallmarks of [a] trial on guilt or innocence." *Id.* at 438. "[A]lthough sentencing proceedings ordinarily are governed by discretionary judgments,

the Double Jeopardy Clause applies to any sentencing proceeding that *explicitly requires* the jury to determine whether the prosecution has proved its case." *Harrison v. Gillespie*, 640 F.3d 888, 897 (9th Cir. 2011) (internal quotation marks omitted) (quoting *Bullington*, 451 U.S. at 444). "[T]he touchstone for double-jeopardy protection in capital-sentencing proceedings is whether there has been an acquittal." *Sattazahn v. Pennsylvania*, 537 U.S. 101, 109 (2003) (internal quotation marks omitted) (citation omitted). "Absent an 'acquittal' in which the factfinder concludes that the prosecution failed to 'prove[] its case,' the Double Jeopardy Clause does not bar a retrial." *Harrison*, 640 F.3d at 897 (internal quotation marks omitted) (quoting *Poland v. Arizona*, 476 U.S. 147, 156-57 (1986)).

Haight's argument in this regard misses the mark. This scenario does not fall within the exception to the general rule allowing imposition of a harsher sentence upon retrial. First, the trial court initially imposed a death sentence, the same sentence subsequently imposed upon remand. Further, the sentencing proceedings in the original trial court did not "have the hallmarks of [a] trial on guilt or innocence" because the sentencing decision was made by the trial judge; no jury was ever impaneled. *Bullington*, 451 U.S. at 439. *See also Harrison*, 640 F.3d at 897 (rejecting the theory that the Double Jeopardy Clause applied to a judge's discretionary decision to impose a life sentence because "the defendant's life sentence had been imposed by operation of a statute rather than the jury's factual conclusion that the state had not proven its case." (citing *Sattazahn*, 537 U.S. at 109-10)). Haight points out that RCr 9.84 requires a jury to decide the appropriate punishment in capital cases.[6] There is no question that

---

[6] The Kentucky Supreme Court has held that the procedural hallmarks that were present in *Bullington* to prevent a harsher sentence on remand are not present in Kentucky's capital sentencing procedures. *Hilbert v. Seay*, No. 2008-SC-000312-OA, 2008 WL 3890410, at *9 (Ky. Aug. 21, 2008). The court determined that Kentucky's capital sentencing procedure does not serve as an "implied acquittal" and jeopardy does not attach to a capital defendant's earlier,

the trial judge at Haight's sentencing did not impanel a jury, but instead made the unilateral decision to sentence Haight to death.  Any error with this decision was corrected in *Haight I*.  Clearly, Haight did not initially go through a trial-like process that was resolved in his favor so as to invoke double-jeopardy protection.

There is nothing to suggest that the state court decision was contrary to or an objectively unreasonable application of clearly established federal law to the facts of this case.  Accordingly, after conducting a *de novo* review of the R&R, the Court holds that the R&R in regard to Ground 3 is adopted and Haight's Objection is overruled.  The Magistrate Judge recommended a certificate of appealability be issued as to Ground 3; however, the Court believes that reasonable jurists could not disagree that the protections against double jeopardy do not apply to the present situation as Haight was not sentenced to an earlier, lighter sentence by a jury with the "hallmarks of a trial on guilt or innocence."  *Bullington*, 451 U.S. at 438.

### 4.    *Ground 4:  Arbitrary, Capricious and Discriminatory Death Sentence*

Haight claims in Ground 4 of his Petition that his death sentence was arbitrarily, capriciously, and discriminatorily applied in violation of the Eighth Amendment.  (Pet'r's Mem. Supp. 33-35; Pet'r's Reply 11-24; Pet'r's Mot. Summ. J. 18-35).  The *Haight III* decision held that the vacation of Haight's guilty plea in *Haight I* remedied any arbitrary and capricious death sentence.  *Haight III*, 938 S.W.2d at 250-51.  The Magistrate Judge held that *Haight III* was not an unreasonable application of clearly established federal law.  (R. & R. 55).  In Haight's Objection, he argues that the Magistrate Judge focused on the imposition of the death sentence by the original trial judge and ignored the argument that the Commonwealth violated the Eighth

---

lighter sentence.  *Id*.  Thus, under Kentucky law jeopardy would not attach to Haight's original sentence even if he had been sentenced by a jury of his peers.  *See Commonwealth v. Eldred*, 973 S.W.2d 43, 48-49 (Ky. 1998).

Amendment by seeking the death penalty arbitrarily after Haight's appeal was successful in *Haight I*. (Pet'r's Obj. 18-19). In support, Haight cites to *Godfrey v. Georgia*, 446 U.S. 420 (1980); *Duncan v. Louisiana*, 391 U.S. 145, 156 (1968); and *Wayte v. United States*, 470 U.S. 598 (1985).

Haight has failed to show how the Kentucky Supreme Court unreasonably applied any of the above-cited decisions of the United States Supreme Court. As the Magistrate Judge noted, reversal of the original conviction "wiped the slate clean" and the Commonwealth was free to seek whatever sentence it chose, just as Haight was free to plead not guilty. Haight correctly notes that "the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification"; however, Haight has not shown how the Commonwealth's decision to seek the death penalty after *Haight I* was based on any such classification. *Wayte*, 470 U.S. at 608 (internal quotation marks omitted) (quoting *Bordenkircher*, 434 U.S. at 364).

Based on the record before the state courts, there is nothing to suggest that the state court decision was contrary to or an objectively unreasonable application of clearly established federal law to the facts of this case. Accordingly, the Court finds Haight's Objection of no avail and after *de novo* review adopts the Magistrate Judge's recommendation to deny relief as to Ground 4. Further, although contrary to the Magistrate Judge's recommendation, the Court concludes that a certificate of appealability is not warranted as to this ground for relief. The Court does not find that reasonable jurists could debate that Haight has failed to show a denial of any constitutional right as he has provided no support for the argument that the imposition of the death penalty was "based upon an unjustifiable standard such as race, religion, or other arbitrary

classification . . . ." *Wayte*, 470 U.S. at 608 (internal quotation marks omitted) (quoting *Bordenkircher*, 434 U.S. at 364).

### 5.    *Ground 33:  Irrevocable Prejudice*

In Ground 33, Haight argues that the imposition of his capital sentence is unconstitutional due to the irrevocable prejudice that flowed from his plea of guilty in the initial proceeding. (Pet'r's Mem. Supp. 26-47; Pet'r's Reply 11-14; Pet'r's Mot. Summ. J. 18-35).  The Magistrate Judge, in a lengthy analysis, found that decisions in *Haight I*, *Haight II*, and *Haight III* regarding irrevocable prejudice were not contrary to or an unreasonable application of any clearly established decision of the U.S. Supreme Court.  (R. & R. 64).  Moreover, the Magistrate Judge noted Haight's failure to cite to any U.S. Supreme Court precedent which was arguably applied unreasonably.  (R. & R. 62).  Haight's Objection to this finding reflects mere disagreement with the Magistrate Judge's conclusion.  (Pet'r's Obj. 20-23).

Haight takes issue with the Magistrate Judge's ruling that the passage of time and pretrial publicity did not cause Haight irrevocable prejudice.  (Pet'r's Obj. 20).  In his Objection, Haight avers *Herrera v. Collins*, 506 U.S. 390 (1993), and *Sheppard v. Maxwell*, 384 U.S. 333 (1966), support his instant claims; however, he does not explain how these cases were unreasonably applied by the Kentucky Supreme Court.[7]  (Pet'r's Obj. 20-21).  Juror bias caused by pre-trial publicity, specifically a newspaper article, was explored in depth by the trial court during *voir*

_____

[7] The Court cannot perceive how *Herrera* or *Sheppard* would apply.  *Herrera* concerns claims of actual innocence based on newly discovered evidence.  Although *Sheppard* does concern pre-trial publicity and a defendant's right to a fair trial, Haight has failed to explain how the affirmance of the trial court's finding that the jurors were unaffected by pre-trial publicity in *Haight III* was "clearly erroneous."  *See Sumner v. Mata*, 455 U.S. 591, 597 (1982) (noting that the AEDPA "requires the federal courts to show a high measure of deference to the factfindings made by the state courts.").

*dire* and during an evidentiary hearing. These findings were upheld in *Haight III*, and Haight has not shown them to be objectively unreasonable findings of fact. *Haight III*, 938 S.W.2d at 246.

Accordingly, Haight's Objection is overruled, and, based on this Court's *de novo* review, the portion of the R&R pertaining to Ground 33 is adopted. While the Magistrate Judge recommended issuance of a certificate of appealability, the Court concludes that reasonable jurists could not debate the resolution of this ground for relief in the complete absence of any evidence cited by Petitioner to meet his burden to overcome the presumption of correctness afforded to the state court's finding of no irrevocable prejudice.

### B.      Ineffective Assistance of Counsel Claims

To establish ineffective assistance of counsel, Haight must show that his counsel provided deficient performance and such deficient performance prejudiced his defense so as to render the trial unfair and the result unreliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under AEDPA, a state court's ruling on ineffective assistance of counsel claims will only be disturbed if it is an unreasonable application of *Strickland*. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002) (citation omitted). Focusing on the performance component, the U.S. Supreme Court explained "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The reviewing court's scrutiny of counsel's performance is highly deferential; indeed, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 90. The reviewing court must also not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the

context of the circumstances at the time of the alleged errors. *Id.* at 690; *Cobb v. Perini*, 832 F.2d 342, 347 (6th Cir. 1987).

To satisfy the prejudice prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A "[p]etitioner is not entitled to a presumption of prejudice unless it can be said that his counsel 'fail[ed] meaningfully to oppose the prosecution's case.'" *Lundgren v. Mitchell*, 440 F.3d 754, 775 (6th Cir. 2006) (quoting *Florida v. Nixon*, 543 U.S. 175, 179 (2004)). Where "one is left with pure speculation on whether the outcome of the trial or the penalty phase could have been any different," there is an insufficient showing of prejudice. *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004) (citing *McQueen v. Scroggy*, 99 F.3d 1302, 1321 (6th Cir. 1996)).

"A petitioner procedurally defaults claims for habeas relief if the petitioner has not presented those claims to the state courts in accordance with the state's procedural rules." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citations omitted). An "independent and adequate state ground" will bar consideration of those federal claims in a federal habeas corpus proceeding that have been defaulted under state law, unless the default is excused. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *Brown v. Allen*, 344 U.S. 443, 486-87 (1953). A default will be excused if the petitioner is able to demonstrate cause for the default and prejudice resulting therefrom or, alternatively, that manifest injustice will result from the conviction of one who is factually innocent if the claim is not addressed. *Sutton v. Carpenter*, 745 F.3d 787, 790-91 (6th Cir. 2014).

To establish "cause," a petitioner must demonstrate that something external to him impeded his efforts to comply with the state's procedural rules. *Coleman*, 501 U.S. at 729-30. A petitioner can establish "cause" by showing his counsel's failure to raise the claim before the state court was an error of such magnitude that it rendered counsel's performance ineffective and in violation of the Sixth Amendment. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). Notably, in *Coleman*, the Supreme Court made the unqualified pronouncement that ineffective assistance by counsel during state post-conviction proceedings does not establish "cause" for a procedural default because there is no constitutional right to an attorney in such proceedings. *Coleman*, 501 U.S. at 752-54 (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987)). Recently, however, the U.S. Supreme Court carved out a limited equitable exception for claims of ineffective assistance of trial counsel that could be raised for the first time only in an initial state post-conviction proceeding. *See Martinez v. Ryan*, 566 U.S. 1, 17 (2012); *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013). Under the U.S. Supreme Court's recent decisions in *Martinez* and *Trevino*, "Kentucky prisoners can, under certain circumstances, establish cause for a procedural default of their IATC claims by showing that they lacked effective assistance of counsel at their initial-review collateral proceedings," such as RCr 11.42 proceedings. *Woolbright v. Crews*, 791 F.3d 628, 636 (6th Cir. 2015). However, "the holdings in *Martinez* and *Trevino* '[do] not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings . . . .'" *Id.* at 636 (alteration in original) (quoting *Martinez*, 566 U.S. at 16).

To establish prejudice, a habeas petitioner must demonstrate "'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). A petitioner must show not "that the errors at his trial created a possibility of prejudice, but that

they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id*. at 170.

### 1.    *Ground 5: Failure to Strike Juror Gaugh for Cause*

Haight argues in Ground 5 that he received ineffective assistance of trial counsel when his attorneys failed to move to strike for cause juror Gaugh after this juror stated that he would not give serious consideration to Haight's mitigation evidence of his deprived family background. (Pet'r's Mem. Supp. 47-85; Pet'r's Reply 142; Pet'r's Mot. Summ. J. 6-17; Pet'r's Supp. Obj., DN 177). *Haight IV* held that Haight's trial counsel's decision not to strike Gaugh for cause was legitimate trial strategy, not ineffective assistance. *Haight IV*, 41 S.W.3d at 446. The Magistrate Judge also concluded that Haight's counsel's decision to not strike Gaugh for cause was sound trial strategy and that Gaugh was not an actually biased juror. (R. & R. 98-114). Accordingly, the Magistrate Judge recommended denial of Haight's claim for relief under Ground 5 because the holding of the Kentucky Supreme Court was not an unreasonable application of *Strickland*. (R. & R. 114).

Haight raises three issues as to the Magistrate Judge's conclusions. (Pet'r's Obj. 29). First, Haight argues that the Magistrate Judge overlooked this Court's order holding that there could be no tactical or strategic reason for counsel's refusal to strike a biased juror. (Pet'r's Obj. 29). This Court previously stated that "the decision whether to seat a biased juror cannot be a discretionary or strategic decision." (Mem. Op. 8-9, DN 85 (internal quotation marks omitted) (quoting *Miller v. Webb*, 385 F.3d 666, 675-76 (6th Cir. 2004))). Haight argues that the R&R's explanation of Haight's trial counsel's possible tactical strategies ignores this Court's prior order because Gaugh was biased as a matter of law. (Pet'r's Obj. 29). The Court finds that the Magistrate Judge did not err in reviewing Haight's trial counsel's performance, as the Magistrate

Judge further concluded that Gaugh was not an actually biased juror. (R. & R. 112). As the Magistrate Judge explained, the Sixth Circuit has held that actual bias is "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." (R. & R. 107 (quoting *Miller*, 385 F.3d at 673)). The Magistrate Judge found that although Gaugh indicated that he would not consider evidence of Haight's deprived childhood and family background, Gaugh was not actually biased because he had no relationship with the victims, did not expressly state that he could not be fair, indicated that he would fully consider Haight's defenses of alcoholism and extreme emotional disturbance, and acknowledged that he had some sympathy for Haight. (R. & R. 113).

Haight relies on *Morgan v. Illinois*, 504 U.S. 719 (1992), in support of his argument that Gaugh was actually biased because of his indication during *voir dire* that he would not consider a certain type of mitigating evidence. (Pet'r's Obj. 33). In *Morgan*, the U.S. Supreme Court stated that "[a]ny juror to whom mitigating factors are likewise irrelevant should be disqualified for cause, for that juror has formed an opinion concerning the merits of the case without basis in the evidence developed at trial." *Morgan*, 504 U.S. at 739. The primary concern in *Morgan* was a juror who indicated he would automatically recommend death regardless of *any* mitigating evidence. *Id*. Here, Gaugh's statement that he would not consider *one type* of mitigating evidence does not raise these same concerns, especially where Gaugh further indicated that he would consider Haight's other mitigating evidence. *See Lagrone v. Cockrell*, No. CIV.A.4:99-CV-0521-G, 2002 WL 1968246, at *19 (N.D. Tex. Aug. 19, 2002) ("[A] prospective juror's statement that he does not consider a certain type of evidence as mitigating does not subject him to a challenge for cause because it is not evidence that he will be unable to perform his duties as a juror."). Further, Haight has provided no authority for the proposition that a juror is biased as a

matter of law because he will not consider *one discrete aspect* of mitigating evidence. Therefore, because this Court agrees with the Magistrate Judge that Gaugh was not biased as a matter of law, trial counsel's decision to not strike Gaugh for cause did not amount to ineffective assistance of counsel under *Strickland*.

Haight also takes issue with the Magistrate Judge's examination of Haight's trial counsel's possible tactical strategy. (Pet'r's Obj. 36-41). When asked by the trial court to provide a reason why he chose to not move to strike Gaugh for cause, Haight's trial counsel responded only that it was a "tactical decision." (R. & R. 99 (citation omitted)). The Magistrate Judge concluded that Haight's counsel's explicitly described "tactical decision" in not striking Gaugh for cause was objectively reasonable because Gaugh stated that he would consider an extreme emotional disturbance defense, would consider Haight's evidence that he was under the influence of alcohol at the time of the crime, and because Gaugh is an African-American. (R. & R. 109-11). Defense counsel considered Gaugh to be a favorable juror in light of his belief that Gaugh's race meant he was statistically less likely to impose the death penalty. (R. & R. 109-11). Haight contends that the Magistrate Judge's proffered strategies are speculative and not supported by the record.

Under AEDPA's deferential standard of review, the question is whether there is "any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. "*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (quoting *Strickland*, 466 U.S. at 689-90). A court must "affirmatively entertain the range of possible" reasons counsel may have had for proceeding as he or she did. *Id.* Accordingly, the Magistrate Judge

properly pointed to parts of the state court record demonstrating defense counsel's decision not to challenge Gaugh was tactical. (R. & R. 109-11); *see Pinholster*, 563 U.S. at 191 (presuming that counsel's actions were a matter of trial strategy "[r]ather than . . . neglect" and noting statements by counsel in state-court record "support[ing] the idea that [petitioner's] counsel acted strategically . . . ."). The Magistrate Judge noted that although "counsel may have declined to put on the record the basis for his choice, Gaugh's other statements during *voir dire* clearly reveal the basis for counsel's conscious election not to challenge Gaugh for cause." (R. & R. 109). The Magistrate Judge cited statements by Gaugh indicating that he would consider the entire range of penalties for intentional aggravated murder, that he would consider Haight's extreme emotional disturbance defense, and that he would give serious consideration to evidence indicating that Haight acted under the influence of alcohol at the time of the crime. (R. & R. 109-10 (citation omitted)). What Haight labels as the Magistrate Judge's "speculation" in fact represents the exact type of analysis the U.S. Supreme Court has instructed courts to conduct in reviewing petitions for writs of habeas corpus. Therefore, the Court finds Haight's second argument lacks merit.

Haight also objects to the Magistrate Judge's conclusion that Haight's trial counsel's tactical strategy was objectively reasonable and did not amount to deficient performance. (Pet'r's Obj. 29). As stated above, it is Haight's burden to overcome the presumption of competent representation. *Strickland*, 466 U.S. at 689. Aside from conclusory assertions that his counsel's strategy during *voir dire* was objectively unreasonable, Haight provides no elaboration. (Pet'r's Obj. 29, 39). Accordingly, the Court concludes that he has not met his burden. *Strickland*, 466 U.S. at 688.

Finally, the Court must address the arguments put forth in Haight's supplement to his Objection. Haight cites to *Shelton v. United States*, 800 F.3d 292 (6th Cir. 2015), for the proposition that the Magistrate Judge should have provided fair notice and an opportunity to brief the issue of whether Haight's trial counsel decided not to strike Gaugh because Gaugh said he would consider an extreme emotional disturbance defense and because he is an African-American. (Pet'r's Supp. Obj. 3). In *Shelton*, the Sixth Circuit held that "[b]efore acting on its own initiative, [a] district court 'must accord the parties fair notice and an opportunity to present their positions.'" *Shelton*, 800 F.3d at 294 (quoting *Day v. McDonough*, 547 U.S. 198, 210 (2006)). Haight contends that *Shelton* applies to his case because the R&R was "the first, and only, time that the explanations for trial counsel's actions had been proposed by the Magistrate Judge." (Pet'r's Supp. Obj. 3). The Court disagrees. In *Shelton*, the Sixth Circuit held that before *sua sponte* dismissing a motion to vacate as untimely, the parties should be allowed to present their positions. The issue of whether Haight's counsel was deficient was certainly not raised *sua sponte* by the Magistrate Judge. Furthermore, Haight has been provided the opportunity to file his Objection to the R&R, which constitutes his chance to be heard by this Court. *See United States v. Renfro*, No. CR 08-93-ART-CJS-2, 2017 WL 1416869, at *1 n.3 (E.D. Ky. Mar. 22, 2017), *report and recommendation adopted*, No. CR 08-93-ART-CJS-(2), 2017 WL 1429192 (E.D. Ky. Apr. 19, 2017) (citing *Shelton*, 800 F.3d at 294-96). Accordingly, the Court rejects Haight's argument that he should have been allowed an opportunity to further brief this issue, as Haight was afforded the opportunity to file his Objection, reply to the response to the Objection, and provided supplemental authority all regarding this issue.

In conclusion, the Court finds after *de novo* review that the Magistrate Judge did not err when he concluded that the holding of the Kentucky Supreme Court was not an unreasonable

application of *Strickland*. Therefore, the Court adopts the R&R as to Ground 5 and overrules Haight's Objection thereto. Further, despite the Magistrate Judge's recommendation, a certificate of appealability is not warranted as to this claim as no reasonable jurists could debate that Haight has utterly failed to show that trial counsel's performance was objectively unreasonable as to juror Gaugh. *Slack*, 529 U.S. at 484.

## 2. *Ground 8: Peremptory Strikes for Jurors*

In Ground 8, Haight argues that he received ineffective assistance of counsel when his trial attorneys failed to honor his request to remove jurors Gaugh, Helton, and Nichols from the jury panel by use of peremptory strikes. (Pet'r's Mem. Supp. 47-85; Pet'r's Reply 142; Pet'r's Mot. Summ. J. 6-17). *Haight IV* rejected Haight's ineffective assistance of counsel claim regarding peremptory challenges. *Haight IV*, 41 S.W.3d at 443-44 (citation omitted). The court noted that Haight received the full number of challenges to which he was entitled and could not show that he was prejudiced because "[t]here is no reasonable probability that the result of his trial would have been any different under the standards provided in *Strickland*." *Id*. at 444. *Haight IV* also emphasized that there was "no constitutional right to peremptory challenges." *Id*. (citation omitted). The Magistrate Judge recommended denial of relief because the Kentucky Supreme Court's holding was not an unreasonable application of or contrary to established U.S. Supreme Court precedent. (R. & R. 114-28). The Magistrate Judge explained that trial counsel's failure to honor Haight's alleged request to strike three jurors was not a "structural error" under Kentucky law that amounted to a presumption of prejudice. (R. & R. 120). Further, the Magistrate Judge noted that nothing in the record established that Haight was in any way prejudiced by his counsel's failure to strike the three jurors. (R. & R. 123-28).

Haight raises two issues as to the Magistrate Judge's recommendation. First, Haight objects to the Magistrate Judge's reliance on *Rivera v. Illinois*, 556 U.S. 148 (2009), because "*Rivera* did not address an issue of ineffective assistance of counsel." (Pet'r's Obj. 44). The Magistrate Judge relied on *Rivera* for the principle that Haight's counsel's alleged failure to strike jurors is not a structural error because there is no freestanding federal constitutional right to peremptory challenges. (R. & R. 120 (citing *Rivera*, 556 U.S. at 151)). Haight argues that the Magistrate Judge was misconstruing the claim, as the U.S. Supreme Court in *Rivera* did not address the issue of ineffective assistance of counsel. The Court finds Haight's argument is without merit. The Magistrate Judge did not misconstrue the claim, but merely used *Rivera* to support the conclusion that Haight's counsel's performance was not deficient. *See Strickland*, 466 U.S. at 487.

Next, Haight objects to the Magistrate Judge's finding that Haight cannot demonstrate prejudice for his *Strickland* claim to prevail. This argument focuses on Gaugh because, according to Haight, this juror was biased as a matter of law and thus prejudice is presumed. (Pet'r's Obj. 44). The Magistrate Judge noted that *Haight III* adopted the findings of the trial court and held that there was no information to cause the court to believe that the jurors "were in any way partial in their deliberations or their final conclusions." (R. & R. 124 (quoting *Haight III*, 938 S.W.2d at 247)). The Magistrate Judge then conducted a review of the record and concluded that Gaugh's statements of expressed skepticism of mitigation evidence during *voir dire* were equivocal and, to the contrary, Gaugh actually indicated that he felt somewhat sympathetic to Haight. (R. & R. 124). The Court disagrees with Haight's assessment that the Magistrate Judge is "simply and demonstrably incorrect." (Pet'r's Obj. 45). Nothing in Haight's Objection influences this Court to disturb the Kentucky Supreme Court's factual holding that

Gaugh was not biased as a matter of law. Furthermore, although Haight does not specifically object to the Magistrate Judge's conclusion that Helton and Nichols were not biased as a matter of law, the Court conducted *de novo* review and finds no error in the Magistrate Judge's analysis. Consequently, the Court agrees with the Magistrate Judge that Haight has not demonstrated that he was prejudiced in any way by his counsel's failure to strike these three particular jurors. *See Strickland*, 466 U.S. at 487.

Therefore, the Court adopts the Magistrate Judge's recommendation to deny Haight relief under this claim because *Haight IV* was not an unreasonable application of *Strickland*. Thus, the Court overrules Haight's Objection as to Ground 8. The Court further concludes that reasonable jurists could not debate whether the petition should have been resolved in a different manner with respect to the use of peremptory strikes by trial counsel.

### 3. *Ground 9: Failure to Question Jurors, Raise Issues, and Exercise Challenges for Cause*

In Ground 9, Haight presents a variety of claims all involving the ineffective assistance of trial counsel during jury selection. (Pet'r's Mem. Supp. 61-62; Pet'r's Reply 16-17). The claims are related to the failure of Haight's trial counsel to move the court to strike for cause jurors Kaiser, Helton, Karnes, and Cunagin for various reasons, and misadvising two jurors, Larch and Karnes, on the nature of the extreme emotional disturbance defense. (Pet'r's Mem. Supp. 61-62; Pet'r's Reply 16-17). The Magistrate Judge fully addressed the nuances of each claim made by Haight, and *Haight III* and *Haight IV*'s rejection of Haight's ineffective assistance of counsel claims relating to jury selection. (R. & R. 128-29). The Magistrate Judge recommended that this Court deny relief under Ground 9 after concluding that the Kentucky Supreme Court did not unreasonably apply *Strickland* in its analysis of these claims. (R. & R. 128-38).

Haight's Objection does not set out any specific objections to the Magistrate Judge's conclusion. (Pet'r's Obj. 46-49). Haight instead reiterates his arguments as to why trial counsel's performance during *voir dire* amounted to ineffective assistance of counsel. The Magistrate Judge conducted a detailed analysis and concluded that Haight's counsel was not ineffective, and thus, the Kentucky Supreme Court did not unreasonably apply *Strickland*. The Court finds no errors in this analysis. Accordingly, the R&R pertaining to Ground 9 is adopted and Haight's Objection thereto is overruled. The Magistrate Judge recommended the issuance of a certificate of appealability as to Ground 9. However, the Court does not find Haight has made a substantial showing of a denial of his Sixth Amendment right to effective assistance of counsel that would entitle him to a certificate of appealability on this ground. *See Slack*, 529 U.S. at 484.

### 4.  *Ground 6:  Introduction of the Jeanne Omer Letter*

During Haight's trial, the Commonwealth introduced a letter of a victim's sister, Jeanne Omer. Haight argues in Ground 6 that he received ineffective assistance of counsel at trial when his attorney did not move to admit Haight's responsive letter in which he expressed remorse for his crimes. (Pet'r's Mem. Supp. 47-85; Pet'r's Reply 142; Pet'r's Mot. Summ. J. 6-17). On this point, *Haight IV* held:

> Haight argues that defense counsel was ineffective when he did not introduce into mitigation evidence a letter which Haight had written to one victim's family. In the letter, Haight admitted committing the murders, expressed sorrow at having caused so much pain and suffering, and further expressed a desire to die for having done so. Defense counsel clearly stated a desire not to reemphasize Haight's guilt phase testimony to the jury when it considered mitigating evidence in the penalty phase. The letter stated in part, "If you think I should pay with my life, then I'd have to agree with you . . . ." Defense counsel was not ineffective in not introducing the letter into mitigation.

*Haight IV*, 41 S.W.3d at 448. The Magistrate Judge concluded that *Haight IV* was not an unreasonable application of *Strickland* and recommended denial of Haight's request for relief under Ground 6. (R. & R. 139-41).

Haight's Objection offers little new argument, and in fact, much of this portion of the Objection is copied verbatim from his Reply to the Response to the Petition. (Pet'r's Reply 18-20; Pet'r's Obj. 51-54). *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) (noting that a reexamination of the exact same argument that was presented to the magistrate judge without specific objections "wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act."). Haight's objection mainly offers additional authority for his argument that remorse (which he contends was expressed in the letter) is important mitigation evidence. (Pet'r's Obj. 51-54).

Haight posits that because of this "compelling mitigation evidence," his counsel's strategy during the penalty phase cannot be considered "objectively reasonable strategy." (Pet'r's Obj. 55). As the Kentucky Supreme Court noted, however, counsel's strategy during the penalty phase was to avoid reemphasizing Haight's guilt-phase testimony. *Haight IV*, 41 S.W.3d at 448. The letter in which Haight admitted guilt would have done just that, not to mention that Haight's letter expressed support for giving him a death sentence. *Id. See also Carter v. Mitchell*, 443 F.3d 517-32 (6th Cir. 2006) (holding that where evidence of a defendant's background would likely have made him look even worse to the jury, counsel's strategic decision to limit testimony about that background was "not even deficient performance, let alone prejudicial . . . ." (internal quotation marks omitted) (quoting *Moore v. Parker*, 425 F.3d 250, 254 (6th Cir. 2005))).

The Sixth Circuit has emphasized that trial counsel's tactical decisions are particularly difficult to attack and a habeas petitioner's challenge to such decisions must overcome a presumption that the challenged action might be considered sound trial strategy. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994); *Darden v. Wainwright*, 477 U.S. 168, 185-87 (1986). Haight's objection does little to explain—beyond conclusory assertions—how *Haight IV* is an unreasonable application of *Strickland*, especially when the letter in question not only re-emphasized guilt but also invited imposition of the death penalty. Therefore, after reviewing the R&R, the Court finds no error and adopts the Magistrate Judge's recommendation that Haight's claim for relief under Ground 6 be denied. Haight's Objection thereto is overruled. Although the Magistrate Judge recommended a certificate of appealability be issued as to Ground 6, the Court concludes that reasonable jurists could not find the assessment of this constitutional claim debatable or wrong.

### 5.   *Ground 16:  Introduction of the 1986 Plea Agreement*

In Ground 16, Haight argues that he received ineffective assistance of counsel when his trial attorney did not introduce into evidence during the penalty phase the 1986 plea agreement by which the Commonwealth offered Haight a sentence of life imprisonment in exchange for his guilty plea to the murder and robbery charges. (Pet'r's Mem. Supp. 62-64; Pet'r's Reply 17-20). The *Haight IV* decision noted that there was a "split of authority on the issue" of whether a criminal defendant has a right to introduce evidence of a withdrawn guilty plea as mitigation evidence in a capital trial. *Haight IV*, 41 S.W.3d at 448. Ultimately, the court held that under the *Strickland* standard it was "at a loss to see how failure to move to admit evidence—the admissibility of which is still an open question—can ever sink below sufficient performance into deficiency." *Id*. Accordingly, the Kentucky Supreme Court concluded that "while the failure to

advance an established legal theory may result in ineffective assistance of counsel under *Strickland*, the failure to advance a novel theory never will." *Id*. The Magistrate Judge concluded that this was not an unreasonable application of *Strickland* and recommended denial of Haight's claim for relief on this ground. (R. & R. 141-44). Further, the Magistrate Judge noted that introduction of the plea agreement would have been a "double-edged sword" for Haight because while it demonstrated that one state prosecutor found a life sentence to be appropriate, it likewise showed that "a state trial court [] firmly believed that death was the only fair punishment . . . ." (R. & R. 143).

Haight argues that the *Haight IV*'s holding was unreasonable because "there was nothing 'novel' about the claim that a [s]tate's offer of a sentence of less than death was mitigating evidence at the time of [Haight's] capital trial. (Pet'r's Obj. 57). Haight maintains that *Lockett v. Ohio*, 438 U.S. 586 (1978); *Eddings v. Oklahoma*, 455 U.S. 104 (1982); and *Woodson v. North Carolina*, 428 U.S. 280 (1976), clearly establish this right. (Pet'r's Obj. 56). *Lockett*, *Eddings*, and *Woodson* hold that a capital defendant has a constitutional right to present mitigation evidence relevant to his or her *character*, *record*, or *circumstances of the case*. *Lockett*, 438 U.S. at 604 n.12; *Eddings*, 455 U.S. at 112; *Woodson*, 428 U.S. at 304-05. Therefore, consistent with these clearly established legal principles, Haight argues that he had the right to introduce his plea agreement as relevant mitigation evidence and his attorney was ineffective in failing to do so.

The Sixth Circuit has previously rejected the argument that *Lockett*, *Eddings*, and *Woodson*'s clearly established legal principles create a right to introduce a plea agreement as mitigation evidence. In *Owens v. Guida*, 549 F.3d 399 (6th Cir. 2008), the petitioner cited *Lockett* for the argument that he had a right to present a negotiated plea agreement as mitigation evidence. *Id*. at 421-22. The court emphasized that while *Lockett* requires the admission of

*relevant* mitigation evidence, the U.S. Supreme Court held that "lower courts could continue to exclude [any] irrelevant evidence not bearing on the defendant's character, prior record, or the circumstances of the offense." *Id.* at 419 (citing *Lockett*, 438 U.S. at 604 n.12). The court noted that all of the other decisions addressing whether the Constitution required the admission of failed plea negotiations as relevant mitigation evidence held that the Constitution did not prevent the exclusion of such evidence. *Id.* at 421-22. The court then explained that "[a] rule of federal law cannot be clearly established when it has been rejected by every court that has been asked to adopt the rule, and a state court does not unreasonably apply clearly established federal law when it rejects an argument that has been unanimously rejected by other courts." *Id.* at 422. Accordingly, the Sixth Circuit held that the state court did not unreasonably apply or violate clearly established federal law in holding that a petitioner was not entitled to present evidence that the state had offered, and the defendant had accepted, an offer of a life sentence in exchange for a guilty plea. *Id.* *See also Wright v. Bell*, 619 F.3d 586, 600 (6th Cir. 2010) ("*Lockett* and *Eddings* stand for the important principle that a capital defendant must be able to present any relevant mitigating evidence in order to allow the sentencing court to conduct an individualized sentencing, but do not imply that evidence of a state's plea offer is relevant mitigating evidence."); *Riley v. Cockrell*, 339 F.3d 308, 317-19 (5th Cir. 2003) (denying a certificate of appealability to a death row inmate who wanted to argue that his trial counsel was ineffective for not arguing that the inmate's guilty plea constituted mitigating evidence); *Hall v. Luebbers*, 341 F.3d 706, 717 (8th Cir. 2003) (rejecting the capital defendant's claim that "the trial court violated his Eighth and Fourteenth Amendment rights by excluding evidence of Hall's willingness to plead guilty . . . ."). Therefore, the Court concludes that the notion that a plea agreement is relevant admissible mitigation evidence is not so "clearly established" as Haight contends and he

has failed to establish that his counsel was ineffective for failing to offer the plea agreement into evidence.

Consequently, Haight's Objection is not well taken. As the Magistrate Judge pointed out, Kentucky law regarding the admission of a withdrawn plea agreement at the time of Haight's trial and sentencing was not clear and "[a] strong argument existed that KRE 408 worked to prohibit the introduction of just such a document." (R. & R. 143). Thus, the Court agrees with the R&R that *Haight IV* was not an objectively unreasonable application of *Strickland*, as "Haight's counsel could not be faulted under the Sixth Amendment for his decision not to introduce the plea agreement." (R. & R. 143). Accordingly, the R&R as to Ground 16 is adopted and Haight's Objection thereto is overruled.

Further, the Court holds that a certificate of appealability is warranted as jurists of reason could disagree as to the merits of this claim. Significantly, the Ninth Circuit has previously held that evidence of a plea offer from the prosecution was mitigating because it showed that the prosecution thought the imposition of the death penalty was not clear-cut. *Summerlin v. Schriro*, 427 F.3d 623, 631-40 (9th Cir. 2005). This reflects that jurists of reason could disagree, and in fact have disagreed, as to whether a plea agreement could have been offered as mitigating evidence. Accordingly, a certificate of appealability as to Ground 16 will be granted.

> **6.** ***Ground 13: Failure to Adequately Investigate and Present Mitigation Evidence***

In Ground 13, Haight argues that the failure of counsel to perform an adequate investigation as to his mental status and psychological problems and to obtain experts in view of the information available to them of a 1974 psychological report suggesting the possibility of organic brain damage plainly constituted ineffective assistance of counsel under *Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003); and *Jacobs v. Horn*, 395

F.3d 92 (3rd Cir. 2005). (Pet'r's Mem. Supp. 67-80; Pet'r's Reply 24-41). *Haight IV* rejected

this ineffective assistance of counsel claim based on the failure of Haight's trial counsel to obtain

a neurological examination. *Haight IV*, 41 S.W.3d at 444-45. The court held:

> Haight argues that he wanted funds during the post-conviction proceedings to hire a neuropsychologist to examine him for organic brain damage. Trial counsel had claimed that he did not know of a need for a neurological examination until after the trial had started.
>
> . . . Haight contends that he wanted to ask for funding for expert assistance in neuropsychology in order to prove ineffective assistance of counsel at trial . . . . This Court has already found that Haight had the full benefit of mental health evaluations and experts during his trial.
>
> The expert offered by Haight said that there was a high degree of certainty that it's possible that Haight may suffer from brain damage which may be material in a defense based upon extreme emotional disturbance. This is mere speculation. An RCr 11.42 proceeding does not provide for a relitigation of the performance of trial counsel. It should be recalled that the report by the expert was not filed until after the circuit court denied the RCr 11.42 motion. We find that Haight has not demonstrated any prejudice in this regard. He was not denied fundamental due process under either the federal or state constitution.

*Id*. (internal citation omitted). In *Haight III* the Kentucky Supreme Court determined that the

revelation of the 1974 mental health evaluation during trial did not require further

neuropsychological examination prior to sentencing. *Haight III*, 938 S.W.2d at 249. In that

decision, the Kentucky Supreme Court stated:

> Appellant's claim that a twenty-year-old mental health evaluation discovered during trial would have affected the case is without merit. Appellant had full benefit of mental health evaluations and experts and there was no abuse of discretion in the trial court's failure to order another such examination. Moreover, the trial court gave all proper consideration to the mitigating evidence prior to imposition of its final judgment.

*Id*.

As a threshold matter, the Court notes that the three expert reports that Haight now has in

his possession are not relevant to the Kentucky Supreme Court's decision that Haight's counsel

was not ineffective.  As this Court has previously noted when denying Haight's request for expert assistance:

> Whatever deficits neurological or psychopharmacological evaluations might now, in hindsight, uncover, such findings do not call into question the valid basis for trial counsel's reliance on the opinions of the defense experts he consulted. Newly-minted expert testimony would not assist Haight in establishing that the Kentucky Supreme Court's conclusion to reject his claim of ineffective assistance of counsel was an unreasonable application of *Strickland*.

(Order Denying Expert Assistance 5, DN 105).  Although Haight takes issue with this holding, the Court will not disturb its prior ruling and therefore agrees with the Magistrate Judge that these expert reports will not be considered when analyzing Haight's request for habeas relief. (R. & R. 144 n.27).  Accordingly, the Court will address issues pertaining to the experts that *were* presented during the penalty stage of the trial to determine if the Kentucky Supreme Court's holding that Haight's counsel was not ineffective is an unreasonable application of *Strickland*.

Haight contends that his trial counsel did not adequately investigate the possibility of potential brain damage after being alerted to that possibility from a 1974 psychological evaluation.  The Magistrate Judge noted that the Haight's argument overlooks the evaluation of trial counsel's expert, Dr. Fisher, and also ignores the vague nature of the 1974 psychological evaluation that only references the "possibility" of brain damage without citing any specific neurological testing or other objective bases for the opinion.  (R. & R. 159).  Further, the Magistrate Judge concluded that Haight's two trial attorneys obtained expert witnesses and Haight "does not compellingly argue that psychologist Fisher was incompetent, negligent or otherwise deficient in his psychological examination and his conclusions concerning Haight's lack of organic brain defect or dysfunction . . . ."  (R. & R. 159).  Accordingly, the Magistrate Judge recommended denial of Haight's claim for relief because the holdings in *Haight III* and

*Haight IV* that Haight's trial counsel were not ineffective were not objectively unreasonable applications of *Strickland*. (R. & R. 159-60).

None of the stated reasons for Haight's Objection as to this ground, many of which are duplications of the arguments in his Petition and Reply, dissuade the Court from the same conclusion as the Magistrate Judge. The Magistrate Judge conducted a thorough and lengthy analysis of Haight's arguments which this Court has reviewed and finds no error. Accordingly, the Court agrees with the Magistrate Judge that both *Haight III* and *Haight IV* reasonably applied *Strickland* "to reject Haight's claim that his attorneys failed to adequately investigate for mitigation evidence prior to trial or that they were deficient in their failure to request the services of a neuropsychiatrist or psychopharmacologist in addition to the clinical forensic psychologist and clinical social worker they had already obtained to assist in Haight's defense." (R. & R. 159-60). Haight's Objection is overruled and the R&R in regard to Ground 13 is adopted.

The Magistrate Judge recommended a certificate of appealability be issued as to Ground 13. Yet, the Court concludes that "no reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner . . . ." *Slack*, 529 U.S. at 484.

### 7.   *Ground 14:  Sleeping Juror*

In Ground 14, Haight argues that his trial attorneys rendered ineffective assistance of counsel when they failed to move for an immediate mistrial and to protect the trial record after notifying the court that certain members of the jury had been sleeping during the penalty phase of Haight's capital trial. As to this ground for relief, the *Haight IV* decision did not reach the merits but stated:

> Haight argues that trial counsel was ineffective because he failed to move for a
> mistrial or make any effort to get factual details into the record regarding the

alleged sleeping of jurors during part of the penalty phase. He also contends that the trial judge committed error when he took no action on his own initiative.

Haight does not plead this claim with the specificity required by RCr 11.42(2). He does not state which jurors were alleged to be sleeping and he does not indicate when the event occurred, if it actually took place. Haight is not entitled to the requested relief.

Haight does not indicate what information the jurors supposedly missed and how that would have changed the outcome of his trial. If defense counsel did see jurors with their eyes closed, there is no evidence that they were sleeping. In addition there is no evidence that the trial judge ever observed the alleged sleeping.

*Haight IV*, 41 S.W.3d at 447 (internal citation omitted).

The Magistrate Judge recommended denial of Haight's request for relief under this ground because his claim, as the Kentucky Supreme Court held, was procedurally defaulted. (R. & R. 162-64). Further, the Magistrate Judge noted that Haight could not establish cause and prejudice under *Martinez* and *Trevino* to enable this Court to now hear his claim on the merits because those "decisions were rendered well after Haight's state court proceedings were entirely concluded and [cannot] . . . be retroactively applied to his case in an effort to salvage this procedurally defaulted issue." (R. & R. 164).

Haight objects to the Magistrate Judge's assertion that *Martinez* and *Trevino* cannot be retroactively applied to salvage a procedurally defaulted issue raised in the Petition because "*Martinez* and *Trevino* were rendered well after Haight's state court proceedings were entirely concluded." (R. & R. 164; Pet'r's Obj. 85-87). The Court finds that Haight's objection has merit, but does not change the outcome. The Magistrate Judge's conclusion that *Martinez* cannot be applied retroactively is misplaced. The Magistrate Judge relied on *Chavez v. Secretary, Florida Department of Corrections*, 742 F.3d 940 (11th Cir. 2014), and *Buenrostro v. United States*, 697 F.3d 1137 (9th Cir. 2012), in support of his conclusion; however, these cases held

that *Martinez* cannot be applied retroactively to form a basis for application for a second or successive habeas petition because *Martinez* did not create a new rule of substantive constitutional law. *See Chavez*, 742 F.3d at 946; *Buenrostro*, 697 F.3d at 1139.

The situation is quite different here as Haight's instant claim is neither second, successive, nor untimely. The Court finds convincing recent Sixth Circuit cases where the court applied the *Martinez* exception to issues that were procedurally defaulted in state courts long before *Martinez* was rendered in 2012. *See Franklin v. Jenkins*, 839 F.3d 465, 469 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 2188 (2017) (applying *Martinez* to a state procedural bar that was found by the Ohio Supreme Court in 2002); *Atkins v. Holloway*, 792 F.3d 654, 658 (6th Cir. 2015) (analyzing whether the *Martinez* exception applied to excuse a state procedural default that occurred in 2004); *Sutton v. Carpenter*, 745 F.3d 787, 790 (6th Cir. 2014) (analyzing whether *Martinez* excused a procedural bar because of failure to raise in state court in 2000). Accordingly, the Court concludes that *Martinez* and *Trevino*, as equitable rules of federal habeas law, would apply to Haight's instant claim to excuse his state court procedural default *if* he could demonstrate cause and prejudice for his state court default by showing that his post-conviction attorney performed below the *Strickland* standard. But first, Haight must establish that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14.

First, the Court emphasizes that Haight has not provided any evidence indicating which juror was sleeping, for how long, or during which part of the presentation of evidence the juror allegedly slept. In this Court's earlier order denying Haight an evidentiary hearing as to this matter, the Court stated:

> Indeed, Haight's unwillingness to state what facts he believes he could show at an evidentiary hearing not only renders this court unable to conclude that an

> evidentiary hearing would be anything other than a waste of time and resources, but it also strongly suggests that Haight views the evidentiary hearing as a fishing expedition rather than an opportunity to prove relevant facts to the court. The need to allege specific facts in support of his arguments should have been of particular concern to Haight given that it was the same lack of factual specificity about the underlying ineffective-assistance-of-trial-counsel claim that led to the procedural default of that claim. Haight cannot show that his post-conviction attorney was ineffective for failing to allege specific facts when Haight continues to decline to state what facts could have and should have been alleged.

(Mem. Op. 16-17, DN 135). Haight argues that it is the fault of the post-conviction courts in refusing to provide him necessary time and resources that prevented the presentation of evidence for this claim. He argues that he is not responsible for the undeveloped state court record and "[t]o saddle him with a record born [sic] of deficient and unfair process is inequitable." (Pet'r's Obj. 89). As previously noted, however, Haight has never stated what facts he believes these courts have prevented him from obtaining that would lead to a successful claim. Furthermore, although Haight's post-conviction relief has been litigated for over two decades, Haight has never adduced any affidavit or other evidence to corroborate his allegations.

Even if Haight had presented evidence supporting his claim that a juror was sleeping during the penalty phase of his trial, Haight cannot show that his counsel's performance was deficient. As discussed above, *Strickland* first directs courts to assess trial counsel's performance and determine whether it was reasonable. *Strickland*, 466 U.S. at 691. During the penalty phase of trial, Haight's counsel argued that the instructions were too complicated and would guide the jury to an enhanced penalty. (R. & R. (citation omitted)). To support his argument, he noted that the jury seemed incapable of taking direction and made the remark, "[t]his jury appears to have a pretty short attention span anyway, with a couple of them sleeping throughout the penalty phase, even early in the morning." (R. & R. 75 (citation omitted)). Therefore, Haight's counsel's comment and failure to move for a mistrial because of the alleged

sleeping juror was likely tactical strategy, and thus not an objectively unreasonable performance under *Strickland*. *See Sierra v. Bartowski*, No. 11-1860 (RMB), 2012 WL 4504246, at *28 (D.N.J. Sept. 27, 2012) ("[The state court correctly] surmised that it could have been sound trial strategy to forego an objection to a sleeping juror . . . . Other courts have also noted the strategic considerations involved when a juror has been sleeping." (alteration in original) (internal quotation marks omitted)); *Prada-Cordero v. United States*, 95 F. Supp. 2d 76, 81 (D.P.R. 2000) ("Additionally, a court should be cognizant that attorneys may use the appearance of sleep as a strategic tool to downplay the importance of an adversary's presentation." (citation omitted)); *Arispe v. United States*, No. 03-10124-BC, 2005 WL 3132211, at *2 (E.D. Mich. Nov. 21, 2005) ("It is not necessarily an unreasonable strategy for a defense attorney to decline to object to juror inattentiveness, especially when the jurors may have been inattentive to the government's case."). This Court notes that it "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689. Haight has not overcome the presumption that his counsel's actions "might be considered sound trial strategy." *Id*. (internal quotation marks omitted) (citation omitted). Therefore, the Court concludes that Haight has not demonstrated that his counsel's performance was defective, as required by *Strickland*.

Finally, Haight has not shown that he was prejudiced by his counsel's alleged error. "To establish prejudice, [Haight] must show that a reasonable probability exists that, but for counsel's deficient performance, the result of the proceedings would have been different." *Tibbetts v. Bradshaw*, 633 F.3d 436, 442 (6th Cir. 2011) (citation omitted). Haight argues that he was clearly prejudiced by a juror sleeping through the presentation of his mitigating evidence. (Pet'r's Obj. 89). Aside from the fact that there is no evidence that a juror was sleeping during

the mitigating evidence, Haight has failed to show that—even if a juror was sleeping during the presentation of such evidence—there is a reasonable probability that a mistrial would have even been granted. Where "one is left with pure speculation on whether the outcome of the trial or the penalty phase could have been any different," there is an insufficient showing of prejudice. *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004) (citation omitted). This is precisely the situation here. For this reason, the Court concludes that Haight has failed to demonstrate that he was prejudiced by his counsel's alleged defective performance and has failed to make an adequate showing under *Strickland*.

Accordingly, although the Court disagrees with the Magistrate Judge's analysis in part, the Court does agree that Haight's claim for relief under Ground 14 is procedurally barred. Therefore, Haight's Objection regarding a sleeping or inattentive juror is overruled. Further, though the Magistrate Judge recommended a certificate of appealability on this issue, the Court does not believe that reasonable jurists could debate that a procedural bar is present for the purpose of granting a certificate of appealability in the complete absence of any facts to support a finding of deficient performance or prejudice.

### 8. *Ground 15: "No Adverse Inference"*

Haight argues in Ground 15 that his trial counsel was ineffective when he failed to request a "no adverse inference" instruction on Haight's right to remain silent during the penalty phase of the trial. (Pet'r's Mem. Supp. 83-85; Pet'r's Reply 44-54). The Kentucky Supreme Court held that Haight's claim was procedurally barred because he did not raise this ground for relief on direct appeal of his case; however, the Magistrate Judge concluded that Haight did in fact raise this claim on direct appeal. (R. & R. 166-68). The Magistrate Judge concluded that *Haight IV* also reached the merits of the ineffective assistance of trial counsel claim based on its

statement that "this claim does not amount to ineffective assistance of counsel" followed by its observation that "*Carter v. Kentucky*, 450 U.S. 288 (1981), is not applicable." *Haight IV*, 41 S.W.3d at 448. *See also Carter*, 450 U.S. at 294-95 (holding that a no-adverse-inference instruction is required at the guilt phase). Therefore, the Magistrate Judge analyzed Haight's claim under the unreasonable-application-of-or-contrary-to-federal-law standard, recommending denial of this ground for relief because Haight cannot demonstrate either his counsel's deficient performance or that he suffered prejudice because of the lack of a "no adverse inference" instruction within the meaning of *Strickland*. (R. & R. 164-68). Therefore, the Magistrate Judge concluded that *Haight IV* is not contrary to or an unreasonable application of U.S. Supreme Court precedent and recommended denial of Haight's claim for relief under this ground. (R. & R. 168).

Haight disputes the Magistrate Judge's conclusion for three reasons. First, Haight argues that his attorney's decision to not offer the "no adverse inference" instruction was deficient because it was against the professional state and local norms of Kentucky. (Pet'r's Obj. 92-93). Second, Haight claims that the Magistrate Judge's conception of his counsel's strategy is not supported by evidence in the record. (Pet'r's Obj. 93-94). Finally, Haight contends that the Magistrate Judge's conclusion that Haight cannot show he suffered prejudice because of the "overwhelming proof of his guilt" is irrelevant in the consideration of whether he was prejudiced during the penalty phase of his trial. (R. & R. 168; Pet'r's Obj. 94-95).

Haight argues that the Magistrate Judge failed to consider the decision of *Hibbard v. Commonwealth*, 661 S.W.2d 473 (Ky. 1983). (Pet'r's Obj. 92-93). In *Hibbard*, the Kentucky Supreme Court ruled that a defendant in a penalty proceeding was entitled to a no adverse inference instruction under RCr 9.52 if he so requested, and failure of the trial court to give such

instruction was reversible error. *Hibbard*, 661 S.W.2d at 474. Thus, according to Haight, *Hibbard* created Kentucky common law that was "the prevailing professional norm[] in Kentucky at the time of trial" and his counsel's failure to follow this practice amounted to deficient performance. (Pet'r's Obj. 92).

Petitioner overstates the breadth of *Hibbard*. The Kentucky Supreme Court merely held there that a defendant is entitled to a no adverse inference instruction during the penalty phase of a trial *if one is requested*. *Hibbard*, 661 S.W.2d at 474. *Hibbard* does not support the proposition that there was the "professional norm" in Kentucky for counsel to request such an instruction, only that the trial court must offer the instruction if requested. Further, Haight does not demonstrate what U.S. Supreme Court precedent the Kentucky Supreme Court contravened or applied unreasonably. Haight cites *Heard v. Addison*, 728 F.3d 1170 (10th Cir. 2013), and *Medina v. Diguglielmo*, 461 F.3d 417 (3d Cir. 2006), for the principle that attorneys who do not follow state and local professional norms are deficient under *Strickland*. (Pet'r's Obj. 92-94). In this analysis, however, federal appeals court decisions are clearly not established federal law as determined by the U.S. Supreme Court. *See* 28 U.S.C. § 2254(d)(1). Haight has not pointed to any U.S. Supreme Court precedent existing at the time holding that trial counsel's failure to follow local professional norms was deficient (even if *Hibbard* could be considered to reflect a local professional norm) within the meaning of *Strickland*.[8] Therefore, the Court rejects Haight's first contention.

_____

[8] Haight cites *Wiggins v. Smith*, 539 U.S. 510, 523 (2003), in support of his argument that counsel's "reasonableness under prevailing professional norms" is considered when determining if counsel is deficient. This case was decided in 2003, however, and thus was not established U.S. Supreme Court precedent *at the time* of Haight's initial state court appeal. Under habeas review, the state court decision is evaluated using the law at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 379-80 (citing *Teague*, 489 U.S. at 307-09). *See also Teague*, 489 U.S. at 309 ("Application of constitutional rules not in existence at the time a

Next, Haight takes issue with the Magistrate Judge's conclusion that it was sound strategy for Haight's counsel not to raise at the penalty stage Haight's guilt-phase testimony admitting to murder. (Pet'r's Obj. 93-94). Haight argues that there is no record evidence indicating that this was his counsel's strategy and revives his argument raised in support of an evidentiary hearing. (Pet'r's Obj. 93-94). On habeas review, however, courts may not "indulge '*post hoc* rationalization' for counsel's decisionmaking that contradicts the available evidence of counsel's actions . . . ." *Harrington v. Richter*, 562 U.S. 86, 109 (2011) (quoting *Wiggins*, 539 U.S. at 526-27). Nevertheless, a court may consider objectively reasonable bases for counsel's actions. *Id*. at 110. "*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Id*. (citing *Strickland*, 466 U.S. at 688). Accordingly, a court is not required to have record evidence of counsel's subjective strategic thinking in order to determine the reasonableness of counsel's strategy. Therefore, Haight's argument is not well taken, and the Court finds no need for an evidentiary hearing on this point.

Finding that the Kentucky Supreme Court did not unreasonably apply federal law in holding that Haight's counsel's performance was not deficient under *Strickland* renders moot Haight's final issue relating to the Magistrate Judge's conclusion that Haight could not demonstrate that he suffered prejudice from the lack of a no adverse inference instruction.[9] (R.

conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system."). Therefore, this argument is not well taken.

[9] The Court agrees with Haight that the Magistrate Judge's review of the overwhelming evidence of guilt has no bearing on the analysis of prejudice in sentencing. *See Moore v. Mitchell*, 708 F.3d 760, 797 n.16 (6th Cir. 2013) ("But the improper comments took place at the penalty phase. The overwhelming evidence of guilt was irrelevant [during the penalty phase] because the jury had already found Moore guilty. At sentencing, the jury was required to decide whether the aggravating circumstances outweighed the mitigating circumstances, necessitating a verdict of death."). Nevertheless, even assuming *arguendo* that Haight could demonstrate the Kentucky

& R. 168).  Therefore, finding no error, the Magistrate Judge's recommendation that relief under Ground 15 be denied is adopted and Haight's Objection is overruled on this basis.

## C.    Jury Issues

### 1.    *Ground 17:  Extrajudicial Knowledge*

In Ground 17, Haight maintains that he was denied a fair trial by an impartial jury because various members of the jury were aware of prejudicial facts obtained from their exposure to a newspaper article entitled "Murder Trial Begins for Man Once Sentenced to Death."  (Pet'r's Mem. Supp. 85-88; Pet'r's Reply 55-58).  The article reported that Haight had previously pleaded guilty to the two murders and that a police officer was accidentally shot to death by a Kentucky state trooper during Haight's arrest.  The Kentucky Supreme Court in *Haight III* addressed this ground for relief on its merits:

> Appellant claims entitlement to a new trial on grounds that juror Helton engaged in misconduct by failing to make full disclosure during *voir dire*, by prematurely deciding contested issues, and by possibly furnishing proscribed information to others jurors.  This claim arises from the fact that prospective juror Helton read a newspaper article concerning the case prior to reporting for jury duty.  According to his testimony, this juror scanned the article but did not remember the headline which revealed that appellant had been previously sentenced to death.
>
> Initially it should be observed that during *voir dire* the prospective juror acknowledged that he had seen the article, recalled the names of the victims, and indicated that he had little recollection otherwise about what was contained in the article and in the headline.  In addition, this prospective juror indicated an independence of thought and a determination to fairly try the case.  No motion was made to exclude the juror for cause and no peremptory challenge was used to remove him.  He was seated and participated in the verdict.

---

Supreme Court unreasonably applied federal law when holding that Haight's counsel's performance was not deficient—which he cannot—he has not shown how he was prejudiced by his counsel's failure to offer a no adverse inference instruction.  As to proof of prejudice where, as here, the defendant claims that counsel provided ineffective assistance in the penalty phase, "the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."  *Strickland*, 466 U.S. at 695.  Haight has not made this necessary showing.

In response to appellant's motion for a new trial, the trial court held a hearing relating to this juror and allegations he had withheld critical information. At the conclusion of the hearing, the trial court rendered findings of fact that are not clearly erroneous and which reveal no abuse of discretion. We deem it appropriate to quote the trial court at length:

> As to juror Helton, the court finds specifically that juror Helton answered questions truthfully both on *voir dire* and at the March 7 [post-trial] hearing when he was called subsequent to the jurors' verdict. A finding that he answered questions truthfully leads the court to the conclusion that that evidence certainly is credible. The juror says: I scanned the article. I do not remember the headline [. . . .]

> This is *voir dire* examination: I do not remember the headline. I do not remember the details except that two people—there were two murders and robberies and I remember the names Omer and Vance as being the names of the parties involved.

> The court has no reason to believe that at any time Mr. Helton recalled anything else. . . . . With that in mind, I specifically find that Mr. Helton's testimony is credible. He did not display a bias, and for that reason, overrule that portion of the motion for a new trial dealing with that testimony. There was no deliberate concealment on his part of information which would compel this court to reach a conclusion that he was partial.

We can hardly conceive of a circumstance in which greater deference should be granted to the findings of the trial court. It is appropriate to recall that the trial judge personally conducted much of the *voir dire* examination and presided over all of it. He presided over the trial and likewise presided over the post-trial hearing on the motion for a new trial. The trial judge was immersed in the case and it would be utterly extraordinary for an appellate court to disregard his view as the questions of candor and impartiality of a juror.

We have examined the appellant's contentions with respect to juror Nichols and find them to be insubstantial. The transcript reveals no misunderstanding concerning the death of the police officer or disclosure to other jurors. This juror was given enough information during voir dire to have led to a mistaken belief on her part. Her post-trial testimony is without any hint of dishonesty.

As to juror Gaugh, much is made of his apparent knowledge of the police officer having been killed when, in fact, he was properly informed only that a police officer had been fired upon. We are told that this is more than enough to compel the inference that Gaugh concealed vital information. As the evidence in this

regard was ambiguous, as it is likewise with respect to each of these jurors, we will rely on the trial court for the reasons stated herein and as follows:  "It is pretty clear that they [the questioned jurors] had no information which would cause the court to believe that they were in any way partial in their deliberations or their final conclusions."

*Haight III*, 938 S.W.2d at 245-47 (internal citations omitted) (citation omitted).  The Magistrate Judge recommended rejection of this claim because Haight had not shown that the Kentucky Supreme Court's holding was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  (R. & R. 173-80).  Haight's objection to this recommendation is mostly a reiteration of his earlier arguments, with some parts of his Objection presented verbatim from his Petition.  (Pet'r's Mem. Supp. 85-89; Pet'r's Obj. 95-99).

The only specific objection Haight puts forth is that the Magistrate Judge erred in not considering the Sixth Circuit's decision in *Goins v. McKeen*, 605 F.2d 947 (6th Cir. 1979).  (R. & R. 183).  In *Goins*, the Sixth Circuit held:

While neither the publicity involved nor the jurors' exposure to it was extensive in this case, we believe that its occurrence during trial and the fact that the article contained information strongly probative of guilt, along with other inadmissible and extremely prejudicial information, rendered the circumstances inherently prejudicial and that a violation of petitioner's constitutional right to trial by an impartial jury may be presumed.

*Goins*, 605 F.2d at 954.  Haight maintains that this supports his argument that prejudice should be presumed in his case because the newspaper article at issue was published during his trial and revealed prejudicial information pertaining to his past guilty plea.  (Pet'r's Obj. 95-99).

In determining what clearly established federal law to apply, the court may not look to lower federal court decisions to formulate the relevant rule of law, but only to holdings of the United States Supreme Court.  *See James v. Brigano*, 470 F.3d 636, 643 (6th Cir. 2006) (reversing a district court's grant of relief based upon a Sixth Circuit decision which was not

"clearly established Federal law, as determined by the Supreme Court of the United States . . . ." (citing 28 U.S.C. § 2254(d)(1))). Nonetheless, decisions of lower courts of appeals may be instructive in assessing the reasonableness of a state court's holding. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002)). Thus, Haight cannot rely on *Goins* for the proposition that it extended the doctrine of presumed prejudice, because *Goins* is not "clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). *See Williams v. Griswald*, 743 F.2d 1533, 1538 n.6 (11th Cir. 1984) (declining to adopt *Goins* and noting that *Goins* cited no authority for extending the doctrine of presumed prejudice).

Additionally, Haight argues that the Kentucky Supreme Court's holding involved an unreasonable determination of the facts. "Under AEDPA, . . . a federal habeas court must find the state-court conclusion 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Rice v. Collins*, 546 U.S. 333, 338 (2006). In conducting this review, a federal court is to apply a presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut the presumption. 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). *Haight III* noted that the trial judge determined the jurors to be impartial after personally conducting *voir dire* and presiding over the post-trial hearing on the motion for a new trial. *Haight III*, 938 S.W.2d at 247. Haight puts forth no reason that would sway this Court to disagree in any respect with the factual determinations of the trial court and the Kentucky Supreme Court. *See Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003) ("[A] trial court's finding that a juror was impartial is entitled to a presumption of correctness, rebuttable only upon

a showing of clear and convincing evidence.").  Haight has proffered no evidence to contradict the trial court's determination regarding juror impartiality.  Therefore, the Court holds that the Kentucky Supreme Court did not make an unreasonable determination of the facts related to this issue.

Finding no error, the Court holds that the Magistrate Judge's recommendation to deny the relief requested in Ground 17 is adopted and Haight's Objection is overruled.  A certificate of appealability will be granted as to this ground.  Considering the Sixth Circuit has previously found that prejudice was presumed on a set of somewhat similar facts regarding pretrial publicity, the Court concludes that jurists of reason could find the resolution of this ground debatable.  *See Goins*, 605 F.2d at 954.  *See also Slack*, 529 U.S. at 484.

### 2.  *Ground 18:  Unfair Jury Selection Procedure*

Haight argues in Ground 18 that he was deprived of due process of law and an impartial jury when the jury selection procedures during the trial "violated well established Kentucky rules for jury selection."  Regarding this argument, the Kentucky Supreme Court stated:

> Initially we must state that there is no evidence upon which any impropriety may be inferred.  Moreover, the procedure initially employed, i.e.[,] drawing a sufficient number to reduce the jury to the number required by law, is permitted by RCr 9.36(2).  As such, the re-draw, which produced a jury consisting of the same persons, was merely redundant.  Finally, our review of the claims in this regard reveals substantial compliance with the rules relating to jury selection and certainly no error of sufficient gravity to overcome the trial court's discretion with respect to a new trial.

*Haight III*, 938 S.W.2d at 247 (citation omitted).  The Magistrate Judge concluded that this holding was not an unreasonable application of or clearly contrary to any clearly established federal law despite any possible error in the state procedures because "the jury ultimately chosen represents a fair cross-section of the community . . . ."  (R. & R. 182).

Haight avers that that the alleged mistake by the trial court in jury selection procedures prevented him from having the right to a fair and impartial jury because three women—one of whom was African-American—were left off of the jury due to an alleged mistake. Thus, Haight argues, the Kentucky Supreme Court ignored U.S. Supreme Court precedent established in *Batson v. Kentucky*, 476 U.S. 79, 91 (1986), and *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994), as this error affected his right to a fair and impartial jury.

This argument has no merit. The Kentucky Supreme Court held that the jury selection process was in substantial compliance with Kentucky procedural rules, and this Court cannot disturb that holding. *Haight III*, 938 S.W.2d at 247 (citation omitted); *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law . . . . [W]e emphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." (internal quotation marks omitted) (internal citation omitted) (citations omitted)). Moreover, even if there was a mistake in the jury selection process, Haight has adduced no evidence that these women were kept off the jury because of their race or gender, or that the chosen jury failed to represent a fair cross-section of the community. The Court agrees with the Magistrate Judge that "[w]hat is important from the perspective of the federal Constitution is that, whatever state procedures may be employed, the jury ultimately chosen represents a fair cross-section of the community under the Sixth Amendment." (R. & R. 182 (citing *Duren v. Missouri*, 439 U.S. 357 (1979); *United States v. Allen*, 160 F.3d 1096 (6th Cir. 1998))). Haight has not demonstrated or alleged that the jury empaneled was not a fair representation of the community. Therefore, the Court does not find that *Haight III* was contrary to or an unreasonable application of clearly established federal law. Accordingly, the Court adopts the Magistrate Judge's recommendation to deny relief under

Ground 18 and overrules Haight's Objection.  The Court further concludes that a certificate of appealability is not warranted because reasonable jurists could not debate this Court's resolution of Ground 18.  *See Slack*, 529 U.S. at 484.

### 3. *Ground 19:  Improper Exclusion of Jurors*

In Ground 19, Haight argues that jurors Hansen and Ireland were improperly excused for cause because the trial court erroneously concluded that they could not consider death as a penalty.  (Pet'r's Mem. Supp. 90-95; Pet'r's Reply 59-62).  With respect to this point, the Kentucky Supreme Court stated:

> [A]ppellant has raised questions concerning jurors Hansen, Ireland, Huffman, Nestmann and Gaugh.  He has also questioned the post-discharge behavior of an alternate juror and complained that the court coerced a penalty phase verdict. This court has carefully considered each of these claims of error and determined that as to each, there was no preservation of the question or that the ruling was within the sound discretion of the trial court.

*Haight III*, 938 S.W.2d at 247.  Because it was unclear to the Magistrate Judge whether the Kentucky Supreme Court relied on a procedural bar, the Magistrate Judge addressed the merits of the argument and determined that *Haight III* was a reasonable application of U.S. Supreme Court precedent and a reasonable application of the facts.  (R. & R. 187).  Specifically, the Magistrate Judge concluded that the record supported the trial court's finding that jurors Hansen and Ireland's opinion of the death penalty would have substantially impaired their ability to impose the death penalty and this holding, as a finding of fact, should be given substantial deference.  (R. & R. 186-87).

Haight objects, arguing that *Haight III* was contrary to and an unreasonable application of clearly established federal law, as well as an unreasonable determination of the facts because juror Hansen stated that she could set aside her views of the death penalty and juror Ireland stated that it was possible he could sentence someone to death if the circumstances were

"extreme." (Pet'r's Obj. 104). Haight argues that the mere fact the two jurors "might not be comfortable with the idea of imposing the death penalty" did not render them ineligible for jury duty in a capital case. (Pet'r's Obj. 104). Like many of Haight's other contentions, this is mostly copied directly from his Petition. Regardless, a review of the record reveals that *Haight III* was neither contrary to or an unreasonable application of U.S. Supreme Court precedent, nor an unreasonable determination of fact. A trial court's decision to strike a juror based on his or her views of capital punishment is a factual determination. Under 28 U.S.C. § 2254, such a determination is entitled to a presumption of correctness, to be overturned only if it rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Upon *de novo* review, the Court agrees with the Magistrate Judge that the trial court's decision to exclude jurors Hansen and Ireland is supported by the record. During *voir dire*, juror Hansen stated that she was opposed to the death penalty and would not seriously consider death as a sentence, admitted she could not consider the full range of penalties, and stated that it was wrong to decide if someone should live or die. (R. & R. 185 (citation omitted)). Juror Ireland also indicated that he would not consider a sentence of death. (R. & R. 185 (citation omitted)). These statements could reasonably lead a trial court to conclude that the two jurors' views would prevent or substantially impair the ability of jurors Hansen and Ireland to sit on a capital jury. *See Adams v. Texas*, 448 U.S. 38, 45 (1980) ("[A] juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or *substantially impair* the performance of his duties as a juror in accordance with his instructions and his oath." (emphasis added)). This was not an unreasonable finding of fact and, therefore, *Haight III* was not contrary to or an unreasonable application of U.S. Supreme Court precedent.

Finding no error, the Court adopts the recommendation of the Magistrate Judge as to Ground 19 and Haight's Objection on this basis. Despite the Magistrate Judge's recommendation that a certificate of appealability should be granted, the Court finds that no reasonable jurists could debate whether the petition should have been granted.

### 4. *Ground 20: Failure to Exclude Jurors*

In Ground 20, Haight contends that jurors Huffman, Nestmann, and Gaugh were not constitutionally qualified to sit as jurors in Haight's capital case because they stated that they would not consider Haight's background as mitigating evidence. (Pet'r's Mem. Supp. 96-102; Pet'r's Reply 62-63). *Haight III* concluded that it was within the trial court's discretion to allow Huffman, Nestmann, and Gaugh on the jury. *Haight III*, 938 S.W.2d at 247. The Magistrate Judge recommended that the Court deny Haight's claim for relief because the Kentucky Supreme Court's holding was not clearly unreasonable or contrary to any U.S. Supreme Court precedent. (R. & R. 187-92). Haight avers that the Magistrate Judge's legal analysis is incorrect because it is "unconstitutional to impanel a jury that cannot and will not consider relevant mitigating evidence when assessing punishment in a capital case." (Pet'r's Obj. 110).

The Magistrate Judge noted that this claim cannot be applied as to juror Huffman because "Huffman did not sit on the jury that convicted Haight of the murders and fixed his penalty at death. Huffman was removed by peremptory challenge. Consequently Haight cannot successfully argue that his constitutional rights were in any fashion violated . . . ." (R. & R. 189) (citing *United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2002)). Haight does not specifically object to this finding and the Court finds no error in the Magistrate Judge's analysis. Thus, the Court adopts the Magistrate Judge's recommendation to deny the claim as it pertains to juror Huffman.

The Magistrate Judge also concluded that Haight could not maintain this claim regarding juror Gaugh on the basis of waiver. As the R&R states, "[t]he conscious election of Haight's trial counsel to expressly waive any objection with respect to juror Gaugh, along with the acknowledgment on appeal that the issue concerning Gaugh was not preserved for appellate review, stands as a separate and independent basis on which to reject habeas corpus relief . . . ." (R. & R. 191). *See Murray*, 477 U.S. at 485 ("*Wainwright v. Sykes* plainly implied that default of a constitutional claim by counsel pursuant to a trial strategy or tactical decision would, absent extraordinary circumstance, bind the habeas petitioner even if he had not personally waived that claim." (citations omitted)). Haight does not specifically object to this recommendation by the Magistrate Judge and the Court finds no error regarding the Magistrate Judge's recommendation to deny this claim as it relates to juror Gaugh.

With respect to juror Nestmann, Haight presented a lengthy analysis of case law to which the Court does not disagree. (Pet'r's Obj. 109-13). According to Haight, any juror not willing to consider mitigating evidence should be disqualified for cause. *Morgan*, 504 U.S. at 739. In *Morgan*, the court stated: "[a]ny juror to whom mitigating factors are likewise irrelevant should be disqualified for cause, for that juror has formed an opinion concerning the merits of the case without basis in the evidence developed at trial." *Id.* As noted above, the primary concern expressed in *Morgan* is a juror who would automatically recommend death regardless of any mitigating evidence. *Id.* Juror Nestmann acknowledged during *voir dire* that he would have difficulty in considering certain categories of mitigating evidence, but ultimately agreed that he would consider all of the mitigating evidence in the case. (R. & R. 191 (citation omitted)). Moreover, Haight's trial counsel acknowledged that Nestmann was capable of considering mitigating evidence. (R. & R. 191 (citation omitted)). Thus, the Kentucky Supreme Court's

holding that keeping juror Nestmann on the jury was within the trial court's discretion was neither clearly contrary to or an unreasonable application of clearly established federal law, nor was the finding that juror Nestmann would consider Haight's mitigating evidence an unreasonable determination of fact.

Therefore, finding no error, the Court adopts the Magistrate Judge's recommendation as to Ground 20 and Haight's Objection is overruled. Further, although the Magistrate Judge recommended issuance of a certificate of appealability, the Court concludes that Haight has not made a substantial showing of a denial of a constitutional right and that reasonable jurists could not debate whether the issue should have been resolved in a different manner.

### 5. *Ground 21:  Juror Donohue's Presence in the Courtroom*

Haight argues in Ground 21 that he was unduly prejudiced and deprived of a fair trial when an alternate juror, upon being excused, sat in the courtroom near the victim's family during the penalty phase of the trial.  (Pet'r's Mem. Supp. 103-07; Pet'r's Reply 63-64).  Haight contends that the remaining jurors saw this as a show of support for the victims' families which prejudiced their decision-making.  The *Haight III* decision included this issue among others in its holding that "there was no preservation of the question or that the ruling was within the sound discretion of the trial court."  *Haight III*, 938 S.W.2d at 247.  Further, *Haight IV* noted "[t]he allegation with respect to juror Donahue was rejected in the direct appeal of this case. . . . Haight received a fundamentally fair trial by an impartial jury."  *Haight IV*, 41 S.W.3d at 446.  The Magistrate Judge recommended the Court deny relief as to this ground because nothing in the record supports Haight's claim that juror Donohue's mere presence near the victims' families was a nonverbal expression of support for the victims.  (R. & R. 192-94).

Haight challenges this finding because his discovery request as to this claim was denied, which he maintains precluded him from collecting facts to prove his entitlement to relief. He argues that "[i]t is fundamentally unfair to deny [Haight] the opportunity to present the facts which prove his claim and then fault him for not proving his claim." (Pet'r's Obj. 115). This Court previously denied Haight's discovery request and held that his motion was "nothing more than a fishing expedition disguised in the form of a discovery request." (Disc. Order 6, DN 80 (citing *Burns v. Lafler*, 328 F. Supp. 2d 711, 718-19 (E.D. Mich. 2004))). The circumstances have not changed and the Court will not overturn its prior order.

Accordingly, the Court agrees with the Magistrate Judge that "[t]he trial court found no indication of such an expression of support . . . . Certainly, the trial court was far and away in the best position to observe any potentially improper conduct, nonverbal or otherwise." (R. & R. 193). Further, the Kentucky Supreme Court held that the trial court's finding was not an abuse of discretion. Considering the complete lack of evidence in the record to support this ground for relief, the Court concludes that the Kentucky Supreme Court's holding as to juror Donohue's presence in the courtroom was not an unreasonable application of clearly established federal law or an unreasonable finding of fact. Accordingly, the Magistrate Judge's recommendation that this claim for relief be denied is adopted and Haight's Objection is overruled. The Magistrate Judge recommended the issuance of a certificate of appealability on this ground; however, in view of the deference to be accorded the state court's factual determinations, the Court does not believe that reasonable jurists could debate the resolution of this issue considering the complete lack of evidence Haight has proffered in support of his claim.

## 6.     *Ground 22:  Coerced Jury Verdict*

In Ground 22, Haight contends that the trial judge improperly forced jurors to resume deliberations after being deadlocked, thus depriving him of a fair trial, due process of law, and a reliable sentencing determination in violation of the Sixth, Eighth, and Fourteenth Amendments. (Pet'r's Mem. Supp. 107-11; Pet'r's Reply 64-65).  On this point, the Kentucky Supreme Court in *Haight III* held:

> On the unpreserved claim that a verdict was coerced, the record simply fails to bear out such an assertion.  At no time did the jury report that it was deadlocked. In view of the gravity of the decision before the jury, the time spent in deliberation was not excessive and we discern no violation of those decisions which proscribe coercion of jurors into rendering a verdict.

*Haight III*, 938 S.W.2d at 247 (citations omitted).  The Magistrate Judge recommended denial of Haight's request for relief as to this ground because "no dispute exists that this question was not preserved for appellate review."  (R. & R. 197).  Haight does not object to the Magistrate Judge's conclusion that his claim is procedurally barred; however, he argues that the Magistrate Judge's recommendation is incorrect because "the state courts unreasonably failed to provide sufficient process to permit the presentation, and full and fair adjudication of [] Haight's serious constitutional claim of error."  (Pet'r's Obj. 168).

Haight asserts that he can establish cause and prejudice for this claim to excuse the procedural default, yet provides scant elaboration.  (Pet'r's Obj. 168).  Haight's argument is set out in two sentences summarily claiming the state courts did not provide process to permit the presentation of his claims.  Beyond this conclusory assertion, Haight does not specify what procedures the state failed to provide in this respect.

The Court rejects Haight's argument that he can show cause and prejudice to avoid the procedural bar.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998) (holding that if a

petitioner fails to establish cause, it is unnecessary to determine if he was prejudiced by the alleged violation).  Accordingly, the Court adopts the Magistrate Judge's recommendation to deny relief as to Ground 22.  Additionally, the Court agrees with the Magistrate Judge that reasonable jurists could not debate the present procedural bar.

### 7.    *Ground 27:    Refusal to Instruct on Individual Determination of Mitigation*

In Ground 27, Haight argues that the refusal of the trial court to instruct the jury that each juror may individually determine, weigh, and consider evidence of mitigation, and that they did not all have to agree on the mitigators, deprived Haight of a reliable verdict on punishment in violation of the Sixth, Eighth and Fourteenth Amendments.  (Pet'r's Mem. Supp. 111-13; Pet'r's Reply 65-67).  *Haight III* rejected his argument and indicated that Haight's contention "that the trial court erred in failing to inform the jury that its decision with respect to mitigation did not have to be unanimous was fully resolved in *Bowling v. Commonwealth*, 873 S.W.2d 175, 180 (Ky. 1994).  We discern nothing about this case which differs materially in that respect from *Bowling*."  *Haight III*, 938 S.W.2d at 249.  In *Bowling*, the Kentucky Supreme Court held that "[a]n instruction on unanimous findings on mitigation is not required.  The instructions only require the jury to consider mitigating circumstances."  *Bowling*, 873 S.W.2d at 180 (internal citation omitted).

The Magistrate Judge recommended that this Court deny Haight's request for relief as to this ground because the Kentucky Supreme Court's holding was neither contrary to any clearly established precedent of the U.S. Supreme Court nor was it an unreasonable application of such precedent.  (R. & R. 204-05).  Haight raises numerous reasons for challenging the Magistrate Judge's recommendation on this ground.  Thus, the Court will conduct *de novo* review of Haight's request for relief regarding Ground 27.

This Court previously explained the relevant rule of law applicable to this claim as follows:

> "The Eighth Amendment requires that the jury be able to consider and give effect to all relevant mitigating evidence" offered by the defendant. "[I]n a capital case 'the sentencer [may] not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" To that end, it is unconstitutional for a state to require jurors to unanimously agree on mitigators. However, the Constitution does not require a state to adopt specific standards for instructing the jury in its consideration of mitigating factors under a death penalty scheme. Kentucky has chosen not to require the trial judge to instruct the jury that its findings on the existence of any particular mitigating factor does not have to be unanimous. Still, regardless of state law requirements, the Constitution forbids a trial court from instructing a jury that it has to reach a unanimous decision on the existence of any mitigating factor. Further, sentencing instructions are constitutionally invalid if they create a *substantial likelihood that reasonable jurors* might think that they are precluded from considering any mitigating evidence *unless jurors unanimously agree* that the mitigator is proven.

*Thompson v. Parker*, No. 5:11-CV-31-R, 2012 WL 6201203, at *30 (W.D. Ky. Dec. 10, 2012), *aff'd*, 2017 WL 3474044 (6th Cir. Aug. 14, 2017) (emphasis added) (internal citations omitted) (citation omitted). Accordingly, the question is whether there is a substantial likelihood that a reasonable juror would have thought that mitigating circumstances in Haight's case could not be considered unless the jury unanimously agreed that a particular mitigating circumstance existed. An answer in the affirmative would render the Kentucky Supreme Court's decision an unreasonable application of clearly established federal law.

Haight's argument focuses on Instruction No. 5, entitled "UNANIMOUS VERDICT" which provided: "[e]ach verdict of the jury must be unanimous and be signed by one of you as foreperson. You may use the forms at the end of these instructions in writing your verdict." (R. & R. 198 (citation omitted)). Haight argues that when Instruction No. 5 is read in conjunction with Instruction No. 3(c), which informed the jury that they shall consider mitigating evidence, it

would cause a reasonable juror to believe that a finding of a mitigating factor by the jury must be unanimous.[10]

Haight argues that the Kentucky Supreme Court's decision amounts to an unreasonable application of *Mills v. Maryland*, 486 U.S. 367 (1988). In *Mills*, the U.S. Supreme Court vacated the conviction and remanded for further proceedings because "there [wa]s a substantial probability that reasonable jurors, upon receiving the judge's instructions in this case, and in attempting to complete the verdict form as instructed, well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." *Id*. at 384. *Mills* concerned a Maryland death sentence where the jury had received a verdict form which contained a list of possible mitigating circumstances, accompanied by spaces in which the jury could check "yes" or "no" and preceded by a statement that the jury "unanimously find[s] that each of the following mitigating circumstances which is marked 'yes' has been proven to exist." *Id*. at 384-89 (emphasis added). *See also McKoy v. North Carolina*, 494 U.S. 433, 442-44 (1990) (applying *Mills* to overturn a North Carolina death sentence where the sentencing jury received an instruction which expressly prevented the jury from considering any mitigating factor that the jury did not "unanimously" find to exist). Conversely, in this case, the instructions were silent on the issue of unanimity as

_____

[10] Specifically, Instruction No. 3(c) provides:

> In fixing punishment for the defendant, you shall consider such mitigation or extenuating facts and circumstances as they have been presented to you in the evidence and you believe to be true, including but not limited to such of the following as you believe from the evidence to be true:
> . . . .
>
> (c) any other circumstance or circumstances arising from the evidence which you the jury deem to have mitigating value.

(R. & R. 199 (citation omitted)).

to the aggravating circumstances and the mitigating circumstances. Instruction No. 5 simply stated that the jury's verdict itself had to be unanimous. Furthermore, nothing in the record suggests that the jurors were confused by these instructions. Therefore, the Court cannot conclude that *Haight III* was an unreasonable application of *Mills*.

Upon review of the record the Court concludes that there is not a reasonable likelihood that a reasonable juror would have thought that he could not consider mitigating circumstances unless the jury unanimously agreed to that factor's presence. Instruction of the jury is a matter resting within the sound discretion of the trial court, and the trial court acted well within its discretion in denying Haight's request for an express instruction on the non-unanimity requirement for mitigating factors. *See Thompson*, 2012 WL 6201203, at *28-34 (holding that the state court's decision was not contrary to or an unreasonable application of federal law because "[t]he instructions and verdict form in the instant case did not directly state that the jury's finding of any mitigating factor had to be unanimous but were in fact silent as to whether the mitigating factors had to [be] found unanimously.").

Finally, Haight argues that he should be able to rely on *Davis v. Mitchell*, 318 F.3d 682 (6th Cir. 2003), to support his argument. (Pet'r's Obj. 124-25). The Magistrate Judge concluded that Haight could not rely on a Sixth Circuit case as clearly established U.S. Supreme Court precedent. (R. & R. 203-04). As stated numerous times, a petitioner must show that the state court's decision is contrary to or an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). Therefore, Haight cannot rely on *Davis* to support his argument that the Kentucky Supreme Court's holding was an unreasonable application of clearly established federal law.

The Court finds that the Kentucky Supreme Court's decision was not contrary to or an unreasonable application of clearly established federal law. Thus, the Magistrate Judge's recommendation to deny relief under Ground 27 is adopted and Haight's Objection thereto is overruled. Further, considering the Sixth Circuit has previously found unconstitutional jury instructions that are somewhat similar to the instructions at issue here , the Court concludes that jurists of reason could find this ground for relief debatable. *See Davis*, 318 F.3d at 685. *See also Slack*, 529 U.S. at 484. A certificate of appealability will be granted as to this ground.

**8.** ***Grounds 29 & 30: Impermissible Funneling of the Jurors' Discretion***

Haight in Grounds 29 and 30 raises two related arguments involving the sequence of the jury instructions given at both the guilt and penalty phase. (Pet'r's Mem. Supp. 113-17; Pet'r's Reply 68-69). Haight argues that during the guilt phase, the trial court refused to submit an instruction on manslaughter prior to the instruction on murder. Instead, the trial court first instructed the jury on murder, in accordance with the instructions put forth by the prosecution. Similarly, during the penalty phase, the trial court instructed on aggravating factors before instructing on mitigating factors, contrary to Haight's request. Haight argues that the order of the instructions disturbed his presumption of innocence by channeling the considerations of the jurors and undermining the reliability of the verdicts contrary to the Sixth, Eighth, and Fourteenth Amendments. (Pet'r's Mem. Supp. 114).

*Haight III* rejected this claim of error regarding the jury instructions. *Haight III*, 938 S.W.2d at 249. The Magistrate Judge recommended that this Court deny Haight's request for relief on this ground because further instructions, as well as the fact that the jury bypassed the verdict form for the punishment of life without the possibility of parole for 25 years, eliminated any possible confusion that could have arisen from the order of the jury instructions. (R. & R.

205-10).  Therefore, according to the Magistrate Judge it could not be argued that the Kentucky Supreme Court's holding was in any respect contrary to or an unreasonable application of clearly established U.S. Supreme Court precedent.  (R. & R. 211).

In challenging the Magistrate Judge's recommendation, Haight only discusses his argument as to the jury instructions during the guilt phase of his trial and does not include any specific objections to the Magistrate Judge's recommendation regarding the jury instructions given during the penalty phase.  Haight contends only that the Kentucky Supreme Court's conclusion that it was harmless error to include a finding of extreme emotional disturbance ("EED") as an element of manslaughter in the jury instructions contravened or unreasonably applied clearly established federal law.[11]  (Pet'r's Obj. 125-29).

*Haight III* held that "[a]s the absence or presence of EED is an element of both statutes [murder and manslaughter], there was no error in the inclusion of such and requiring its determination beyond a reasonable doubt."  *Haight III*, 938 S.W.2d at 248.  Subsequent to that opinion, the Kentucky Supreme Court held that "[t]he best way to address the issue [of EED in an instruction] is to include EED in the murder instruction and make no mention of it in the manslaughter instruction."  *Elery v. Commonwealth*, 368 S.W.3d 78, 92 (Ky. 2012).  The court also noted that the inclusion of the additional element of proof of EED in the manslaughter instruction "'required the Commonwealth to prove the absence of extreme emotion disturbance beyond a reasonable doubt in order to obtain a conviction of murder, . . . and to prove the presence of extreme emotional disturbance beyond a reasonable doubt in order to obtain a conviction of first-degree manslaughter.'"  *Id*. at 90 (quoting *Baze v. Commonwealth*, 965

---

[11] Haight is not procedurally barred from bringing this claim currently because he asserted it in his state court appeals.  (Notice Filing Attach. 1, at 54, DN 126-1).  Yet, this is the first time he has argued this point in his habeas corpus proceedings.

S.W.2d 817, 823 (Ky. 1997)). Therefore, the court explained, if the Commonwealth failed to prove either beyond a reasonable doubt then the jury would have been required to acquit the defendant. *Id.* (citing *Baze*, 965 S.W.2d at 823). Thus, the inclusion of the element of EED in the manslaughter instruction placed a higher burden on the Commonwealth and was not prejudicial to the defendant. *Id.*

Haight argues that the holdings of *Haight III*, *Elery*, and *Baze* run afoul of the U.S. Supreme Court's holding in *Alabama v. Beck*, 447 U.S. 625 (1980). In *Beck*, the U.S. Supreme Court held unconstitutional a state statute that prohibited the jury from considering lesser-included offenses and required that the death penalty be imposed upon a finding of guilt. *Beck*, 447 U.S. at 637. The U.S. Supreme Court reasoned that the statute enhanced the risk of an unwarranted conviction because the jury may believe that the defendant committed a crime lesser than that charged but did not want to acquit the defendant of all charges. *Id.* at 642-43. The "fundamental concern in *Beck* was that a jury convinced that the defendant had committed some violent crime but not convinced that he was guilty of a capital crime might nonetheless vote for a capital conviction if the only alternative was to set the defendant free with no punishment at all." *Schad v. Arizona*, 501 U.S. 624, 646 (1991). According to Haight, the Kentucky Supreme Court's holding finding harmless error as to the instructions was contrary to or an unreasonable application of *Beck* because the instructions given during the guilt phase of the trial "left the jury with the choice of guilty on capital murder or acquittal." (Pet'r's Obj. 131).

*Beck* is clearly distinguishable from the present case. In *Beck*, there was absolutely no instruction as to *any* lesser-included offenses. *Beck*, 447 U.S. at 630. The jury was "faced with an all-or-nothing choice between the offense of conviction (capital murder) and innocence."

*Schad*, 501 U.S. at 646-47 (internal quotation marks omitted).  While Haight claims an error as

to the lesser-included offense instruction, it does not equate with the situation in *Beck* where the

jurors' only choice was between acquittal and death.  *Beck*, 447 U.S. at 642-43.  Here, the jurors

had a choice to convict Haight of a lesser crime, which renders *Beck* inapposite.  *See Slaughter v.

Parker*, 450 F.3d 224, 237 (6th Cir. 2006) (holding the petitioner's claim that the Kentucky

Supreme Court misapplied *Beck* to be without merit because the petitioner had "an option to

convict [the petitioner] of a lesser, though still violent, crime . . . .").  The Court therefore finds

that *Haight III* did not unreasonably apply *Beck* because the instructions to the jury specifically

included the lesser-included offense of manslaughter.

Finding no error, the Court holds that the Magistrate Judge's recommendation to deny

relief as to these grounds is adopted and Haight's Objection as to Grounds 29 and 30 is

overruled.  The Magistrate Judge recommended the issuance of a certificate of appealability as to

these grounds.  The Court agrees that reasonable jurists could debate the Court's analysis with

respect to this claim.  Thus, a certificate of appealability as to Grounds 29 and 30 will be granted.

*See Slack*, 529 U.S. at 484.

### D. Death Penalty Issues

#### 1. *Ground 40:  Electrocution is Cruel and Unusual Punishment*

In Ground 40, Haight argues that electrocution is a form of cruel and unusual punishment

in violation of the Eighth Amendment.  (Pet'r's Mem. Supp. 117-20; Pet'r's Reply 71; Pet'r's

Second Supp. Obj. 12-13, DN 178).  KRS 431.220 provides the option of death by electrocution

or lethal injection for those prisoners who were sentenced to death prior to March 31, 1998.  *See*

KRS 431.220(1)(a).  The Magistrate Judge recommended denial of this ground for relief and

denial of a certificate of appealability on the issue because KRS 431.220, as amended in 1998,

gives prisoners the option to choose electrocution, and thus electrocution is not mandatory. (R. & R. 212-13). Haight does not object to the merits of the Magistrate Judge's recommendation, but argues that a certificate of appealability should be issued on this ground for relief because courts in Nebraska and Georgia have found electrocution to be unconstitutional, which indicates that reasonable jurists could differ on this issue.

Haight's Objection on this ground is without merit. As the Commonwealth points out in its response to Haight's Objection, the fact that two states have declared electrocution unconstitutional does not establish that reasonable jurists could differ as to whether the Kentucky Supreme Court's decision is contrary to federal law. (Resp't's Resp. 24). Moreover, the Sixth Circuit has previously rejected an identical challenge to KRS 431.220 because the statute provides a death-row inmate with the option of electrocution or lethal injection; thus, the court held that it need not evaluate the constitutionality of electrocution. *See Stanford v. Parker*, 266 F.3d 442, 461-62 (6th Cir. 2001). The Court finds no error in the Magistrate Judge's recommendation to deny relief and a certificate of appealability as to Ground 40 and the R&R is adopted on this point.

## 2. *Grounds 36 & 38: Lack of Separate and Independent Sentencing Hearing Under KRS 532.075(1)*

In Grounds 36 and 38, Haight argues that he was denied due process when the trial court did not follow KRS 532.075(1) and failed to prepare a required report for review on the record. (Pet'r's Mem. Supp. 120-23; Pet'r's Reply 70). *Haight III* found this argument to be without merit and noted compliance with KRS 532.075, which requires review of a death penalty judgment by the Kentucky Supreme Court upon notice from the court clerk and a report from the trial court on a standardized questionnaire. *Haight III*, 938 S.W.2d at 253-54. The Magistrate Judge recommended that the Court deny Haight's claim for relief on these grounds because

Haight did not show that it involved a clearly erroneous determination of the facts or that the Kentucky Supreme Court's holding was contrary to or an unreasonable application of clearly established federal law. (R. & R. 299). The Magistrate Judge emphasized that Haight "fails to cite to any clearly established precedent of the U.S. Supreme Court to support his arguments in grounds 36 and 38 . . . ." (R. & R. 299).

Haight's Objection on this ground is mainly a summary of the procedural history and the Magistrate Judge's recommendation. (Pet'r's Obj. 186-88). The only specific objection offered is a paragraph in which Haight argues that "[w]hen a state fails to abide by its own statutory commands, it may implicate a constitutionally protected liberty interest." (Pet'r's Obj. 187 (citing *Fetterly v. Paskett*, 997 F.3d 1295, 1300 (9th Cir. 1993)). Although claimed violations of state law are generally not cognizable in considering a petition for writ of habeas corpus, the U.S. Supreme Court has left room for the argument that a state-law error could, potentially, "be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

The Sixth Circuit has previously expressed skepticism that KRS 532.075 creates a due process interest. *See Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003). Moreover, even if failure to comply with KRS 532.075 could amount to a due process violation, Haight has not shown that the Kentucky Supreme Court's factual determination that the statute was substantially complied with was clearly erroneous so as to overcome the presumption of correctness that this Court is required to accord state court findings of fact. 28 U.S.C. § 2254(e)(1). There can be no doubt that regardless of any defect in the trial court's questionnaire report, the Kentucky Supreme Court fully considered the substance of Haight's objections to his conviction and death sentence in *Haight III*. Accordingly, this Court finds no error in the Magistrate Judge's

reasoning, adopts the recommendation of the R&R, and denies Haight's claims for relief under Grounds 36 and 38. Furthermore, the Court holds that jurists of reason would not find it debatable whether Grounds 36 and 38 of the Petition state a valid claim for federal habeas relief and denies a certificate of appealability as to this claim. *See Slack*, 529 U.S. at 483-84 (citation omitted).

### 3. Ground 37: Kentucky's Death Penalty Statute Is Facially Unconstitutional

In Ground 37, Haight argues that Kentucky's death penalty statute, KRS 532.025, is facially unconstitutional. (Pet'r's Mem. Supp. 123-25; Pet'r's Reply 71; Pet'r's Second Supp. Obj.11-12). *Haight III* rejected this argument and cited Kentucky Supreme Court decisions discussing Kentucky's death penalty statute at length and finding it constitutional. *Haight III*, 938 S.W.2d at 253-54 (citations omitted). As the Magistrate Judge indicated, courts in this circuit have overwhelmingly rejected challenges to Kentucky's death penalty statute. (R. & R. 218-19 (citing *McQueen v. Scroggy*, 99 F.3d 1302, 1333 (6th Cir. 1996); *Slaughter v. Parker*, 187 F. Supp. 2d 755, 817-18 (W.D. Ky. 2001))). Haight has not pointed to any changes in U.S. Supreme Court case law which would alter this holding. Thus, the Court adopts the Magistrate Judge's recommendation that the Court deny relief under this claim.

Further, the Magistrate Judge recommended denial of a certificate of appealability on the issue because "[t]he overwhelming weight of the established case law in this circuit runs directly contrary to [Haight's] position, so much so that a reasonable jurist could not disagree." (R. & R. 219). In opposition, Haight relies on a dissenting opinion in *Glossip v. Gross*, 135 S. Ct. 2726 (2015), in which Justice Breyer stated:

> In 1976, the Court thought that the constitutional infirmities in the death penalty could be healed; the Court in effect delegated significant responsibility to the States to develop procedures that would protect against those constitutional

problems. Almost 40 years of studies, surveys, and experience strongly indicate, however, that this effort has failed. Today's administration of the death penalty involves three fundamental constitutional defects: (1) serious unreliability, (2) arbitrariness in application, and (3) unconscionably long delays that undermine the death penalty's penological purpose. Perhaps as a result, (4) most places within the United States have abandoned its use.

I shall describe each of these considerations, emphasizing changes that have occurred during the past four decades. For it is those changes, taken together with my own 20 years of experience on this Court, that lead me to believe that the death penalty, in and of itself, now likely constitutes a legally prohibited "cruel and unusual punishmen[t]."

*Glossip*, 135 S. Ct. at 2755-56 (Breyer, J., dissenting) (alteration in original) (quoting U.S. Const. amend. VIII). Haight contends that this dissenting opinion is evidence that reasonable jurists could disagree as to the constitutionality of Kentucky's death penalty scheme. (Pet'r's Obj. 188-89).

This Court concludes that a certificate of appealability should issue with respect to this claim because reasonable jurists could find its assessment of the claim to be debatable or wrong. The Court takes into consideration the dissent of Justice Breyer, joined by Justice Ginsburg, in *Glossip*. Given that Justices Breyer and Ginsburg are unquestionably jurists of eminent reason and have recently questioned the constitutional viability of the death penalty, a certificate of appealability for Ground 37 is granted.

### 4. *Ground 39: Unconstitutional Proportionality Review Under KRS 532.075(3)(e)*

In Ground 39, Haight argues that the sentencing judge did not conduct a proportionality review as required by KRS 532.075(3)(c), in violation of his due process rights. (Pet'r's Mem. Supp. 125-28; Pet'r's Reply 71; Pet'r's Second Supp. Obj. 15-16). The Kentucky Supreme Court rejected this argument on the merits in *Haight III*. *Haight III*, 938 S.W.2d at 253-54. The Magistrate Judge conducted a thorough analysis of the issue and determined that the Kentucky

Supreme Court's holding was neither contrary to nor an unreasonable application of clearly established federal law, primarily because the U.S. Supreme Court does not require states to conduct proportionality reviews. Haight objects to the Magistrate Judge's finding by repeating word-for-word the arguments in Haight's Memorandum in Support of his Petition for Habeas Corpus and asserts here mere disagreement with the Magistrate Judge's recommendation. (Pet'r's Obj. 189-90). His only specific new objection is that the Magistrate Judge "ignore[d] the constitutional mandate of [*Gregg v. Georgia*, 428 U.S. 153 (1978)], that proportionality review is meant to be a check on arbitrariness and capriciousness and that its ineffective implementation runs afoul of *Gregg*." (Pet'r's Obj. 191).

*Gregg* does not provide the "constitutional mandate" that Haight contends. As the United States Supreme Court made clear in *Pulley v. Harris*, 465 U.S. 37 (1984), comparative proportionality review is *not* constitutionally mandated. *Id*. at 45 ("Needless to say, that some schemes providing proportionality review are constitutional does not mean that such review is indispensable."). In fact, in *Pulley*, the Court emphasized that the holding of *Gregg* "did not hinge on proportionality review" and the lower court "erred in concluding that *Gregg* required proportionality review." *Id*. at 37, 46. Accordingly, this Court concludes that *Gregg* does not clearly establish that proportionality review is required by the U.S. Constitution and finds that Haight's Objection is without merit. As the remaining parts of his objection are merely a recitation of previous arguments in his Petition, the Court reviews the Magistrate Judge's recommendation for clear error and finds none.

Because Haight offers no U.S. Supreme Court precedent supporting his notion that the Kentucky Supreme Court should have compared his case to cases in which the death penalty was not imposed, this Court concludes he is not entitled to relief on this claim. The Magistrate

Judge's recommendation to deny Haight relief under Ground 39 is adopted by this Court and Haight's Objection is overruled. Moreover, the Court agrees with the Magistrate Judge that jurists of reason would not find it debatable that Ground 39 does not state valid claim for relief and denies a certificate of appealability as to this claim as well. *See Slack*, 529 U.S. at 483-84 (citation omitted).

### E.      Post-Conviction Proceedings Issues

Grounds 7, 10, 11, and 12 all concern issues related to the state court post-conviction proceedings. (Pet'r's Mem. Supp. 128-54; Pet'r's Reply 72-80; Pet'r's Second Supp. Obj. 16-17). In Ground 7, Haight argues that he was denied a full and fair post-conviction hearing when the trial court declined his request for an evidentiary hearing. (Pet'r's Mem. Supp. 129-43). In Ground 10, Haight argues that he was denied due process in the post-conviction proceedings when the trial court did not allow him to amend his motion to vacate. (Pet'r's Mem. Supp. 143-47). Similarly, in Ground 11, Haight argues that he was denied due process when the court during the state post-conviction proceedings denied him the opportunity to file a motion for expert funding to pursue his claim regarding ineffective assistance of counsel related to his mental status. (Pet'r's Mem. Supp. 147-51). Lastly, Haight argues in Ground 12 that he was denied due process when his discovery request was denied during the state post-conviction proceedings. (Pet'r's Mem. Supp. 151-54). *Haight IV* rejected all of these arguments. *Haight IV*, 41 S.W.3d at 442-45.

The Magistrate Judge recommended denial of these claims for relief and noted that the Sixth Circuit has held that "challenges to the adequacy of post-conviction proceedings are not matters that may be addressed by way of habeas corpus." (R. & R. 230 (citing *Kirby v. Dutton*, 794 F.2d 245 (6th Cir. 1986)). Instead, "[t]he claim of a habeas petitioner 'must directly dispute

the fact or duration of the confinement.'" (R. & R. 230 (quoting *Kirby*, 794 F.2d at 248)). "Because the result of habeas review of the adequacy of a post-conviction challenge will not result in a release from confinement, the scope of the writ does not include such grounds involving the adequacy of state post-conviction proceedings." (R. & R. 230-31).

Haight raises two issues as to the R&R on these grounds. First, Haight contends that these grounds for relief should be reviewable because if he can demonstrate the denial of a full and fair state post-conviction process, he will be able to establish cause for the procedural default of specified claims and may be able to prove cause entitling him to an evidentiary hearing to further develop the facts. (Pet'r's Obj. 162). Haight contends that these findings will allow him to receive *de novo* review of his underlying constitutional claims, which could potentially result in a release from confinement and his unconstitutional sentence. (Pet'r's Obj. 162). Haight argues that this logic is similar to claims for ineffective assistance of counsel for failure to properly preserve a claim for state court review, and Haight notes that petitioners who prevail on such ineffective assistance claims are simply given the opportunity to litigate the underlying constitutional error and are not released from custody. (Pet'r's Obj. 162).

Haight's argument that these claims are reviewable because they can eventually lead to a release from confinement is of no moment. The Sixth Circuit has rejected this same argument and noted that "[t]hough the ultimate goal" in a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[] . . . is not in any way related to the confinement." *Kirby*, 794 F.2d at 248. "[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Kirby*, 794 F.2d at 246-47; *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002)). *See also York v. Chapman*, No. 1:07-CV-00144-JH,

2008 WL 2168934, at *20 (W.D. Ky. May 23, 2008) ("A petition for writ of habeas corpus is not used to challenge errors or deficiencies in State post-conviction proceedings because such claims are collateral to whether [the petitioner] 'is in custody in violation of the Constitution or the laws or treaties of the United States.'" (citations omitted)). Therefore, Haight's claims relating to post-conviction errors are not reviewable by this Court.

Haight urges that a certificate of appealability should be issued because "this question is clearly debatable among jurists of reason where the United States Supreme Court granted certiorari to decide the question of whether a criminal defendant has a constitutional right to counsel in state post-conviction." (Pet'r's Obj. 163 (citing *Martinez*, 566 U.S. at 26-27 (Scalia, J., dissenting))). To obtain a certificate of appealability, "a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner . . . ." *Slack*, 529 U.S. at 483-84 (internal quotation marks omitted) (quoting *Barefoot,* 463 U.S. at 893). In the Sixth Circuit, it is abundantly clear that post-conviction proceedings are outside the scope of federal habeas corpus review and the Court concludes that reasonable jurists could not debate this point. Accordingly, the Court finds Haight's Objection to be without merit. The recommendation of the Magistrate Judge that these claims for relief be denied and that a certificate of appealability not be issued is hereby adopted.

F. **Instructions and Verdict Form Issues**

1. ***Ground 23: Refusal of Trial Court to give the jury Haight's Tendered Mitigation Instruction***

Haight contends that the trial court deprived him of his rights under the Sixth, Eighth, and Fourteenth Amendments when it refused to tender Haight's proposed mitigation instruction

during the penalty phase. (Pet'r's Mem. Supp. 154-58; Pet'r's Reply 81-82; Pet'r's Second

Supp. Obj. 13-15). Haight requested a jury instruction with specific references to his abusive

background and his limited intelligence, but the mitigation instruction used by the trial court only

referenced broadly any other circumstances that the jury could consider mitigating. The

Kentucky Supreme Court rejected this argument on the merits:

> Appellant claims error in the trial court's failure to give a specific instruction
> directing the jury to consider evidence of his childhood abuse and neglect and
> deprived family background. While appellant was permitted to introduce
> extensive evidence in this vein, the instruction by which the jury could give effect
> to such evidence was general and authorized the jury to consider "any other
> circumstances arising from the evidence which you the jury deem to have
> mitigating value." Appellant maintains that this instruction fails to meet the
> requirements of *Penry v. Lynaugh*, 492 U.S. 302 (1989).
>
> In *Penry*, the court reviewed the Texas capital punishment statute and, with regard
> to non-statute mitigating factors, determined the statute to be insufficient. The
> court observed that despite evidence and argument relating to the appellant's
> mental retardation and abuse background, the jury was given no vehicle by which
> it could express the view that a sentence of less than death was appropriate. It
> appeared that upon giving affirmative answers to questions required to be
> propounded, the jury was virtually mandated to impose the death penalty and
> lacked a vehicle by which to give effect to the background evidence. "The jury
> was never instructed that it could consider the evidence offered by Penry as
> mitigating evidence and that it could give mitigating effect to that evidence in
> imposing sentence."
>
> The instructions given here imposed no such restriction and rather invited the jury
> to broadly review the evidence for circumstances it deemed to have mitigating
> value. The admission of evidence relating to abuse and neglect, deprived
> background, and mental retardation, followed by argument of counsel as to the
> significance of such evidence and the instruction described herein above could
> have left no doubt in the mind of the jury that it had a right to consider such
> evidence in its penalty determination. A more specific instruction was not
> required.

*Haight III*, 938 S.W.2d at 247-48 (internal citation omitted) (citations omitted).

The Magistrate Judge concluded that this ruling was neither contrary to nor an

unreasonable application of U.S. Supreme Court precedent and recommended denial of Haight's

request for relief under Ground 23. (R. & R. 232-36). Haight's argument merely expresses disagreement with the Magistrate Judge's conclusion. As the Court finds no error with the Magistrate Judge's analysis of this issue, the Court adopts the R&R as to Ground 23. It further agrees that jurists of reason could not disagree and denies a certificate of appealability.

### 2. *Ground 24: EED Instruction*

In Ground 24, Haight argues that that the word "uncontrollably" used in the definition of EED in his guilt phase jury instruction violated the Sixth, Eighth and Fourteenth Amendments, as its use is more applicable to the mental state of temporary insanity than extreme emotional disturbance. (Pet'r's Mem. Supp. 159-61; Pet'r's Reply 82). During his trial, Haight requested that the term "uncontrollably" be removed from the instruction, which request was denied by the trial court and also rejected by the Kentucky Supreme Court. *Haight III*, 938 S.W.2d at 249 ("Appellant's additional claims of error with respect to the instructions have been reviewed and found to be without merit."). In recommending denial of Haight's request for relief per Ground 24, the Magistrate Judge concluded that Haight improperly relied on state law rather than clearly established federal law and noted that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." (R. & R. 236-38 (quoting *Estelle*, 502 U.S. at 67-68)).

In his Objection, Haight cites for the first time U.S. Supreme Court precedent in support of this ground. The crux of Haight's Objection is that "[c]learly established federal law holds that [] Haight has a federal due process right to have the jury properly instructed as to the elements of the crime and for the jury to find the elements of the crime beyond a reasonable doubt." (Pet'r's Obj. 170 (citing *In re Winship*, 397 U.S. 358 (1970); *Sandstrom v. Montana*, 442 U.S. 510 (1979))). Further, Haight argues that "when the defense to the crime is one of

*mens rea*, the criminal defendant has a similar federal constitutional right to have the jury properly instructed as to the key element in the case and in the defense." (Pet'r's Obj. 170).

The Court agrees that a federal due process right exists to have the jury properly instructed as to the elements of the crime. *In re Winship*, 397 U.S. at 364. Yet, Haight does not elaborate as to how U.S. Supreme Court precedent was unreasonably applied or was contrary to *Haight III*'s holding that there was no error in the trial court's EED instruction. Haight's jury was instructed that the Commonwealth was required to prove each element of first-degree murder beyond a reasonable doubt and that Haight could not be convicted of that offense unless the Commonwealth met its burden. Moreover, an EED instruction was offered to the jury. This Court is satisfied that *Haight III* was not contrary to or an unreasonable application of U.S. Supreme Court precedent. Therefore, Haight's claim for relief under Ground 24 is denied, and because reasonable jurists could not debate this holding, a certificate of appealability is denied.

### 3. *Ground 25: EED Mitigation Instruction*

In Ground 25, Haight argues that various constitutional rights were violated when the trial court applied an incorrect definition of extreme mental or emotional disturbance. *Haight III* ruled that the trial court's instruction was sufficient. *Haight III*, 938 S.W.2d at 249. The Magistrate Judge determined that the Kentucky Supreme Court's finding was not contrary to or an unreasonable application of clearly established federal law. (R. & R. 238-41). The Magistrate Judge also denied a certificate of appealability as to this claim. (R. & R. 241).

In objecting to the Magistrate Judge's conclusion, Haight merely disagrees with the Magistrate Judge's assessment and reiterates the same arguments that were made in his Petition. (Pet'r's Obj. 171). The Court has conducted *de novo* review of the Magistrate Judge's R&R and finds no error. Therefore, the Magistrate Judge's recommendation is adopted and Haight's

Objection is overruled.  Relief as to Ground 25 is denied.  Additionally, a certificate of appealability is denied.

### 4.  *Ground 26:  First Degree Manslaughter Instruction*

Haight argues in Ground 26 that the trial judge erred when he included EED as an element of first-degree manslaughter.  *Haight III* rejected this argument on the merits.  *Haight III*, 938 S.W.2d at 249.  The Magistrate Judge found this was neither contrary to nor an unreasonable application of clearly established federal law.  In fact, this Court rejected Haight's same argument above in the discussion of Grounds 29 and 30, albeit in a different context.

Haight now reiterates his argument that the instruction is in violation of *In re Winship* and *Sandstrom v. Montana*, 442 U.S. 510 (1970). (Pet'r's Obj. 173-76). According to Haight, a due process violation occurred when the burden of proof on the element of EED was improperly shifted to the Commonwealth to disprove EED.  (Pet'r's Obj. 175).  *In re Winship* and *Sandstrom*, however, both involve situations where the burden of proof was improperly placed on the defendant.  *See In re Winship*, 397 U.S. at 364 (holding that due process is only satisfied if the prosecution proves every element of a charged offense beyond a reasonable doubt); *Sandstrom*, 422 U.S. at 524 (holding that a jury instruction that eliminates or shifts a state's burden to prove every element of an alleged crime beyond a reasonable doubt violates a defendant's due process rights).  This is plainly not the situation at hand.  Moreover, as the Kentucky Supreme Court has noted, adding the element of EED to a manslaughter instruction actually places a higher burden on the Commonwealth to prove its case.  *Baze*, 965 S.W.2d at 823.

The rest of this portion of Haight's Objection focuses on Kentucky state law which the Court here will not address.  *See Estelle*, 502 U.S. at 67-68 ("[F]ederal habeas corpus relief does

not lie for errors of state law . . . . [W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." (internal citation omitted)). Accordingly, Haight has not demonstrated how the Kentucky Supreme Court's decision was contrary to or an unreasonable application of clearly established federal law. Thus, after *de novo* review the Court adopts the R&R's recommendation as to Ground 26 and denies this request for relief. Furthermore, because jurists of reason could not find this denial of relief debatable, a certificate of appealability is also denied.

### 5. *Ground 28: Evidence of Parole Eligibility*

In Ground 28, Haight contends that the trial judge erred when he refused to allow mitigating evidence of Haight's parole ineligibility during the guilt phase of the trial and failed to provide jurors accurate parole guidance to rebut the prosecutor's argument of future dangerousness. (Pet'r's Mem. Supp. 167-70; Pet'r's Reply 85-86). *Haight III* rejected this argument on its merits stating only that, "[a]ppellant's claim concerning the exclusion of evidence relating to his parole eligibility upon a previous criminal conviction was irrelevant and properly excluded." *Haight III*, 938 S.W.2d at 249. The Magistrate Judge recommended denial of this ground for relief because evidentiary decisions of the trial court cannot be second-guessed by this Court upon a habeas petition. (R. & R. 245-49). Additionally, as to Haight's argument that the Kentucky Supreme Court's decision was contrary to *Simmons v. South Carolina*, 512 U.S. 154 (1994), the Magistrate Judge concluded that Haight could not show prejudice even if *Haight III* was somehow contrary to *Simmons*, because the jury instruction tendered by Haight also stated that the jury should ignore evidence relating to parole eligibility. (R. & R. 246-47).

Haight objects to the Magistrate Judge's recommendation, repeating many of the same arguments presented in his original petition. As his arguments are simply reiterations and mere

disagreements with the Magistrate Judge's conclusion and this Court upon *de novo* review does not find error in the Magistrate Judge's analysis, the Court holds that the R&R pertaining to Ground 28 is adopted. Haight cannot demonstrate that he suffered prejudice, as his own tendered instruction plainly informs the jury to ignore the matter of parole eligibility. Furthermore, this Court concurs with the Magistrate Judge's recommendation that a certificate of appealability be denied as to this claim.

### 6. *Ground 31: Examination by Neuropsychologist*

Haight argues that the trial court erred when it refused to permit the defense to have Haight examined by a neuropsychologist before his sentencing. (Pet'r's Mem. Supp. 171-74; Pet'r's Reply 86-88). *Haight III* rejected Haight's claim, stating:

> Appellant's claim that a twenty-year-old mental health evaluation discovered during trial would have affected the case is without merit. Appellant had full benefit of mental health evaluations and experts and there was no abuse of discretion in the trial court's failure to order another such examination. Moreover, the trial court gave all proper consideration to the mitigating evidence prior to imposition of its final judgment.

*Haight III*, 938 S.W.2d at 249. Haight contends that this holding is an unreasonable application of *Hitchcock v. Dugger*, 481 U.S. 393 (1987); *Skipper v. South Carolina*, 476 U.S. 1 (1986), *Eddings v. Oklahoma*, 455 U.S. 104 (1982); and *Lockett v. Ohio*, 438 U.S. 586 (1978), because the trial court's denial of the motion withheld from the court at sentencing potential mitigating evidence of organic brain damage. (Pet'r's Mem. Supp. 171-74). The Magistrate Judge recommended denial of relief under this claim because *Haight III* was not contrary to or an unreasonable application of any clearly established federal law and noted that "[n]othing in Haight's petition calls into question the above conclusions in *Haight III*." (R. & R. 252).

Haight now objects to the recommendation. First, Haight argues that the forensic psychologist who evaluated Haight before his trial was not an appropriate expert to determine

whether Haight suffered from organic brain damage. (Pet'r's Obj. 134). Second, he posits that the trial court could not properly assess whether Haight suffered from organic brain damage merely by observing him in court. (Pet'r's Obj. 134-35). Third, Haight contends there is not a "possibility" that he suffers from brain damage as the Magistrate Judge characterized, but instead there "is an all but conclusive probability." (Pet'r's Obj. 135). Finally, Haight argues that, contrary to the Magistrate Judge's assertions, there is absolutely no evidence in the record that the trial judge considered Haight's brain damage in pronouncing final judgment in the case because no motion to appoint an expert is in evidence. (Pet'r's Obj. 136).

These arguments are without merit. Importantly, the 1974 psychological report did not conclude that Haight had an organic brain deficiency but instead alluded to the *possibility* of such. Although Haight now argues that it "is all but conclusive probability" that he suffers from organic brain damage, the Kentucky Supreme Court at the time of its holding did not have "the newly minted expert" reports in front of it; therefore, those reports are irrelevant as to whether the Kentucky Supreme Court's holding was an unreasonable application of United States Supreme Court precedent. Regardless, the Court agrees with the Magistrate Judge that the record indicates that the trial court did consider the 1974 report. As stated in the R&R:

> Haight's 1974 mental health evaluation was put before the trial court prior to his March, 1994 sentencing. The apparent decision of the trial court to give more weight to the evaluation of Haight's own trial expert in adopting the recommendation of the jury for the death penalty was not a refusal to consider mitigating evidence, but rather an appropriate exercise of the trial court's own judgment in evaluating such evidence in light of the other mental health testimony offered at trial.

(R. & R. 253). Accordingly, the Court agrees with the Magistrate Judge that the Kentucky Supreme Court's holding was not an unreasonable application of or contrary to the U.S. Supreme Court's holdings in *Hitchcock*, *Skipper*, *Eddings*, or *Lockett*. The Court therefore holds that the

R&R as it pertains to Ground 31 is adopted and Haight's Objection is overruled.  Further, the Court does not believe that reasonable jurists could debate this point.  *See Slack*, 529 U.S. at 484.

### 7.    *Ground 32:  Instruction on Proof Beyond a Reasonable Doubt*

In Ground 32, Haight argues that the trial court improperly instructed the jury regarding proof beyond a reasonable doubt.  (Pet'r's Mem. Supp. 174-76).  *Haight III* rejected this contention as lacking merit.  *Haight III*, 938 S.W.2d at 249.  The Magistrate Judge recommended denial of Haight's request for relief as to Ground 32 because Haight does not cite to any clearly established precedent of the U.S. Supreme Court that would require the trial court to define reasonable doubt in the jury instructions.  (R. & R. 253-56).  In support, the Magistrate Judge cites *Whiteside v. Parke*, 705 F.2d 869, 871-73 (6th Cir. 1982), where the Sixth Circuit previously explained that "Kentucky courts have long followed the rule that the failure to define reasonable doubt is not error, and [] RCr 9.56 appears to be a codification of that view." *Whiteside*, 705 F.2d at 871 (citing *Swopshire v. Commonwealth*, 55 S.W.2d 356, 358 (Ky. 1932)).

Haight attempts to distinguish *Whiteside* from his case, but this does not change the fact that he points to no U.S. Supreme Court precedent in support of his position.  (Pet'r's Obj. 178-79).  As the Magistrate Judge noted, "Haight cites no clearly established precedent of the U.S. Supreme Court that would require a definition of reasonable doubt, contrary to the longstanding state law of Kentucky."  (R. & R. 256).  In his present objection, Haight does not add any contravening case law.  Therefore, the Court finds this objection to be meritless and accepts the Magistrate Judge's R&R.  A certificate of appealability as to Ground 32 will be denied.

### G.    **Prosecutorial Misconduct**

#### 1.    *Ground 34:  Prejudicial Bad Acts Evidence*

Haight contends in Ground 34 that the prosecution engaged in misconduct through the introduction of prior bad acts evidence that distracted the jury from its duty to assess his mental state at the time the offenses were committed and thus denied him an opportunity to present a complete defense in violation of *California v. Trombetta*, 467 U.S. 479 (1984), and *In re Oliver*, 333 U.S. 257 (1984).  (Pet'r's Mem. Supp. 176-86; Pet'r's Reply 88-89).  *Haight III* rejected this argument, explaining:

> Appellant next attacks the judgment on grounds that his trial was "polluted . . . with irrelevant and immaterial collateral bad acts."  He contends, among other things, that such bad acts precluded a "meaningful opportunity" to present his EED defense to an open and receptive jury.  Particularly he has identified evidence of his attempted murder of Trooper Yates; evidence as to the circumstances surrounding his guilty plea to that crime; evidence as to his theft of a farmhand's Camaro automobile while he was a fugitive; evidence of the burglary of the Shuffett home; evidence as to Tony Minnix's fear of appellant; and fear of appellant's theft of the Sasser vehicle.

> It should be remembered that at trial appellant's defense was extreme emotional disturbance and it was the Commonwealth's burden to prove the absence of EED. While the relevant time frame for proof of appellant's mental state was the time of the murders, evidence as to his mental state shortly before and after the murders was relevant.  The Commonwealth maintains that from the time of appellant's escape from the Johnson County Jail until the time of his capture, his behavior amounted to a continuing course of conduct with all events being inextricably intertwined with the crimes charged.  There was a legitimate basis in evidence law for admission of each such item of evidence and it was for the trial court to determine whether the probative value outweighed the prejudicial effect.

> It is difficult to ignore that after his escape from the Johnson County Jail appellant went on a crime spree and along the way murdered two victims.  We have found no basis to disturb the trial court's rulings on the admission of the challenged evidence.  Moreover, any error in this regard would have been entirely harmless. We have carefully examined appellant's claims as set forth herein above and considered KRE 404(b) and this Court's decision in *O'Bryan v. Commonwealth*, Ky., 634 S.W.2d 153 (1982).  We are unable to find an abuse of trial court discretion in this regard.

Appellant's complaints concerning the cross-examination of Randy Wheeler and the rebuttal testimony of Pamela Marcum are insubstantial and need not be addressed. Likewise, as to introduction of the three crime scene photographs, there was no error.

*Haight III*, 938 S.W.2d at 252 (internal citations omitted) (citation omitted).

The Magistrate Judge recommended denial of Haight's request for relief on this ground because Haight did not demonstrate how the holding of *Haight III* constituted an unreasonable application of existing U.S. Supreme Court precedent. (R. & R. 260). Further, the Magistrate Judge noted that "the arguments themselves do not run so much to prosecutorial misconduct as they do the evidentiary rulings of the state trial and appellate courts," emphasizing that "evidentiary rulings of the state courts based on state law are not ordinarily subject for habeas corpus relief . . . ." (R. & R. 260). In his objection, Haight focuses on the evidentiary rulings rather than prosecutorial misconduct and argues that "erroneous evidentiary rulings can, in combination, rise to the level of a due process violation." (Pet'r's Obj. 181 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 53 (1996))). Haight further argues that "[t]he mountain of improperly admitted other crimes and bad acts evidence . . . violated [Haight's] federal constitutional rights to due process of law . . . ." (Pet'r's Obj. 181).

Federal habeas corpus review of evidentiary rulings based on state law is "extremely limited." *Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006) (internal quotation marks omitted) (citation omitted). An issue concerning the admissibility of evidence or error in state law does not rise to a level of constitutional magnitude *unless* it can be viewed as so egregious that the petitioner was denied a fundamentally fair trial. *Estelle*, 502 U.S. at 67-68. Furthermore, "the Supreme Court has defined 'very narrowly' the category of infractions that violates 'fundamental fairness.'" *Bey v. Bagley*, 500 F.3d 514, 522 (6th Cir. 2008) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

Fundamental fairness is violated when erroneously admitted evidence is "material in the sense of a crucial, critical, highly significant factor," and the probative value of the evidence is so conspicuously outweighed by its inflammatory content that a defendant's constitutional right to a fair trial has been violated. *Lesko v. Owens*, 881 F.2d 44, 52 (3d Cir. 1989). *See also Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007) ("'Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor.'" (quoting *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000))). In conducting this inquiry, the decision of the state trial court is given great deference because it is in a unique position to assess the relative probative value and inflammatory effect of proffered testimony. *Lesko*, 881 F.2d at 52 (citing *United States v. Guerrero*, 803 F.2d 783, 785 (3d Cir. 1986)).

Because the other-acts evidence at issue here was being offered for the relevant purpose of demonstrating Haight's mental state to rebut his EED defense, this evidence was subject only to the limitations contained in Kentucky Rules of Evidence 403. "Rule 403's balancing of the probative value of such testimony against the danger of unfair prejudice is a task properly reserved for the sound discretion of the trial judge." *Clark v. O'Dea*, 257 F.3d 498, 503 (6th Cir. 2001) (citing *Rake v. Commonwealth*, 450 S.W.2d 527, 528 (Ky. 1970)). As the Magistrate Judge noted, and the Court agrees, Haight has adduced no explanation as to how the trial court's determination that the probative value of the other-acts evidence outweighed the danger of unfair prejudice was unreasonable. Accordingly, it cannot be said that the trial court's ruling was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" to warrant habeas relief. 28 U.S.C. § 2254(d). Therefore, the Magistrate Judge's recommendation as to Ground 34 is adopted and Haight's Objection is overruled. Additionally,

the Court adopts the Magistrate Judge's recommendation that a certificate of appealability should not issue as to this ground for relief.

### 2. *Ground 35: Prosecutorial Closing Argument*

Haight asserts that several statements made by the prosecution during closing arguments amounted to a violation of his federal due process rights.[12]  (Pet'r's Mem. Supp. 186-92; Pet'r's Reply 88-89).  The Kentucky Supreme Court held:

> Appellant's extraordinary history of violent criminal conduct was properly placed before the jury.  Moreover, while the "prison is doing nothing" argument by the Commonwealth is of concern, it falls short of the argument condemned in *Perdue v. Commonwealth*, Ky., 916 S.W.2d 148 (1996), whereby the jury was exhorted to give the death penalty as the only way to prevent the defendant from killing again. The argument here is qualitatively different from the argument condemned in *Ice v. Commonwealth*, Ky., 667 S.W.2d 671, 676 (1984).  This Court has long observed the principle that wide latitude is permitted during closing argument.  In view of this principle and upon our further belief that any error which may have occurred in this regard was harmless, there are no grounds for reversal on this issue.
>
> Appellant's unpreserved claim of improper argument designated "Death as Deterrent" does not rise to the level of palpable error.  The views set forth hereinabove sufficiently answer these contentions.

*Haight III*, 938 S.W.2d at 252-53 (internal citation omitted).

The Magistrate Judge concluded that this was not an unreasonable application of or contrary to clearly established federal law.  (R. & R. 262-71).  The Magistrate Judge found that none of the challenged remarks of the Commonwealth during closing arguments "were improper, nor would such remarks, if assumed to be improper, have infected Haight's trial with fundamental unfairness so that his resulting conviction and death sentence constituted a denial of due process."  (R. & R. 268).  Haight asserts that the Magistrate Judge is incorrect and further

---

[12] The various statements to which Haight objects are:  the Commonwealth's reference to future dangerousness; an improper "send a message" argument to the jury; reference to a 1987 wanton endangerment conviction; and an unfair denigration of a psychologist's testimony.  (Pet'r's Obj. 182-85).

states that clearly established federal law does provide that an improper prosecutorial argument can rise to the level of a due process violation. (Pet'r's Obj. 186). He asserts that the "prosecutorial misconduct here is patent." (Pet'r's Obj. 186). Haight claims that "the prosecutor's argument in [his] case, in its entirety, asks the jury to sentence [him] to death based on emotion" and that this improper argument led to a deprivation of due process in Haight's trial. (Pet'r's Obj. 186).

There is no question that improper prosecutorial argument *can* rise to the level of a due process violation; however, Haight has not demonstrated how the alleged improper comments by the prosecutor in this case violated due process. On habeas review, the question is whether the alleged improper comments of the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden*, 477 U.S. at 168; *Kincade v. Sparkman*, 175 F.3d 444, 446 (6th Cir. 1999). Having reviewed the instances of alleged prosecutorial misconduct during closing arguments of which Haight complains, the Court is not persuaded that the Kentucky Supreme Court's resolution of this claim was an unreasonable application of *DeChristoforo*.[13] Therefore, after *de novo* review, the Magistrate Judge's recommendation that Haight's claim for relief under Ground 35 be denied. A certificate of applicability should not be issued as to this claim because reasonable jurists could not debate its lack of merit.

---

[13] Haight also cites to *Griffin v. California*, 380 U.S. 609 (1965), in support of his argument that the Kentucky Supreme Court's holding is infirm. *Griffin* deals with prosecutorial misconduct in the context of a prosecutor's comments during the trial that violated the petitioner's Fifth Amendment rights and is inapplicable. *See id.* at 612.

### H.    **Miscellaneous Issues**

#### 1.    *Ground 41:  Ineffective Assistance Due to Videotape Record*

In Ground 41, Haight argues that the use of a videotape trial record results in a less than full and fair review.  (Pet'r's Mem. Supp. 276).  Haight avers that he was subjected to ineffective assistance of counsel due to "inherent inadequacies of the videotape record of his trial . . . ." (Pet'r's Mem. Supp. 276).  The Magistrate Judge concluded that Haight raised only a Sixth Amendment ineffective assistance of counsel claim related to the videotape transcript because on appeal, "Haight made no arguments relating to the language of KRS 532.075 as a statutory basis on which to rest a constitutional obligation to provide Kentucky defendants with a written transcript of their trials."  (R. & R. 277).  Thus, the Magistrate Judge concluded that Haight's claim in this regard was procedurally barred and only the ineffective assistance of counsel claim as to the videotape record survived.  (R. & R. 276-77).  The Magistrate Judge further explained that Haight's ineffective assistance of counsel claim "is materially deficient in all respects" as Haight has failed to discuss the deficient performance and prejudice prongs of the *Strickland* test. (R. & R. 280).

In objecting on this issue, Haight repeats the same merits arguments raised in his Petition, which the Magistrate Judge concluded were procedurally barred, without explaining how his claim survives the procedural bar.  (Pet'r's Obj. 192-93).  Upon review, the Court finds no error in the Magistrate Judge's conclusion that Haight's claim regarding the constitutionality of the use of a videotape trial record is procedurally barred.  Furthermore, the Court finds no error in the Magistrate Judge's conclusion that Haight's ineffective assistance of counsel claim regarding the videotape record is without merit.  Accordingly, the Court adopts the recommendation of the

Magistrate Judge denying relief under Ground 41 and also denying issuance of a certificate of appealability.

### 2.    *Ground 43:  Ineffective Assistance of Counsel on Appeal*

In Ground 43, Haight argues that his appellate counsel on direct appeal was ineffective for failing to challenge the trial court's refusal to give a jury instruction on the lesser-included offense of theft.  (Pet'r's Mem. Supp. 200-08; Pet'r's Reply 91-105).  Haight did not raise this claim of error in his RCr 11.42 motion to vacate or prior to the Kentucky Supreme Court decision in *Haight IV* that affirmed the denial of post-conviction relief.  *See Haight IV*, 41 S.W.3d at 449.

The Magistrate Judge recommended denial of Ground 43 due to a procedural bar.  (R. & R. 279-84).  The Magistrate Judge relied upon this Court's previous order denying an evidentiary hearing as to this claim on the basis that it was procedurally barred.  (R. & R. 282-83 (citing Mem. Op. 10-13, DN 85)).  The Magistrate Judge also noted that this Court later held that the exception to the procedural bar articulated in *Martinez* and *Trevino* did not affect the procedural bar as to Haight's claim because "*Martinez* applied only when the underlying claim was one for ineffective assistance of counsel *at trial*."  (Mem. Op. 20, DN 135 (citing *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013))).  Recognizing that the holdings of this Court bind magistrate judges, the Magistrate Judge recommended denial as to Haight's claim of ineffective assistance of appellate counsel as being time-barred.  (R. & R. 284).

Haight now argues that *Hodges*, which holds that *Martinez* does not excuse the default of a claim of ineffective assistance of appellate counsel is wrong and distinguishable from his case.  (Pet'r's Obj. 141-43 (citing *Hodges*, 727 F.3d at 531)).  Citing to *Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013), where the Ninth Circuit held that the *Martinez* exception does apply to

ineffective assistance of appellate counsel claims, Haight argues that *Hodges* was wrongly decided. However, the Sixth Circuit recently discussed the *Nguyen* decision while reaffirming the rule articulated in *Hodges*. *See Porter v. Genovese*, No. 16-5317, 2017 WL 167469, at *5 (6th Cir. Jan. 17, 2017) ("Yes, the Ninth Circuit sees this differently. But this does not, as [petitioner] argues, mean that there is 'cause' to excuse his default . . . ." (internal citation omitted)). Rejecting a similar argument, the Sixth Circuit emphasized "the law of this circuit is that *Martinez/Trevino*'s limited exception does not extend to claims of ineffective assistance of appellate counsel." *Id.* (citing *Hodges*, 727 F.3d at 531). The Court follows, as it must, the binding precedent of this circuit and holds that the *Martinez* exception does not apply in this instance.

The Sixth Circuit has made abundantly clear that the equitable exception carved out in *Martinez* and *Trevino* does not apply to claims of ineffective assistance of appellate counsel. *See id.* Therefore, the Magistrate Judge's recommendation that Haight's claim for relief under this ground be denied because it is procedurally barred is adopted and Haight's Objection is overruled. The Magistrate Judge recommended the issuance of a certificate of appealability, and based on *Nguyen*, the Court agrees.

### 3. *Ground 44: Ineffective Assistance of Trial and Appellate Counsel regarding and the Wanton Murder Charge Instruction*

Ground 44 seeks relief for ineffective assistance of counsel due to the failure of Haight's trial counsel to tender an instruction on wanton murder as an alternative to intentional murder. (Pet'r's Mem. Supp. 208-21; Pet'r's Reply 106-08). According to Haight, a conviction of wanton murder would have eliminated one of two aggravating circumstances and he potentially could have avoided the death penalty. *See* KRS 532.025. Haight's claim involves ineffective assistance of trial counsel in not requesting the wanton murder instruction; ineffective assistance

of appellate counsel in not presenting the instruction issue on direct appeal; and ineffective assistance of post-conviction counsel in failing to raise the issue in the initial RCr 11.42 motion. (Pet'r's Mem. Supp. 208-21; Pet'r's Reply 106-08). The Magistrate Judge noted that, as above with Ground 43, this Court has previously held that these claims were procedurally barred when ruling Haight was not entitled to an evidentiary hearing. (R. & R. 285 (citation omitted)).

As to Haight's ineffective assistance of trial counsel claims, this Court held that Haight's claims were procedurally defaulted and that Haight could not establish cause and prejudice to excuse his procedural default. (Mem. Op. 22, DN 135 ("[E]ven if Haight were to prove what he says he can prove, he will not have shown that his post-conviction attorney nor his trial attorney were ineffective, meaning that he cannot establish cause or prejudice for his procedural default nor can he establish that he would be entitled to relief on his underlying claim.")). This Court further noted that Haight's counsel had a strategic reason for not requesting a wanton murder charge because "wanton murder is not a lesser-included offense of intentional murder, but is another form of committing murder." (Mem. Op. 22, DN 135 (citing *Ratliff v. Commonwealth*, 194 S.W.3d 258, 275 (Ky. 2006))). Further, this Court pointed out that both intentional murder and wanton murder are capital offenses, meaning Haight still would have potentially faced the death penalty if convicted of wanton murder. (Mem. Op. 22, DN 135 (citing KRS 507.020)). Accordingly, this Court has already ruled that Haight cannot show cause and prejudice for the procedural default of this ineffective of trial counsel claim. Haight's Objection does not provide him relief from this holding.

Further, as discussed above in Ground 43, the Sixth Circuit holds that the equitable exception in *Martinez* and *Trevino* does not apply to ineffective assistance of appellate counsel claims. *Porter*, 2017 WL 167469, at *5 (citing *Hodges*, 727 F.3d at 531). Because Haight did

not raise this claim in his Rule 11.42 petition, this claim is procedurally defaulted. *See Haight V*, 2007 WL 2404494, at *3 (holding that Haight's complaint regarding the wanton murder claim "should have been raised in the RCr 11.42 motion or on direct appeal," and was therefore procedurally defaulted). As this Court has previously indicated, all of Haight's claims in regard to Ground 44 are procedurally defaulted. Therefore, the Magistrate Judge's recommendation to deny this ground for relief is adopted. Further, consistent with Ground 43, the Court accepts the Magistrate Judge's recommendation in favor of issuing a certificate of appealability for Ground 44.

### 4. *Ground 45: Conflict of Counsel*

In Ground 45, Haight argues that his post-conviction attorneys were ineffective. (Pet'r's Mem. Supp. 213-18; Pet'r's Reply 108-09). Specifically, Haight claims that a conflict of interest existed because his attorneys at trial, on direct appeal, and the initial post-conviction proceedings were all employed by the Kentucky Department of Public Advocacy. (Pet'r's Mem. Supp. 213-18; Pet'r's Reply 108-09). Therefore, Haight avers that this conflict of interest was in violation of the Sixth Amendment and deprived him of a fair trial, reliable verdict, and sentence. (Pet'r's Mem. Supp. 213-18; Pet'r's Reply 108-09). The Kentucky Supreme Court never ruled on this ground and now Respondent argues that the claim is procedurally barred.

The Magistrate Judge concluded that this claim fails on the merits, referencing this Court's prior order in which it held that that Haight could not show good cause for discovery. This Court explained:

> Haight claims that his counsel during state post-conviction proceedings were ethically disqualified from representing him. The magistrate, however, correctly concluded that this is a state law issue with which federal habeas corpus is unconcerned. The Constitution confers no right to any counsel whatsoever in state post-conviction proceedings. *Coleman*, 501 U.S. at 752; *Murray v. Giarratano*, 492 U.S. 1 (1989) (applying this rule to capital cases). It follows that

there is no constitutional right to unconflicted counsel in such proceedings. Furthermore, whether counsel was disqualified is entirely a question of state law. This is simply not a ground for finding that Haight is "in custody in violation of the Constitution or laws or treaties of the United States."

(Mem. Op. 14, DN 85 (quoting 28 U.S.C. § 2254(a))).

Haight's contention is that "post[-]conviction counsel's conflict of interest may . . . constitute cause to overcome a procedural default." (Pet'r's Obj. 200). Haight does little to refute this Court's prior ruling that "there is no constitutional right to unconflicted counsel in [post-conviction] proceedings." (Disc. Order, 15). After *de novo* review, this Court adopts the Magistrate Judge's recommendation and denies relief under this claim because it is established that "the right to appointed counsel extends to the first appeal of right, and no further." *Finley*, 481 U.S. at 555. Haight, therefore, had no right under the Sixth Amendment to counsel in his post-conviction relief proceedings; thus, any conflict his appointed appellate counsel may have had cannot offend the Sixth Amendment.

The Magistrate Judge recommended that a certificate of appealability should not be issued. (R. & R. 307-08). Haight contends that a certificate of appealability should be issued because "[g]iven the recent reshaping of the legal landscape relating to equitable principles, conflict and abandonment . . . and the resulting change in post-conviction counsel performance evaluation calculus . . . jurists of reason could disagree with the Court's resolution of this claim." (Pet'r's Obj. 204). Despite any recent developments in case law relating to post-conviction performance, the Court concludes that it is sound and well-established in U.S. Supreme Court precedent that Haight has no Sixth Amendment right to effective assistance of post-conviction counsel. Jurists of reason could not debate this, and a certificate of appealability for Ground 45 will not be issued.

### 5.     *Ground 42:  Cumulative Error*

In Haight's final ground for relief, he asserts that the cumulative effect of the errors discussed above deprived him of due process of law.  (Pet'r's Mem. Supp. 218-20; Pet'r's Supp. 9-11).  Haight asks the Court to consider the finding of constitutional violations that amounted to harmless errors in tandem when deciding whether to grant habeas relief under this ground for relief.  (Pet'r's Mem. Supp. 219).  The Magistrate Judge recommended denial of relief because "[t]he Sixth Circuit has repeatedly held that cumulative error claims are not cognizable in the setting of habeas corpus because the Supreme Court has yet to address the issue."  (R. & R. 292-93 (citing *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006))).  Furthermore, the Magistrate Judge concluded that even if the cumulative effect of the claims of ineffective assistance of counsel were considered to determine prejudice under the *Strickland* standard, Haight cannot show that he was "prejudiced [] in the outcome of the state court proceedings, given the overwhelming nature of the evidence of his guilt."  (R. & R. 293).

Haight explains that he "is not asking this court to create a new rule of law . . . . [but] is merely requesting this court to analyze [Haight's] claim in a new light."  (Pet'r's Obj. 194).  Haight restates his original argument that this Court should consider the accumulation of harmless errors and grant him relief.  (Pet'r's Obj. 194).  The Court does not see how Haight's request to "view[] the claim in a new light" is any different than raising a cumulative error claim.  As stated by the Magistrate Judge, the Sixth Circuit has expressly held that cumulative error claims are not cognizable claims in habeas corpus.  *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).  Even assuming that the Sixth Circuit did recognize a cumulative error claim, a cumulative error claim fails where there

are simply no errors to cumulate. *See Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) (en banc); *Baze*, 371 F.3d at 330.

Further, Haight argues that "the Magistrate Judge is incorrect in refusing to consider a cumulative error review concerning issues of ineffective assistance of counsel." (Pet'r's Obj. 195). However, the Magistrate Judge did not refuse to consider cumulative error in the context of ineffective assistance of counsel. Rather, the Magistrate Judge explained that consideration of such cumulative error was to no avail for Haight because he could not show prejudice in the outcome of the state court proceedings as a result of the overwhelming evidence of guilt. (R. & R. 293). Haight does not dispute this point. Therefore, the Magistrate Judge's recommendation is adopted, this ground for relief is denied, and a certificate of appealability will not be issued. Since Haight has not stated a cognizable claim for relief, jurists of reason could not find Haight's claim debatable.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Petitioner's Objection to the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 166) is **OVERRULED**;

2. The Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 160) is **ADOPTED** to the extent that it does not conflict with the opinion of this Court;

3. Petitioner's Petition for Habeas Relief (DN 1) is **DISMISSED**;

4. Petitioner's Motion for Summary Judgment (DN 141) is **DENIED**.

5. The Court does not believe that a certificate of appealability should be issued for Grounds 1, 3, 4, 5, 6, 8, 9, 13, 14, 15, 18, 19, 20, 21, 31, 33, and 37. As discussed above, the

Court does not believe that jurists of reason could debate this Court's resolution of these grounds. Nevertheless, in an abundance of caution, this Court will defer to the Magistrate Judge's recommendation that a certificate of appealability for these Grounds be issued. The Court is cognizant that Haight would not have a chance to respond to this Court's denial of these certificates of appealability. Furthermore, the Court recognizes that this is a capital case in which "doubts as to whether a [certificate of appealability] should issue must be resolved in favor of the petitioner." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (quoting *Lamb v. Johnson*, 179 F.3d 352, 356 (5th Cir. 1999)). Accordingly, certificates of appealability will be **GRANTED** for Grounds 1, 3, 4, 5, 6, 8, 9, 13, 14, 15, 18, 19, 20, 21, 31, 33, and 37. Certificates of appealability will also be **GRANTED** for Grounds 2, 16, 17, 27, 29, 30, 43, and 44 for which this Court and the Magistrate Judge concur that issuance of a certificate of appealability is warranted.

6. The issuance of a certificate of appealability pursuant to 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b) is **DENIED** as to Grounds 7, 10, 11, 12, 22, 23, 24, 25, 26, 28, 32, 34, 35, 36, 38, 39, 40, 41, 42, and 45.

**Greg N. Stivers, Judge**
**United States District Court**
August 18, 2017

cc:    counsel of record